James S. Yu, Esq.
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 1008-1405
Telephone: (212) 218-5500
Facsimile: (212) 218-5526

Barry J. Miller, Esq.
(*Pro Hac Vice* Motion To Be Filed)
SEYFARTH SHAW LLP
2 Seaport Lane, #300
Boston, Massachusetts 02210
Tel: (617) 737-1900

*Attorneys for Plaintiff*
*NVR, Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

------------------------------------------------------------x

| | |
|---|---|
| NVR, INC., a Virginia corporation, | **ECF CASE** |
| Plaintiff, | Civ. A. No. |
| - against - | **COMPLAINT** |
| JONATHAN DAVERN, an individual, | **(Jury Trial Demanded)** |
| Defendant. | |

------------------------------------------------------------x

Plaintiff NVR, Inc. ("NVR" or "Plaintiff"), by its attorneys, Seyfarth Shaw LLP,

complaining of defendant Jonathan Davern ("Davern" or "Defendant"), alleges as follows:

**NATURE OF THE ACTION**

1.     NVR, one of the nation's premier homebuilding companies, recently learned that

one of its former employees, Davern, in the days leading up to his abrupt June 15, 2015

resignation from NVR, mass-emailed to himself, without NVR's authorization, substantial

quantities of highly confidential and proprietary documents -- at least 50 emails and attachments -- relating to, among other things, lot costs; developer information; timing estimates; NVR bids on various projects; costs to build homes; profit percentages and data that is essential in NVR's analysis of a land development project and putting together bids for a land deal (the "Land Files"); and NVR employee compensation information.

2.      Given Davern's imminent departure, he had absolutely no legitimate business purpose for transmitting these confidential documents to his personal email account. And, given that Davern had been employed with NVR for over ten years and was privy to all aspects of its business, particularly within NVR's Central and South New Jersey Divisions where he worked, Davern knows that NVR's confidential information, and particularly its Land Files, are extremely valuable to NVR and essential to its competitive advantage in the homebuilding industry.

3.      Davern's foregoing nefarious conduct is a direct violation of NVR's Code of Ethics, which contains, among other things, provisions regarding the use and protection of confidential information; NVR's technology policies governing the use and treatment of emails and electronic data containing confidential information; and his statutory and common law obligations to NVR.

4.      Upon information and belief, Davern transmitted the foregoing confidential information with the intent to misuse it for his personal gain. Indeed, at the time that Davern transmitted the confidential documents to his personal email account, upon information and belief, Davern had been offered employment by D.R. Horton, Inc. ("Horton"), one of NVR's largest direct competitors, and was already planning his departure from NVR. Upon information

2

and belief, Davern was also responsible for the loss and corruption of certain data and files from NVR's servers two weeks prior to his resignation.

5. Based upon the foregoing, this is an action for injunctive relief and compensatory and punitive damages arising from Davern's manifest violation of his contractual and other legal obligations to NVR, including, but not limited to, the misappropriation, use, and/or threatened misuse of NVR's confidential, proprietary, or trade secret information, breach of fiduciary duty, unfair competition, and unjust enrichment.

## THE PARTIES

6. NVR, Inc. is a corporation organized under the laws of the State of Virginia, with its principal place of business located in Fairfax County, Virginia.

7. Defendant Davern is a citizen of the State of New Jersey, residing at 1527 Perkins Lane, Edgewater Park, New Jersey 08010.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over this action under 28 U.S.C. § 1332 because the parties are citizens of different states and the matter in controversy exceeds $75,000.00 excluding interests and costs.

9. This Court also has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, based upon a claim arising under the Computer Fraud and Abuse Act, title 18 U.S.C. § 1030, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

10. This Court has personal jurisdiction over Davern, and venue is proper in this District under 28 U.S.C. § 1391(a) by reason of, among others, the fact that Davern resides and conducts business in the State of New Jersey, and a substantial part of the events giving rise to NVR's claims against Davern occurred in the State of New Jersey.

## ALLEGATIONS COMMON TO ALL COUNTS

### I.    NVR's Business

11.    NVR is in the business of selling and constructing homes and operates its business under the Ryan Homes, NVHomes, Fox Ridge Homes and Heartland Homes trade names.

