### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

NVR, INC.

       Plaintiff,

     v.                 Civ. No. 15-5059 (NLH/KMW)

JONATHAN DAVERN,

       Defendant.              **OPINION**

**APPEARANCES:**

JAMES S. YU
BARRY J. MILLER (*Pro Hac Vice*)
SEYFARTH SHAW, LLP
620 EIGHTH AVENUE
NEW YORK, NY 10018-1405
    *On behalf of Plaintiff NVR, Inc.*

EDWARD T. KANG
DANIEL D. HAGGERTY
KANG HAGGERTY & FETBROYT LLC
123 S. BROAD STREET, SUITE 1670
PHILADELPHIA, PA 19109
    *On behalf of Defendant Jonathan Davern*

**HILLMAN**, District Judge

    This matter comes before the Court by way of Plaintiff NVR, Inc.'s ("NVR") Motion for Temporary Restraining Order [Doc. No. 4].[1] The Court held oral argument on December 15, 2015. For the

---

[1] On July 2, 2015, the parties entered into a temporary restraining order by consent. The order temporarily enjoined and restrained Defendant Jonathan Davern "and all persons and/or entities acting on his behalf, for the benefit or in active concert or participation with him, from directly or indirectly

reasons expressed at the hearing as supplemented in this Opinion, Plaintiff's motion will be granted.

**I.   BACKGROUND**

NVR, one of the nation's largest homebuilding companies, seeks injunctive relief to prevent one of its former employees, Jonathan Davern, from misappropriating alleged confidential and trade secret information.  Davern worked for NVR for over ten years, reaching the position of Sales Manager of the New Jersey South Division.  Importantly, Davern was not subject to a non-compete agreement.

During his employment with NVR, Davern signed a Human Resources Policies and Procedures Acknowledgement by which he agreed to comply with NVR's Code of Ethics.  The Code of Ethics contains provisions governing the access and protection of NVR's confidential and trade secret information.  To further protect its sensitive information, NVR employs a web-filtering program designed to trap emails which contain potentially confidential information.

---

accessing, disclosing, reproducing, or using any confidential, proprietary and/or trade secret information of any kind, nature or description belonging to NVR" and "from directly or indirectly soliciting NVR employees by using confidential, proprietary and/or trade secret information of any kind, nature of description belonging to NVR."  See July 2, 2015 Consent Order at 1-2 [Doc. No. 5].

On June 15, 2015, Davern tendered his resignation to NVR as a result of his acceptance of position with a direct competitor, D.R. Horton ("Horton").  NVR discovered that before resigning, Davern forwarded a number of work emails to his personal email account which contained, according to NVR, confidential and trade secret information.  NVR additionally alleges Davern copied his entire NVR email archive (66,000+ files) as well as other confidential and trade secret documents (30,000+ files) to flash drives, and then wiped these files from his NVR laptop and NVR's servers.

NVR further alleges Davern attempted to facilitate the recruitment of key NVR employees and sent Horton his business plan which included a scheme to harm NVR by taking its business.[2] NVR asserts Davern sent Horton a list of 40 NVR land deals and obtained a substantial amount of confidential information including documents related to pricing strategy and the design of land purchase agreements.

On June 19, 2015, NVR sent Davern a cease and desist letter demanding that Davern immediately cease and desist from accessing, using, or disclosing any of NVR's confidential and trade secret information.  Davern contends that after receiving

---

[2] NVR also discovered a text message from Davern to another individual which states that he intended to "put NVR out of business in PA/NJ/DE."

this notice he immediately turned over all of the NVR
information he previously procured.  Davern argues he no longer
has access to any NVR information and never used the information
he obtained, thus rendering a preliminary injunction
unnecessary.  For the reasons expressed on the record at oral
argument, the Court finds a narrow injunction is required to
protect the status quo until this case is resolved.  The Court
briefly recounts its reasoning herein.

## II.  DISCUSSION

In deciding whether to issue a preliminary injunction, a
district court must weigh four factors: (1) whether the movant
has shown a reasonable probability of success on the merits; (2)
whether the movant will be irreparably injured by denial of the
relief; (3) whether granting preliminary relief will result in
even greater harm to the nonmoving party; and (4) whether
granting the preliminary relief will be in the public interest.
Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir. 1994).