12.    NVR homebuilding operations serve 27 metropolitan areas in fourteen states, including Maryland, Virginia, West Virginia, Pennsylvania, New York, New Jersey, Delaware, Indiana, Illinois, Ohio, North Carolina, South Carolina, Florida and Tennessee, as well as Washington D.C.

13.    NVR's sub-entity, Ryan Homes has constructed more than 345,000 homes since it was founded in 1948.  Today, Ryan Homes offers housing styles to suit a wide range of consumers' needs, including single-family, townhouse or garden condominium.

14.    NVR's sub-entity, NVHomes offers additional architectural details and designer elements tailored to suit the most discriminating of tastes. Established in 1980, NVHomes has earned a reputation for luxury, quality and value.

15.    NVR also operates a business in mortgage banking, operating branches in the metropolitan areas in which NVR has homebuilding operations. NVR Mortgage's primary focus is to serve the needs of NVR homebuyers.

### II.    NVR's Confidential and Proprietary Information

16.    An essential aspect of NVR's business model is to evaluate potential land opportunities, analyze and determine lot costs, developer information, timing estimates, costs to build homes and profit percentages and, premised upon this information, put together a bid to the developer of proposed cost and option terms for the project.

4

17.     Then, if and when NVR's bid is chosen, NVR continues to evaluate and analyze the project, including the timeline, costs and profit margins through completion.

18.     Accordingly, the Land Files reflecting NVR's analysis and evaluation of both potential and closed land deals contain highly sensitive information on which NVR's entire business model is based.

19.     Because the foregoing information provides NVR with a competitive advantage, NVR closely guards and takes extra steps to protect against the unauthorized dissemination of its confidential and trade secret information. With respect to any such information stored electronically on NVR's servers and other NVR owned electronic storage devices, only certain current employees of NVR have access to such information through authorized usernames and passwords.

20.     Furthermore, in order to protect its confidential and trade secret information from unauthorized disclosure, dissemination or misuse, each of NVR's employees, including Davern, is required to agree to NVR's Code of Ethics, which contains, among other things, certain express provisions governing the access, use, treatment and protection of NVR's confidential and trade secret information.

21.     The Code of Ethics is updated from time to time and distributed annually to all NVR employees. The most recent version of the Code of Ethics distributed to Davern, an excerpt of which is attached hereto as **Exhibit A**, states in relevant part:

> Employees of NVR must maintain the confidentiality of information entrusted to them by NVR or its customers, except when disclosure is either expressly authorized by NVR or required by law. Confidential information includes all non-public information, including, but not limited to, information that might be of use to competitors, or harmful to NVR or its customers, if disclosed. It also includes information that suppliers and customers have entrusted to us. NVR requires that each employee preserve NVR's confidential information even after his or her employment

5

or relationship with NVR ends.     Disclosure of NVR's confidential information, even after termination of employment, may result in civil, or in some cases, criminal liability for the individual.

22.     Additionally, the Code of Ethics outlines specific procedures for the return of

electronic and hard copy documents containing NVR confidential information.  Specifically,

All directors, officers and employees must, upon termination of employment with NVR, return all equipment, documents and other NVR information, including originals and copies, whether in electronic or hard copy. *Directors, officers and employees must not make or retain copies of any documents, forms, blueprints, designs, policies, memoranda or other written information developed by NVR or any affiliate of NVR now or hereafter produced and/or circulated by NVR and further agrees not to copy, transfer or otherwise retain any electronic data (including information stored on a hard drive or disk), software (including proprietary software), computer data bases or other non-print information produced, designed, owned, copyrighted or utilized by NVR.*

(emphasis added).

23.     The Code of Ethics also specifies "confidential information" to include, among

other things, "(a) House plans, construction manufacturing systems and procedures manuals; …

(d) Employee salary and benefits data, medical and other personal information about employees; …

(f) Cost, pricing, marketing or service strategies;  … (j) Terms of NVR's lot purchase agreements;

[and] (k) Land and lot positions of profit centers."

24.     The Code of Ethics further prohibits employees from, among other things, (1)

disclosing confidential information to any third party, except where authorized by NVR; (2)

removing confidential information from NVR's premises, or making copies of any material

containing confidential information, except for legitimate NVR business; and (3) using or

disclosing any NVR confidential information for personal profit, or for personal advantage or to

the advantage of another person.