While NVR asserts a sundry of claims against Davern, the
Court will analyze NVR's most all-encompassing claim,
misappropriation under the New Jersey Trade Secrets Act,
N.J.S.A. 56:15-1, et seq.  Under this Act, misappropriation is
defined as:

> (1) Acquisition of a trade secret of another by a
> person who knows or has reason to know that the trade

4

> secret was acquired by improper means; or (2)
> Disclosure or use of a trade secret of another without
> express or implied consent of the trade secret owner
> by a person who: (a) used improper means to acquire
> knowledge of the trade secret; or (b) at the time of
> disclosure or use, knew or had reason to know that the
> knowledge of the trade secret was derived or acquired
> through improper means; or (c) before a material
> change of position, knew or had reason to know that it
> was a trade secret and that knowledge of it had been
> acquired through improper means.

N.J.S.A. § 56:15-2.  The Act further provides that "[a] person who misappropriates a trade secret shall not use as a defense to the misappropriation that proper means to acquire the trade secret existed at the time of the misappropriation."  N.J.S.A. § 56:15-5.

The Court finds NVR is likely to succeed on its misappropriation claim because NVR discovered that Davern sent Horton a list of 40 land deals and obtained a substantial amount of confidential information including documents related to pricing strategy and the design of land purchase agreements. Based on these actions, the Court finds that NVR is likely to prove that Davern acquired NVR's trade secrets and knew, or had reason to know, that the trade secrets were acquired by improper means.  See N.J.S.A. 56:15-2.  NVR is also likely to prove Davern intended to use this information for purposes of unfair competition.

To be clear, the Court draws a distinction between information Davern learned from his many years of employment with NVR in the homebuilding industry and the information he took from NVR in anticipation of his resignation.  The Court is not enjoining Davern from using the generalized industry knowledge and even company specific information he obtained through his years of employment.  This Court will not enjoin Davern's use of information he retained by memory because NVR cannot show a likelihood of success on the merits that such information was obtained through improper means, as required by the statute.

However, Davern did more than walk out the door with information he learned through the course of his employment; he left with thousands of internal NVR documents, downloaded and copied in violation of NVR's corporate policy.  The evidence supports the conclusion that Davern obtained this information with the intent of benefiting himself financially and harming NVR commercial interests in favor of his new employer.

Thus, the Court will issue a narrow injunction which enjoins Davern, and anyone else acting in concert with him, from directly or indirectly accessing, disclosing, reproducing or otherwise using the documents and electronic records Davern obtained and retained improperly or otherwise using any information derived from those documents and electronic records.

The injunction will include related relief to insure the injunction is complied with.  However, the Court will not bar Davern from using his general industry knowledge and even company specific information so long as that information was disclosed to Davern during the ordinary course of his many years of employment.  NVR could have precluded Davern from using such information through a contractually based non-compete agreement but chose not to do so.

The remaining preliminary injunction factors also resolve in favor of injunctive relief.  NVR contends that Davern may have additional confidential or trade secret information that he has not turned over.  NVR asserts that if it is not protected by an injunction and such documents are released it is at risk of suffering irreversible competitive harm.  While Davern argues that he cannot disclose information he no longer has access to the Court recognizes NVR does not want to "wait and see" if it will be further harmed in light of Davern's alleged "plot" to harm its business.  A party may not defeat an otherwise proper application for an injunction by merely abandoning conduct that if continued or completed would have constituted irreparable harm.  The improper disclosure and use of the trade secrets identified in this case would constitute such harm.

Davern additionally argues that he will be harmed if injunctive relief is granted because it may affect his

7

employment with his current employer, Horton.  NVR contends that Davern will not be harmed by being forbidden to use information he has no right to use or disclose.  Horton has no interest in Davern's use of improperly obtained information and Davern can claim no harm by being obligated to compete only by lawful means.  Clearly, the balance of hardships favors the Plaintiff. Finally, the Court finds there is a public interest in promoting fair commercial practices and protecting confidential and trade secret information.  For these reasons, the Court believes a narrow injunction is necessary.

While NVR asks the Court to adopt the consent order previously entered into by the parties, the Court finds the language of that order too broad, considering that Davern was not a party to a non-compete agreement.  Accordingly, the Court finds it is appropriate to enter Plaintiff's December 17, 2015 proposed order which, in pertinent part, enjoins Davern, and all persons or entities acting in concert with him, from accessing or using directly or indirectly NVR's confidential or trade secret information contained in the documents and electronic records downloaded, stored, and removed by Davern by improper means.

**III. CONCLUSION**

For the foregoing reasons, NVR's Motion for Temporary Restraining Order [Doc. No. 4] will be granted.[3]  An Order consistent with this Opinion will be entered.


                                        s/ Noel L. Hillman
                                   NOEL L. HILLMAN, U.S.D.J.
        Date:    December 23, 2015
        At Camden, New Jersey

---

[3]  Having determined that Plaintiff's claim under New Jersey Trade Secrets Act provides a sufficient basis for the requested interim relief, we need not address Plaintiff's other asserted grounds for injunctive relief.