25.     In addition to the Code of Ethics, all employees are also subject to the "NVR End

User Computing Policy", which dictates, among other things, NVR's policies and guidelines

6

regarding the proper use of computing hardware, software and systems provided by the company (the "Computing Policy"). A copy of the Computing Policy is attached hereto as **Exhibit B**.

26.     The Computing Policy provides, among other things, acceptable use of NVR's hardware, acceptable use and practices when accessing the Internet, and acceptable use of email. In particular, the Computing Policy expressly provides, "You may not send any private or confidential data outside of the NVR network through e-mails."

27.     The Computing Policy further reminds NVR employees of the Code of Ethics requiring them to protect any and all "Confidential Information" and security controls implemented by NVR to protect electronically stored confidential information. Such security controls state:

> While, as part of normal business operations, "Confidential Information" is shared/distributed on a pre-arranged basis with certain third parties, you are prohibited from copying and removing "Confidential Information" from NVR offices in any format (paper, computer, disk portable storage device or email) for purposes that are not directly business-related.

28.     In addition, NVR utilizes a web-filtering solution, entitled Proofpoint, which is programmed to flag and trap emails that hit on particular sensitive key words to be subject for further review by NVR's Vice President of Internal Audit & Corporate Governance before being sent. The purpose of the web-filtering solution is to create a second check on emails with sensitive and possibly confidential information from leaving NVR without authorization.

29.     NVR also protects its confidential files by restricting access to its sensitive materials to only those that have express permission. Specifically, access to highly sensitive materials, such as the Land Files, is limited to only those individuals with specific permission to view the files.

**III.    Davern's Employment with NVR**

30.    Davern commenced his employment with NVR over ten and a half years ago as a Project Supervisor.

31.    Over the years, Davern has been promoted to higher level positions within NVR and beginning in May 2015 was a Sales Manager in the New Jersey South Division, overseeing approximately half of the 20-24 Sales and Marketing Representatives assigned to that Division and operating out of the model homes in the developments under construction.

32.    The New Jersey Central Division covers half of Burlington County and north, while the New Jersey South Division covers the other half of Burlington County and south.

33.    In consideration for his employment with NVR and access to NVR's confidential and trade secret information, on January 4, 2005, Davern executed a Human Resources Policies and Procedures Acknowledgement (the "Acknowledgement"), by which Davern agreed to comply with all Human Resources Policies and Procedures, including NVR's Code of Ethics.  A copy of the Acknowledgement is attached hereto as **Exhibit C**.

34.    As a Sales Manager, Davern had access to highly confidential materials, such as the Land Files and files having to do with compensation of NVR employees.

35.    Davern was a highly compensated employee during the last few years of his tenure at NVR, having earned in excess of $200,000 in 2014.  Davern was on pace to exceed that amount of compensation this year before his abrupt resignation from NVR.

**IV.    Davern's Resignation from NVR**

36.    While working as a Sales Manager in the New Jersey South Division, Davern reported directly to the Division Manager, Dylan Sinclair ("Sinclair").

37.     On June 15, 2015, approximately 30 days into working in his new position in New Jersey South, Davern met with Sinclair to tender his resignation.

38.     At this time, Davern provided Sinclair with a resignation letter and informed Sinclair that he was leaving the employ of NVR to work at another homebuilding company.

39.     At first, Davern informed Sinclair that his resignation was premised upon a better employment opportunity with greater responsibility and better pay at this new company.

40.     NVR later learned after his departure that Davern is now employed with Horton – one of its largest competitors in a role similar to the Division Manager role with NVR, overseeing a significant region of New Jersey, competitive with the New Jersey South and Central Divisions.  Horton maintains an office located in Mount Laurel, New Jersey.

41.     As Sinclair attempted to explore the reasons for his decision to leave NVR, Davern explained his dissatisfaction with NVR.  Specifically, Davern informed Sinclair that he felt slighted by NVR over the years, including (1) having to hold the title of "Sales Manager In Training," while other hired along with him were not designated as "in training"; (2) being turned down for promotions because his superiors questioned his "judgment" and "decision-making"; and (3) transitioning from Sales Manager for New Jersey Central to New Jersey South took longer than he anticipated and he felt misled at points during the transition.

42.     At this meeting, Davern offered to continue working for NVR for another two weeks before leaving for his new position, but once Davern confirmed that his decision to resign was final, Sinclair informed him that he should not return to work.

43.     In a subsequent conversation with the District Manager of NVR's New Jersey Central Division, Todd Pallo, Davern disclosed that he was going to work for Horton and had been in contact with Horton regarding a potential job offer since the third week of May 2015.

V.    **Davern's Theft of NVR's Confidential Information**

44.    On June 11, 2015, the NVR IT department notified NVR's Vice President of Internal Audit & Corporate Governance that email monitoring reporting indicated that Davern was sending an unusually high volume of emails outside the company from his NVR email account.

45.    Subsequent to Davern's resignation on June 15, 2015, NVR's Vice President of Internal Audit & Corporate Governance directed the NVR IT Department to review Davern's NVR email account activity and to acquire and inspect Davern's NVR issued computer.

46.    Upon these inspections, the IT department discovered that from at least June 10, 2015 through June 15, 2015, Davern used his NVR email address, jodavern@nvrinc.com, to forward to his personal email address, jon.davern@comcast.net, more than 50 emails and attachments containing NVR's confidential and proprietary information, including, among other things, land agreements containing cost basis and projected profit margins, various land opportunities that were being researched and analyzed by NVR,  and various documents regarding New Jersey land deals, containing sensitive material about the deal and competitive data about the New Jersey market.

47.    In addition, the IT Department determined that all emails in Davern's NVR email account from the previous 30 days and all files on Davern's NVR issued computer, with the exception of his resignation letter, had been deleted.

48.    On Friday, June 12, 2015, one of the last emails that Davern forwarded to his personal email account, attached a "2015 Sales Comp Worksheet," which appears to be NVR's proprietary sales compensation calculation document containing highly sensitive and confidential information regarding the compensation of NVR's sales representatives.

10

49.     All of the foregoing information falls within the meaning of "Confidential Information," as defined in the Code of Ethics and Computing Policy.

50.     Given that Davern resigned on Monday, June 15, 2015, there was no legitimate purpose for Davern to have spent at least his last three days of employment at NVR forwarding confidential information to his personal email account.

51.     Davern was clearly aware that his actions were wrong, as is evident by his deliberate efforts to conceal his misconduct by attempting to remove traces of his improper activities from his NVR email account and NVR issued laptop computer prior to returning it to NVR.

52.     Having been sent to Davern's personal email account, the confidential information could thereafter easily be copied, disclosed to a competitor, or used to undermine NVR's business and competitive advantage.

53.     Given Davern's flagrant taking of confidential information in his final days at NVR, it became apparent that a prior incident regarding certain missing files on NVR's servers was, upon information and belief, the result of Davern's improper actions as well.

54.     Specifically, on or about Monday, June 1, 2015, two weeks prior to Davern's resignation, NVR discovered the "Land Opportunities\Signed Contracts" server folder related to 2015 land contracts and the files contained within it, had been deleted.

55.     The NVR IT team was able to restore the data that went missing from a back-up copy and determined that the server folder "Land Opportunities\Signed Contracts" contained files specifically related to signed land contract documentation for the period 2011 – 2015.

56.     Such data included highly sensitive confidential information, including Land Files regarding lot costs, developer information, timing estimates, NVR bids on various projects, costs

11

to build homes, profit percentages and all data that is essential in NVR's analysis of a land development project and putting together bids for a land deal.

57.     NVR has expended considerable efforts in its investigation of Davern's improper use of NVR's network, the recently discovered data breach, and the recovery of any lost or misappropriated data as a result of Davern's conduct.

58.     Upon information and belief, Davern misappropriated the foregoing confidential information for the purpose of exploiting it for his own personal gain. Indeed, during the time Davern transmitted the confidential information to his personal email accounts just prior to his resignation, Davern likely had already received an offer of employment with Horton, and certainly had already met with Horton, given that it generally takes weeks if not longer for a company to hire an experienced senior sales manager or division manager in this industry.

59.     This confidential information, if disclosed to competitors, could destroy NVR's competitive advantage on any current and future sales project by uncovering the mechanisms and analysis NVR uses in order to break down the cost structure of a project and determine the terms of a deal to make it most cost effective and profitable for NVR.

60.     A competitor with this confidential information could use it to steal land opportunities or consistently under-bid NVR, thus destroying its competitive advantage.

61.     Upon learning of Davern's theft of the confidential information, on June 19, 2015, NVR sent to Davern a cease and desist letter demanding that Davern immediately cease and desist from accessing, using and/or disclosing any of NVR's confidential, proprietary and/or trade secret information and to turn over to NVR such confidential information.

12

62.     Davern immediately contacted the undersigned counsel and admitted to transmitting NVR confidential information to his personal email accounts but denied using or disclosing any such information to third parties.

63.     NVR's investigation into the extent of Davern's misappropriation of NVR's confidential information and other forms of misconduct is continuing.  To date, NVR has devoted substantial internal resources in reviewing its own systems for additional evidence of Davern's theft of the Company's information.  NVR has also retained a third-party investigator to inspect and image Davern's computer and all other electronic devices to which he has access in order to assess the full extent of Davern's misappropriation and to protect NVR from further harm to its business.

## VI.    **Irreparable Harm to NVR**

64.     Davern's misappropriation, misuse, disclosure, and/or threatened disclosure of NVR's confidential information, including Land Files, will harm NVR and its legitimate business interests.

65.     Injunctive relief is necessary and appropriate because if Davern uses or divulges NVR's confidential information, NVR will suffer further damage that cannot be compensated by money alone.

### AS AND FOR A FIRST CAUSE OF ACTION
### (Actual And/Or Threatened Misappropriation of Trade Secrets in Violation of the New Jersey Trade Secrets Act, N.J.S.A. 56:15-1, *et seq.*)

66.     NVR repeats and realleges each and every allegation contained in Paragraphs 1 through 65 of the Complaint as if fully set forth herein.

67.     By virtue of his employment with NVR and his performance of responsibilities for NVR, Davern was given access to and possessed trade secrets and confidential information of NVR, including *inter alia*, highly sensitive confidential and proprietary information regarding lot

costs, developer information, timing estimates, NVR bids on various projects, costs to build homes, profit percentages and all data that is essential in NVR's analysis of a land development project and putting together bids for a land deal and employee salary and benefits data.

68.     This information was developed by NVR at great time, cost, and expense to NVR, and NVR closely guards and takes extra steps to protect against the unauthorized dissemination of such confidential and trade secret information.

69.     NVR derives independent economic value from the confidential information and trade secrets entrusted to Davern by NVR; such information is not generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure and use, and the information is the subject of significant efforts to maintain its secrecy.

70.     Davern acquired NVR's confidential information and trade secrets by improper means and without authorization.

71.     Davern has used, disclosed, and/or threatened to disclose NVR's confidential information or trade secrets improperly acquired by Davern without express or implied consent.

72.     Davern knew or should have known that the information, as described, (a) is confidential; (b) was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; (c) was developed or acquired by NVR at great expense and effort; (d) was maintained as confidential and is not generally available to the public and NVR's competitors; (e) would provide significant benefit to a competitor seeking to compete with NVR,; and (f) is critical to NVR's ability to conduct its business successfully.

73.     Davern actually has misappropriated NVR's trade secrets and confidential information without NVR's consent, in violation of the New Jersey Trade Secrets Act, N.J.S.A. 56:15-1, et seq.

74.     Davern will be or is being unjustly enriched by the misappropriation and/or threatened misappropriation of NVR's trade secrets and confidential information, and, unless restrained, will continue to threaten to use, actually use, divulge, inevitability disclose, acquire and/or otherwise misappropriate NVR's trade secrets and confidential information.

75.     Upon information and belief, Davern's actual and/or threatened misappropriation has been willful and malicious.

76.     As a result of the threatened and/or actual misappropriation of NVR's trade secrets and confidential information, NVR will be threatened with loss of business expectancies, customers, its trade secrets and goodwill in amounts which may be impossible to determine, unless Davern is enjoined and restrained by order of the Court.

77.     In addition, NVR seeks actual, incidental, compensatory, punitive and consequential damages, along with reasonable attorneys' fees and costs in an amount to be determined at trial.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Violation of the Computer Fraud & Abuse Act, 18 U.S.C. § 1030 *et seq.*)

78.     NVR repeats and realleges each and every allegation contained in Paragraphs 1 through 77 of this Complaint as if fully set forth herein.

79.     NVR's computer network, containing, among other things, NVR's confidential and trade secret information, is a protected computer network which is used across state lines in interstate commerce, has Internet access across state lines, and was used to transfer NVR information for sales in interstate commerce.

15

80.     NVR's computers are "protected computers" used in interstate commerce and communication within the meaning of 18 U.S.C. § 1030(e)(2).

81.     Authorized NVR employees access NVR's computer systems knowing that the data therein contains confidential and trade secret information, and access it solely for purposes of carrying out their assigned job duties and responsibilities.

82.     Davern was not authorized by NVR, and/or exceeded his authority as governed by NVR's Computing Policy, to access NVR's computer network to copy, download or transfer NVR's confidential information to his personal email accounts for his own use and gain as described herein.

83.     Davern was also not authorized by NVR, and /or exceeded his authority as governed by NVR's Computing Policy, to access NVR's protected servers to copy, alter, remove or delete NVR's confidential information for his own use and gain as described herein.

84.     Indeed, upon information and belief, Davern was responsible for the loss and corruption of certain confidential data and files from NVR's servers two weeks prior to his resignation, which NVR was able to restore from a back-up copy and determined that the server folder "Land Opportunities\signed Contracts" contained files specifically related to signed land contract documentation for the period 2011 - 2015.

85.     In addition, Davern further attempted to and did in fact partially destroy and spoliate certain email communications, files, and other confidential, proprietary and trade secret information stored electronically on his NVR email account and NVR laptop in an effort to conceal his misconduct.

86.     Through his actions as set forth above, Davern has:

(a)     intentionally accessed a computer network without authorization and/or exceeded authority to obtain information from a protected computer in violation of 18 U.S.C. Section 1030(a)(2)(C);

(b)     knowingly and with intent to defraud, accessed a protected computer network without authorization and/or exceeded authority, and by means of such conduct furthered the intended fraud and obtained valuable information, resulting in damage exceeding $5,000.00 in violation of 18 U.S.C. Section 1030(a)(4); and/or

(c)     intentionally accessed a protected computer network without authorization and/or exceeded authority, and, as a result of such conduct, caused damage exceeding $5,000.00 in violation of 18 U.S.C. Section 1030(a)(5)(A)(iii).

87.     In addition, Davern's theft of NVR's confidential electronic data has caused NVR to devote resources to investigate the extent of damage caused by Davern's misconduct. NVR has also retained a third-party investigator to inspect and image Davern's computer and all other electronic devices to which he has access in order to assess the full extent of Davern's misappropriation and to protect NVR from further harm to its business.

88.     NVR has suffered damages, exceeding $5,000, as a result of Davern's actions in an amount to be determined at trial, and because its remedy at law is inadequate, NVR seeks injunctive relief to recover and protect its information and other legitimate business interests.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Violation of New Jersey's Computer Related Offenses Act, N.J.S.A. 2A:38A-3)

89.     NVR repeats and realleges each and every allegation contained in Paragraphs 1 through 88 of this Complaint as if fully set forth herein.

90.     Through his actions as set forth above, Davern has:

(a)     purposefully or knowingly, and without authorization, altered, damaged, took, or destroyed data existing internally in NVR's computers and computer systems, causing damage in business or property to NVR in violation of N.J.S.A. 2A:38A-3(a);

(b)     purposefully or knowingly, and without authorization, accessed a computer system causing damage in business or property to NVR in violation of N.J.S.A. 2A:38A-3(c); and/or

(c)     purposefully or knowingly, and without authorization, accessed and recklessly altering, damaging, destroying or obtaining data from NVR's computers and computer systems, causing damage in business or property to NVR in violation of N.J.S.A. 2A:38A-3(e).

91.     Davern's theft of NVR's confidential electronic data has caused NVR to devote resources to investigate the extent of damage caused by Davern's misconduct. NVR has also retained a third-party investigator to inspect and image Davern's computer and all other electronic devices to which he has access in order to assess the full extent of Davern's misappropriation and to protect NVR from further harm to its business.

92.     As a result of the foregoing computer related offenses, NVR will be threatened with loss of business expectancies, customers, its trade secrets and goodwill in amounts which may be impossible to determine, unless Davern is enjoined and restrained by order of the Court.

93.     In addition, NVR seeks actual, incidental, compensatory, punitive and consequential damages, along with reasonable attorneys' fees and costs in an amount to be determined at trial.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Breach of Contract: Violation of Code of Ethics)

94.     NVR repeats and realleges each and every allegation contained in Paragraphs 1 through 93 of this Complaint as if fully set forth herein.

95.     On or about January 4, 2005, Davern acknowledged receipt of the Code of Ethics and agreed to comply with the terms therein, which explicitly prohibited him from, *inter alia*, using or divulging any of NVR's confidential information other than in the performance of duties for and authorized by NVR.

96.     The confidential obligations contained in the Code of Ethics remain in full force and effect, and Davern, for good consideration, remains obligated to comply with those obligations.

97.     Davern breached the Code of Ethics by, upon information and belief, using and/or disclosing NVR's confidentialinformation, including the Land Files, for his own benefit and for an unauthorized purpose.

98.     Davern's actions have damaged NVR's legitimate business interests, and have denied NVR the benefit of its bargain in respect to the Code of Ethics.

99.     As a result of Davern's breach, NVR has suffered and continues to suffer irreparable injury, including loss of its confidential and trade secret information, business expectancies, and damage to goodwill, for which a remedy at law is inadequate. Accordingly, NVR is entitled to injunctive and equitable relief.

100.    In addition, as a consequence of Davern's breach of the Code of Ethics, NVR seeks actual, incidental, compensatory, punitive and consequential damages, along with reasonable attorneys' fees and costs in an amount to be determined at trial.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Breach of Contract: Specific Performance -
### Return of Property and Confidential Information)

101.    NVR repeats and realleges each and every allegation contained in Paragraphs 1 through 100 of this Complaint as if fully set forth herein.

102.    Pursuant to the Code of Ethics, Davern agreed to return all NVR property and information upon cessation of his employment with NVR.

103.    Davern breached the Code of Ethics by failing to return at the time of his resignation NVR's information that he retained, including any confidential information.

104.    As a direct result of Davern's breach, NVR is suffering and will continue to suffer irreparable injury, including loss of business expectancies, its confidential and trade secret information, and damage to goodwill, for which a remedy at law is inadequate. Accordingly, NVR is entitled to specific performance, injunctive and equitable relief.

105.    In addition, as a consequence of Davern's breach of the Code of Ethics, NVR seeks actual, incidental, compensatory, punitive and consequential damages, along with reasonable attorneys' fees and costs in an amount to be determined at trial.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Breach of Fiduciary Duty)

106.    NVR repeats and realleges each and every allegation contained in Paragraphs 1 through 105 of this Complaint as if fully set forth herein.

107.    In his role as Sales Manager at NVR, Davern was placed in a position of trust and confidence, and was expected to devote his full time to the management and promotion of NVR's business interests.

108. As a result of this special relationship and privilege, Davern owed certain fiduciary duties to NVR including, but not limited to, a duty of loyalty and honesty, and a duty not to act in a way contrary to the interests of NVR.

109. Based on this fiduciary relationship, Davern owed, among other things, a duty to not misappropriate business and business opportunities, a duty to act in NVR's best interests, and a duty generally not to do anything on behalf of a competing business, while employed by NVR.

110. During the course of his employment with NVR, Davern breached his fiduciary duty by, among other things, failing to act in NVR's best interests; misappropriating NVR's trade secrets and confidential information; failing to return the trade secret and confidential information; and by using or disclosing that information for the benefit of himself contrary to NVR's best interests.

111. As a direct result of Davern's breach of his fiduciary duties, NVR is suffering and will continue to suffer irreparable injury, including loss of business expectancies, its confidential and trade secret information, and damage to goodwill, for which a remedy at law is inadequate. Accordingly, NVR is entitled to injunctive and equitable relief.

112. In addition, as a consequence of Davern's breach of fiduciary duties, NVR seeks actual, incidental, compensatory, punitive and consequential damages, along with reasonable attorneys' fees and costs in an amount to be determined at trial.

## AS AND FOR AN SEVENTH CAUSE OF ACTION
### (Unfair Competition)

113. NVR repeats and realleges each and every allegation contained in Paragraphs 1 through 112 of the Complaint as if fully set forth herein.

21

114.    Davern undertook the above-described acts of breaching of contractual obligations and fiduciary duties and misappropriation and/or threatened misappropriation of confidential information, to gain an unfair competitive advantage over NVR.

115.    Davern willfully undertook the foregoing acts with knowledge of and disregard for NVR's contractual, statutory, and common law rights, and with the intention of causing harm to NVR and benefiting himself.

116.    As a result of Davern's actions, upon information and belief, Davern is unfairly competing in the marketplace using NVR's confidential and trade secret information.

117.    As a result of Davern's unfair competition, NVR will be threatened with loss of business expectancies, customers, its trade secrets and goodwill in amounts which may be impossible to determine, unless Davern is enjoined and restrained by order of the Court.

118.    In addition, NVR seeks actual, incidental, compensatory, punitive and consequential damages, along with reasonable attorneys' fees and costs in an amount to be determined at trial.

## AS AND FOR A EIGHTH CAUSE OF ACTION
### (Unjust Enrichment)

119.    NVR repeats and realleges each and every allegation contained in Paragraphs 1 through 118 of this Complaint as if fully set forth herein.

120.    Davern obtained NVR's confidential information that in equity and good conscience he should not have obtained.

121.    Davern's theft of the NVR's confidential and trade secret information has unjustly enriched Davern at NVR's expense.

122.    As a consequence of Davern's unjust enrichment, NVR has been and will continue to be injured, for which it is entitled to recover actual, incidental, compensatory,

22

punitive and consequential damages, along with reasonable attorneys' fees and costs in an
amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff NVR seeks judgment in its favor and an Order against Davern
that grants the following relief:

1. A preliminary injunction and after trial, a permanent injunction that:

  (a) Preliminarily and permanently enjoins Davern from violating NVR's Code
   of Ethics;

  (b) Preliminarily and permanently enjoins Davern, and all persons and/or
   entities acting on his behalf, for his benefit or in active concert or
   participation with him, from accessing, using or disclosing any of NVR's
   proprietary, confidential and trade secret information;

  (c) Preliminarily and permanently enjoins Davern, and all persons and/or
   entities acting on his behalf, for his benefit or in active concert or
   participation with him from directly or indirectly soliciting NVR
   employees by using confidential, proprietary and/or trade secret
   information of any kind, nature or description belonging to NVR;

2. Orders that Davern and all parties in active concert or participation with him to
  return to NVR all originals and copies of all files, devices and/or documents that
  contain or relate to NVR's confidential, proprietary and trade secret information;

3. Orders that Davern produce for inspection and imaging all computers and other
  electronic storage devices and email accounts belonging to, under the control of,
  accessible to, or operated by Davern;

23

4.      Actual, incidental, compensatory, and consequential damages in an amount to be proven at trial;

5.      Punitive damages in an amount to be proven at trial due to Davern's willful and malicious conduct;

6.      Costs and expenses incurred herein, including reasonable attorneys' fees and interest; and

7.      All other relief as the Court may deem just, equitable and proper.

Dated:    New York, New York
          July 2, 2015

SEYFARTH SHAW LLP

By:_____
       James S. Yu
       620 Eighth Avenue
       New York, New York  10018-1405
       Tel:  (212) 218-5500

Barry J. Miller
(*Pro Hac Vice* Motion To Be Filed)
SEYFARTH SHAW LLP
2 Seaport Lane, #300
Boston, MA 02210
Tel:  (617) 737-1900

*Attorneys for Plaintiff*
*NVR, Inc.*

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I certify that, to the best of my knowledge, this matter is not the subject of any other

action pending in any court or of any pending arbitration or administrative proceeding.

Dated:  New York, New York
        July 2, 2015

SEYFARTH SHAW LLP

By:_____
        James S. Yu
        620 Eighth Avenue
        New York, New York  10018-1405
        Tel:  (212) 218-5500

        Barry J. Miller
        (*Pro Hac Vice* Motion To Be Filed)
        SEYFARTH SHAW LLP
        2 Seaport Lane, #300
        Boston, MA 02210
        Tel:  (617) 737-1900

        *Attorneys for Plaintiff*
        *NVR, Inc.*