## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

——————————————————x

NVR, INC., a Virginia corporation,

                Plaintiff,

        - against -

JONATHAN DAVERN, an individual,

                Defendant.

——————————————————x

:
: **ECF CASE**
:
: Docket No. 15-cv-05059-NLH-
: KMW
:
:
:
:
:
:
:

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF NVR, INC.'S MOTION TO STRIKE OR DISMISS DEFENDANT'S COUNTERCLAIMS

Dated: March 11, 2016

*Of Counsel:*
    James S. Yu
    Barry J. Miller (*Pro Hac Vice* admission)
    Lauren Wachsman (*Pro Hac Vice* admission)

## SEYFARTH SHAW LLP

620 Eighth Avenue
New York, New York 10018
(212) 218-5500

Attorneys for Plaintiff
NVR, Inc.

# TABLE OF CONTENTS

FACTUAL BACKGROUND ........................................................................ 2

I.     Procedural History ......................................................................... 2

II.    Davern's Untimely Answer and Counterclaims ............................. 6

ARGUMENT........................................................................................... 8

I.     Davern's Counterclaims Are Procedurally Improper.................... 8

II.    Davern's Counterclaims Are Barred by the Litigation Privilege .................11

       A.   Davern's Abuse of Process Claim Is Barred by the Litigation
            Privilege .............................................................................13

       B.   Davern's Tortious Interference Claim Is Barred by the
            Litigation Privilege ............................................................18

            1.   NVR's Communications with Horton regarding this
                 Litigation Are Absolutely Privileged ......................19

            2.   NVR's Pursuit of Judicial Relief is Protected by the
                 Litigation Privilege ................................................24

       C.   The Only Statements upon which Davern's Defamation Claim
            Could Be Based Are Protected by the Litigation Privilege ...............26

III.   Davern Cannot Plead the Elements of his Counterclaims...........................27

       A.   Davern Cannot Plead the Elements of an Abuse of Process
            Claim .................................................................................28

       B.   Davern Cannot Plead the Elements of a Tortious Interference
            Claim .................................................................................31

       C.   Davern's Defamation Claim Fails to Provide  Fair Notice of the
            Grounds upon which the Claim Rests ..................................34

CONCLUSION ...................................................................................36

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*7-Eleven, Inc. v. Sodhi*,
　　2016 WL 541135 (D.N.J. 2016)........................................................................11

*Allia v. Target Corp.*,
　　2008 WL 1732964 (D.N.J. 2008)..................................................... 13, 16, 26, 34

*Ashcroft v. Iqbal*,
　　556 U.S. 662 (2009)........................................................................................28

*Baglini v. Lauletta*,
　　338 N.J. Super. 282 (App. Div. 2001).................................................. 11, 12, 18

*Bell Atl. Corp. v. Twombly*,
　　550 U.S. 544 (2009)......................................................... 2, 25, 27, 28, 33, 36

*Bose v. Horizon Blue Cross Blue Shield of N.J.*,
　　2014 WL 1293861 (D.N.J. 2014)....................................................................35

*Cnty. of Hudson v. Janiszewski*,
　　351 F. App'x 662 (3d Cir. 2009)....................................................................28

*Component Hardware Gr., Inc. v. Trine Rolled Moulding Corp.*,
　　2007 WL 2177667 (D.N.J. 2007)............................................. 16, 17, 29, 30, 31

*DeVivo v. Ascher*,
　　228 N.J. Super. 453 (App. Div. 1988)....................12, 17, 18, 20, 21, 22, 23, 25

*Diversified Indus., Inc. v. Vinyl Trends, Inc.*,
　　2014 WL 4199059 (D.N.J. 2014).......................................................... 32, 33, 34

*Found. Credit Funds, LLC v. Branch Banking & Tr. Co.*,
　　2006 WL 3780677 (D.N.J. 2006)....................................................................32

*Fowler v. UPMC Shadyside*,
　　578 F.3d 203 (3d Cir. 2009)....................................................................27, 28

*Hawkins v. Harris*,
　　141 N.J. 207 (1995) ....................................................12, 13, 17, 20, 21, 24, 26

*Jewett v. IDT Corp.*,
  2007 WL 2688932 (D.N.J. 2007)...........................................................30, 31

*Koger, Inc. v. Klco*,
  2009 WL 905061 (D.N.J. 2009).....................................................................33

*Lamorte Burns & Co. v. Walters*,
  167 N.J. 285 (2001) ....................................................................................32

*Loigman v. Twp. Comm. of Twp. of Middleton*,
  185 N.J. 566 (2006) ............................................... 12, 17, 18, 21, 26

*Lynch v. N.J. Educ. Ass'n.*,
  161 N.J. 152 (1999) ....................................................................................35

*Middlesex Concrete Prods. & Excavating Corp. v. Cateret Indus. Ass'n*,
  68 N.J. Super. 85 (App. Div. 1961)................................................................18

*In re Nice Sys., Ltd. Sec. Litig.*,
  135 F. Supp. 2d 551 (D.N.J. 2001)................................................................28

*Nippon Steel & Sumitomo Metal Corp. v. POSCO*,
  2014 WL 3446757 (D.N.J. 2014)....................................................................9

*Novartis Pharm. Corp. v. Bausch & Lomb, Inc.*,
  2008 WL 4911868 (D.N.J. 2008)..................................................................34

*Owens-Illinois, Inc. v. Lake Shore Land Co.*,
  610 F.2d 1185 (3d Cir. 1979).........................................................................8

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
  998 F.2d 1192 (3d Cir. 1993).......................................................................20

*Penwag Prop. Co., Inc. v. Landau*,
  148 N.J. Super. 493 (App. Div. 1977), *aff'd*, 76 N.J. 595 (1978) ....................28

*Ritger v. Gatlin*,
  2010 WL 1490582 (D.N.J. 2010)..................................................................17

*Ruberton v. Gabage*,
  280 N.J. Super. 125 (App. Div. 1995)...........................................................24

*S. New Eng. Tel. Co. v. Glob. Naps, Inc.*,
2007 WL 521162 (D. Conn. 2007)......................................................................8

*SBK Catalouge P'ship v. Orion Pictures Corp.*,
723 F. Supp. 1053 (D.N.J. 1989)......................................................................29

*Schmidt v. Skolas*,
770 F.3d 241 (3d Cir. 2014)..........................................................................3, 4

*Simone v. Golden Nugget Hotel & Casino*,
844 F.2d 1031 (3d. Cir. 1988)........................................................................25

*Slim CD, Inc. v. Heartland Payment Sys, Inc.*,
2007 WL 2459349 (D.N.J. 2007)..................................................................9, 10

*Sols. Partners, Inc. v. Thomas*,
2010 WL 2036139 (D.N.J. 2010)................................................................31, 32

*TD Bank, N.A. v. Hill*,
2014 WL 413525 (D.N.J. 2014)..................................................................21, 22

*Tedards v. Auty*,
232 N.J. Super. 541 (App. Div. 1989)..............................................................29

*Valentine v. Bank of Am.*,
2010 WL 421087 (D.N.J. 2010)......................................................................34

*Wallach v. Gowing*,
2009 WL 3762901 (App. Div. 2009) ......................................................12, 13, 26

*Williams v. Kenney*,
379 N.J. Super. 118 (App. Div. 2005)..........................................................17, 21

*Zagami, LLC v. Cottrell*,
403 N.J. Super. 98 (App. Div. 2008)............................................................17, 21

**Statutes**

Computer Fraud and Abuse Act ............................................................................3

New Jersey's Computer Related Offenses Act ........................................................3

**Other Authorities**

Fed. R. Civ. P. 11(c)(2) ........................................................................... 7

Fed. R. Civ. P. 12(b)(6) ......................................................................... 27

Fed. R. Civ. P. 12(f) ................................................................................ 8

Fed. R. Civ. P. 15(a)(3) ........................................................................... 9

Fed. R. Civ. P. 15(d) ............................................................................... 8

The counterclaims that Defendant Jonathan Davern asserts in this matter are procedurally defective and devoid of a substantive legal foundation. The procedural failings of Davern's counterclaims include the fact that they were filed late and without leave of Court.

Davern's counterclaims also fail in substance. Each of the three claims – (1) abuse of process, (2) tortious interference with existing and prospective relationships, and (3) defamation – is premised entirely upon NVR's statements and actions in the course of this litigation, which culminated in the Company's successful bid for a Preliminary Injunction against Davern. For that reason, all of the conduct of which Davern complains is absolutely immunized by the litigation privilege. Davern's effort to effect tit-for-tat retribution by asserting legal claims against NVR in retaliation for the Company's defense of its legal interests therefore fails as a matter of law.

In addition, Davern has not pled – and cannot plead – facts that establish the requisite elements of his counterclaims. For example, Davern cannot allege that he suffered any harm as a result of NVR's supposed "abuse of process" because the Preliminary Injunction Order on which he attempts to premise that counterclaim merely prohibits him from exploiting information that he misappropriated from NVR, which he admits he could not lawfully do, even in the absence of an injunction. Similarly, although Davern bluntly asserts that NVR interfered with his

relationship with D.R. Horton by prosecuting this case, he does not allege that NVR's conduct caused him to lose his job or any identified perquisite of his employment; indeed, he remains a very highly compensated employee of Horton today.  In the same vein, while Davern accuses NVR of defamation, he fails even to identify any statements on which he could premise that counterclaim; it is not clear which statements he contends give rise to liability, who made them, or in what context(s) they were made.

For these reasons and those discussed below, the Court should dismiss Davern's counterclaims with prejudice.

## FACTUAL BACKGROUND[1]

### I.    Procedural History

NVR initiated this action on July 2, 2015, alleging that in the weeks leading up to Davern's abrupt June 15, 2015 resignation from NVR, Davern, among other things, (1) emailed to himself, without NVR's authorization, substantial quantities of  highly confidential and proprietary documents; and (2) upon information and belief, was responsible for the loss and corruption of certain data and files from NVR's servers.  *See, e.g.*, Dkt. 1, Compl. ¶¶ 1, 4.  NVR's Complaint asserted eight claims against Davern, including misappropriation or threatened misappropriation

---

[1] Solely for purposes of this Motion to Dismiss, NVR treats the factual allegations set forth in Davern's counterclaims as true.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2009).

2

of trade secrets, violation of the Computer Fraud and Abuse Act and New Jersey's Computer Related Offenses Act, breach of contract, breach of fiduciary duty, unfair competition, and unjust enrichment. *Id.* Counts I-VIII.

When NVR filed its Complaint, it simultaneously filed an Emergency Motion for a Temporary Restraining Order, Preliminary Injunction, Expedited Discovery, and Preservation Order ("Motion for Preliminary Injunction"). Dkt. 4. In response, the Court issued a Consent Order with Temporary Restraints, which, *inter alia*, temporarily enjoined Davern from accessing, disclosing, reproducing, or using any confidential, proprietary, or trade secret information belonging to NVR, and from soliciting NVR employees using any such information. *See* Dkt. 5.

In the initial rounds of discovery, NVR learned that the scope of Davern's conduct was even broader than the Company had previously understood. In addition to e-mailing NVR documents to his personal accounts, Davern also smuggled tens of thousands of files containing confidential, proprietary and trade secret information out of the Company on thumb drives. *See* Dkt. 82, Am. Compl. ¶¶ 2-3, 61-63, 69; Dkt. 91, Reply Mot. Prelim. Inj. at 1, 8-11.[2] He also attempted

---

[2] The Court may consider the content of NVR's Amended Complaint and Motion for Preliminary Injunction in connection with this Motion to Dismiss because those pleadings constitute "document[s] *integral to or explicitly relied upon*" in Davern's counterclaims. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quotation marks and citation omitted). For example, Davern's abuse of process claim is premised in part upon NVR making allegedly false statements in both pleadings. *See* Counterclaim ¶ 6, 20, 36, 98, 132-33, 143.

to covertly recruit NVR's employees to leave the Company, while still employed as a management employee of NVR. *See* Dkt. 91, Reply Mot. Prelim. Inj. at 1, 3-5. Finally, Davern apprised Horton of business opportunities that NVR was pursuing, in an effort to divert those opportunities to his new employer. *Id.* at 5-7.

On December 15, 2015, the Court held a hearing on NVR's Motion for Preliminary Injunction. *See* Dkt. 66. After hearing approximately two hours of argument from the parties, the Court stated that it would grant NVR's motion, and directed NVR to submit a proposed order. Dkt. 70, Hrg. Tr. at 67-68. [3]

On December 23, 2015, the Court issued an Opinion providing its rationale for granting the Preliminary Injunction. *See* Dkt. 71. The Court held that "NVR is likely to succeed on its misappropriation claim because NVR discovered that Davern sent Horton a list of 40 land deals and obtained a substantial amount of confidential information including documents related to pricing strategy and the design of land purchase agreements." *Id.* at 5; *see also id.* at 6 (Davern "left with

_____

[3] The Court may consider the content of the transcript of the preliminary injunction hearing, the Court's Opinion granting NVR's Motion for Preliminary Injunction, and the Preliminary Injunction Order in connection with this Motion to Dismiss because those documents are "integral to or explicitly relied upon" by Davern. *Schmidt*, 770 F.3d at 249. For example, Davern's abuse of process claim is premised in part on NVR's statements at the hearing and the Court's reliance on those statements (and others) in its Opinion granting NVR's Motion for Preliminary Injunction. *See, e.g.*, Counterclaim ¶ 133, 137, 139-40. Davern also contends that NVR abused process by preparing an overbroad proposed injunction order, "which the Court entered without change." *Id.* ¶ 141-42.

thousands of internal NVR documents, downloaded and copied in violation of NVR's corporate policy"). Further, "[t]he evidence supports the conclusion that Davern obtained this information with the intent of benefiting himself financially and harming NVR commercial interests in favor of his new employer." *Id.* at 6. Finally, the Court recognized that the balance of harms weighed in NVR's favor. While NVR faced the prospect of irreparable harm if Davern was not enjoined from utilizing stolen information to illegally compete with NVR, Davern would not be harmed by such a restraint. The Court rejected Davern's contention that his relationship with Horton may be harmed by such injunctive relief: "Davern can claim no harm by being obligated to compete only by lawful means." *Id.* at 8. Based on this reasoning, the Court entered a Preliminary Injunction Order based on the proposed order that NVR had submitted.[4] *Id.*; Dkt. 72.

In pertinent part, the Preliminary Injunction Order enjoins Davern and all persons or entities acting in concert with him from accessing or using, directly or indirectly, NVR's confidential and/or trade secret information contained in the documents that Davern took from NVR. *See* Dkt. 72. The Order does not restrict Davern from competing lawfully with NVR or otherwise limit the lawful performance of his job duties at Horton. *See id.*

---

[4] Davern submitted his own proposed order following the hearing on NVR's Motion for Preliminary Injunction. Dkt. 68. The Court rejected Davern's proposal and adopted NVR's. Dkt. 72.

## II.   Davern's Untimely Answer and Counterclaims

In the course of discovery, Davern's counsel requested that NVR file an amended complaint to correct certain of NVR's allegations to conform to the evidence that had come into the record.  *See* Counterclaim ¶ 4.  On December 9, 2015, NVR filed a Motion for Leave to File an Amended Complaint, in which NVR (1) per the request of Davern's counsel, sought to clarify and provide additional detail regarding certain allegations made in the original Complaint; and (2) added facts learned during discovery related to Davern's misconduct.  *See* Dkt. 65-1, at 4-6.  The Amended Complaint did not expand upon or narrow any of the legal claims asserted in the Original Complaint.  *Compare* Dkt. 1, Compl. Counts I-VIII *with* Dkt. 82, Am. Compl. Counts I-VIII.

Davern did not oppose NVR's motion to amend the Complaint.  On January 11, 2016, the Court's granted NVR's Motion.  Dkt. 76.

Based on a Discovery Confidentiality Order in effect in this litigation (Dkt. 18) and Davern's designation of substantial volumes of material as confidential and subject to that Order, NVR undertook to file certain portions of its Amended Complaint under seal and out of public view.  *See* Dkt. 77.  After NVR had undertaken these efforts, Davern's counsel stated that Davern had no objection to the publication of all of the allegations in NVR's Amended Complaint on the

public docket.  *See* Dkt. 81.  NVR therefore withdrew its Motion to Seal and filed its First Amended Complaint on January 15, 2016.  Dkt. 82.

On February 5, 2016 – 21 days later – Davern filed his Answer to the First Amended Complaint.  Dkt. 86.  In his Answer, Davern asserts three counterclaims against NVR: (1) tortious interference with existing and prospective relationships; (2) abuse of process; and (3) defamation.  *See id.*, Counterclaim Counts I-III.  Each of the counterclaims is premised upon statements made or actions taken by NVR or its counsel in connection with this litigation.

Davern alleges that NVR abused process by (1) filing this lawsuit "for the improper purpose of seeking to enjoin Davern based on its concern that he was a highly capable manager who would help Horton compete effectively with NVR;" (2) making false, misleading or otherwise improper statements in its Complaint, First Amended Complaint, Motion for Preliminary Injunction, and Proposed Preliminary Injunction Order; and (3) making false or misleading statements and casting Davern's counsel in a bad light at the hearing on NVR's Motion for Preliminary Injunction.[5]  *Id.* ¶¶ 128-140, 142-144.

---

[5] Davern's allegations regarding communications between the parties' respective counsel leading up to the preliminary injunction hearing are false and contradicted by a clear stream of written communications.  NVR intends to seek sanctions against Davern and his counsel for the reckless and knowingly false allegations that they have advanced in support of his counterclaims.  NVR intends to advance a motion pursuant to the requirements of Fed. R. Civ. P. 11(c)(2) forthwith.

Davern alleges that NVR tortiously interfered with his relationship with Horton by, *inter alia*, pursing this litigation, obtaining the Preliminary Injunction Order, and contacting Horton regarding the lawsuit. *Id.* ¶¶ 117, 120-22.

Finally, Davern's defamation claim is premised upon unidentified communications from "NVR" to Horton, in which NVR purportedly stated that Davern "stole 97,000 documents constituting NVR's trade secrets or confidential information." *Id.* ¶ 150.

## ARGUMENT

### I.   Davern's Counterclaims Are Procedurally Improper

The Court should strike Davern's counterclaims because they are procedurally improper. *See* Fed. R. Civ. P. 12(f); *S. New Eng. Tel. Co. v. Glob. Naps, Inc.*, 2007 WL 521162, at *4-5 (D. Conn. 2007) (granting motion to strike counterclaims asserted without requisite leave of court under Rule 12(f)); *see also Owens-Illinois, Inc. v. Lake Shore Land Co.*, 610 F.2d 1185, 1189 (3d Cir. 1979) ("Under Fed. R. Civ. P. 15(d), the trial court determines whether a responsive pleading [to a supplemental pleading] is advisable;" district court "acted within that discretion in declining to accept the counterclaim [asserted in response to an amended complaint]").

As an initial matter, the Answer to which Davern attached his counterclaims was untimely filed. NVR filed its First Amended Complaint on January 15, 2016.

*See* Dkt. 82.  Under the applicable rule, Davern was required to file a responsive pleading within 14 days of that filing, *i.e.*, on or before January 29, 2016.  *See* Fed. R. Civ. P. 15(a)(3) ("any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later").  Davern made no effort to seek any extension of this deadline and did not file his Answer and Counterclaims until February 5, 2016 – a week after the deadline, and approximately two months after receiving NVR's proposed Amended Complaint in conjunction with NVR's motion for leave to file the document.  *See* Dkt. 65.  Thus far, Davern has yet to provide any explanation for his dilatory filing.

In addition to his disregard for the applicable deadline, Davern failed to seek the requisite leave of court before asserting counterclaims in this action.  Rule 15(a) contemplates that a party may file a "response" to an amended pleading. Fed. R. Civ. P. 15(a)(3).  Based upon this rule, a party may not, as a matter of right, assert new counterclaims in an amended answer that do not directly respond to new matters raised in an amended complaint; an "amended response may be filed without leave <u>only when the amended complaint changes the theory or scope of the case</u>." *Slim CD, Inc. v. Heartland Payment Sys, Inc.*, 2007 WL 2459349, at *6 (D.N.J. 2007) (emphasis added); *see Nippon Steel & Sumitomo Metal Corp. v. POSCO*, 2014 WL 3446757, at *3 (D.N.J. 2014) (same).  If an amended complaint

changes the theory or scope of a case, "the breadth of the changes in the amended response must reflect the breadth of the changes in the amended complaint.  Thus, if substantial changes are made to the complaint, then substantial changes may be made to the response." *Slim CD*, 2007 WL 2459349, at *6 (citing *Uniroyal Chem. Co. v. Syngenta Crop Prot., Inc.*, 2005 WL 677806, at *2 (D. Conn. 2005) (adopting same view)).

NVR's First Amended Complaint did not change the theory or scope of this case.  The amended pleading merely (1) clarified and provided additional detail as to statements made in the original Complaint, as requested by Davern's counsel; and (2) added facts related to Davern's misconduct to support the claims that NVR has asserted since filing this action.  *See* Counterclaim ¶ 4; Dkt. 65-1 at 4-6; *compare* Compl. *with* Am. Compl.  As such, the pleading did not assert new claims or otherwise change the complexion of the litigation.  By contrast, Davern's counterclaims significantly alter the scope of the case, as they necessarily expand the focus from the merits of NVR's claims against Davern to an assessment of NVR's conduct in pursuing this litigation.

Davern's belated effort to expand the scope of this litigation poses substantial prejudice to NVR.  If he were allowed to proceed on his counterclaims, NVR would be required to undertake substantial new discovery, including repeating discovery events that have already occurred.  As but one example, NVR

likely will need to reopen Davern's deposition to explore his vague assertions regarding the manner and degree of harm he claims to have suffered based on NVR's defense of its legal rights.  Under these circumstances, seven months after the commencement of this highly-contentious litigation, Davern was required to seek leave of court before asserting his counterclaims.  *Cf. 7-Eleven, Inc. v. Sodhi*, 2016 WL 541135, at *8 (D.N.J. 2016) (requiring defendant to seek leave to file an amended counterclaim in a case where "parties and their attorneys . . . exhibited an unusual level of acrimony, particularly in the conduct of discovery," reasoning that "additional claims or counterclaims, providing additional areas for discovery and inevitable disputes and prolonging the matter, should not be permitted without a necessary basis.").  Because Davern failed to do so, and because any belated request for leave would be futile for the reasons outlined in Sections II-III below, the Court should exercise its discretion to strike Davern's counterclaims.

## II.   Davern's Counterclaims Are Barred by the Litigation Privilege

Davern's counterclaims fail as a matter of law because each of them is premised upon conduct that is immunized by the litigation privilege.  The litigation privilege "grants an absolute privilege to statements or communications made by attorneys in the course of judicial and quasi-judicial proceedings."  *Baglini v. Lauletta*, 338 N.J. Super. 282, 297 (App. Div. 2001) (citation omitted).  The privilege has been referred to as "the backbone to an effective and smoothly

operating judicial system," *Hawkins v. Harris*, 141 N.J. 207, 222 (1995) (citation omitted), and "has long been embedded in New Jersey's jurisprudence." *Loigman v. Twp. Comm. of Twp. of Middleton*, 185 N.J. 566, 580 (2006). The effect of the privilege is to render communications "absolutely privileged and wholly immune from liability." *Hawkins*, 141 N.J. at 213 (citation omitted).

The litigation privilege is "extraordinary" in scope, *Loigman*, 185 N.J. at 587, and extends beyond in-court proceedings to protect "all statements or communications [made] <u>in connection with</u> [a] judicial proceeding." *Hawkins*, 141 N.J. at 216 (emphasis added). It protects litigations "not only from defamation actions, but also from a host of other tort-related claims," including abuse of process and tortious interference. *Loigman*, 185 N.J. at 583-84; *see, e.g.*, *Baglini*, 338 N.J. Super. at 297-98 (abuse of process claim barred by litigation privilege); *Wallach v. Gowing*, 2009 WL 3762901, at *2 (App. Div. 2009) (tortious interference claim barred by litigation privilege). Indeed, courts have applied the privilege to bar tort claims based upon (i) statements made in complaints and/or motions; (ii) correspondence between attorneys and interested third parties; (iii) preliminary conversations between attorneys and prospective witnesses related to a pending action; and (iv) other conduct performed during the course of an attorney's representation of a party during a proceeding. *See, e.g.*, *Loigman*, 185 N.J. at 587; *DeVivo v. Ascher*, 228 N.J. Super. 453, 457-58 (App. Div. 1988);

*Wallach*, 2009 WL 3762901, at *2; *Allia v. Target Corp.*, 2008 WL 1732964, at *8, n.8 (D.N.J. 2008) (Hillman, J.) .

Courts apply a four-part test to determine whether the litigation privilege applies. The privilege shields communications "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Hawkins*, 141 N.J. at 216. "Whether a defendant is entitled to the privilege is a question of law." *Id.*

### A.    Davern's Abuse of Process Claim Is Barred by the Litigation Privilege

Davern alleges that NVR abused process by making false, misleading or otherwise problematic statements in pleadings, during the preliminary injunction hearing, and during discussions with his counsel.[6]

With respect to pleadings, Davern contends that NVR "falsely represented" in its Complaint that (1) Davern executed an acknowledgment of NVR's Code of

---

[6] Davern also alleges in support of his abuse of process claim that NVR initiated this litigation based upon improper motives. Counterclaim ¶¶ 128-30. As explained in Section III.A below, NVR's mere filing of this lawsuit based upon improper motives – without a "further act" constituting a misuse of process "after its issuance solely to coerce or injure" Davern – cannot sustain Davern's claim.

Davern further alleges that NVR used the Complaint "as a basis to communicate with Horton for the purpose of seeking to cause Horton to terminate [him]." *Id.* ¶ 131. To the extent that Davern intends to rely upon NVR's communications to Horton regarding this litigation to support his claim, those communications are protected by the litigation privilege for the reasons discussed in Section II.B.1.

Ethics ("COE"), which had a provision titled "Confidential, Proprietary and Inside Information" (Davern instead had acknowledged NVR's Standards of Business Conduct ("SBC"), which contained functionally identical provision, Dkt. 82, Am. Compl. ¶ 23, Ex. A); and (2) the document attached as Exhibit A was an excerpt from the COE (the excerpt instead was from the SBC).  Counterclaim ¶ 4.  He also contends that NVR's Motion for Preliminary Injunction and supporting Declaration of David Whitaker "incorrectly represent" that NVR's software is a security measure used by NVR "to flag and trap emails . . . with sensitive and possibly confidential information from leaving NVR without authorization" because Whitaker "admitted that his declaration was drafted by counsel and . . . the proofing software does not have the ability to trap or intercept emails employees send to personal email accounts."  *Id.* ¶ 36.  Davern further alleges that although his deletion of all emails from his Microsoft Outlook account and corporate laptop prior to his resignation did not violate "any corporate policy," NVR "has represented in pleadings and to the Court" that these acts were "wrongful."  *Id.* ¶ 49.  Davern also vaguely alleges that NVR's Motion for Preliminary Injunction and Complaint contain "knowingly false representations about . . . the deletion of certain Land Files . . ."  *Id.* ¶ 132.

In addition, Davern hurls a set of (demonstrably false) accusations at NVR related to certain communications between the parties leading up to the preliminary

injunction hearing.  He contends that NVR inquired as to whether he would agree to (1) designate certain portions of deposition transcripts into evidence for use at the hearing; and (2) execute a joint stipulation of facts.  *Id.* ¶¶ 134-35.  Davern alleges that he prepared proposed transcript designations and draft stipulated facts, but that NVR rejected most of his proposal and castigated him at the preliminary injunction hearing for "doing precisely what NVR had requested."  *Id.* ¶¶ 136-37.  Davern contends that NVR engaged in such conduct "to impose undue burdens on Davern on the eve of the Preliminary Injunction hearing and then to cast Davern's counsel in a poor light in front of the Court."  *Id.* ¶ 138.

Davern also contends that although NVR's counsel "was aware of numerous factual errors in the Complaint, the [Motion for Preliminary Injunction] and supporting declarations" before the preliminary injunction hearing, NVR's counsel did not "correct the record with the Court" at the hearing.  *Id.* ¶ 133.  He also alleges that during the hearing, NVR's counsel "falsely represented" that one of Davern's responsibilities as a Sales Manager for NVR was to "enforce the provisions concerning 'Confidential, Proprietary and Inside Information,'" as no such responsibility was in Davern's job description and the COE designates NVR's Senior VP of HR as responsible for its enforcement.  *Id.* ¶ 16.  He further alleges that "NVR's counsel represented to the court that Davern 'stole 90,000 documents from NVR,'" but did not disclose that "over 70% of these documents were

Davern's personal documents" or "that the alleged trade secrets that Davern took . . . include many public materials." *Id.* ¶¶ 139-40.

Davern contends that at the conclusion of the hearing, the Court expressed an intent to enter a "very narrow" injunction, but NVR's counsel "prepared a form of Preliminary Injunction that was overbroad, far exceeding the scope of the previous Consent Order, which the Court entered without change." *Id.* ¶ 141-42. Finally, he contends that after NVR obtained the preliminary injunction, NVR prepared and filed an Amended Complaint, which alleges that NVR engaged an investigator, but "omits to disclose that this third party investigator determined that no NVR information residing on such digital devices had been accessed by Davern after leaving NVR." *Id.* ¶ 143-44.

The above-described statements forming the basis for Davern's abuse of process claim are precisely the type of communications that the litigation privilege is designed to protect.   First, because all the statements were made in pleadings, hearings or discussions related to same, they were made "in connection with" judicial or quasi-judicial proceedings. *See, e.g.*, *Component Hardware Gr., Inc. v. Trine Rolled Moulding Corp.*, 2007 WL 2177667, at *5 (D.N.J. 2007) (alleged misrepresentations in complaint and motions that followed as plaintiff pursued its injunction application were "made in a judicial proceeding"); *Allia*, 2008 WL

1732964, at *8 (statements made during the course of defending a party during an investigation were made "in connection with the judicial proceeding").

Second, the statements were made by NVR and its counsel, all of whom are litigants "or other participants authorized by law" in this matter. *Loigman*, 185 N.J. at 585; *see also Zagami, LLC v. Cottrell*, 403 N.J. Super. 98, 104 (App. Div. 2008) (privilege "extends to witnesses, parties and their representatives").

Third, the statements were made by NVR to "achieve [its] objects of the litigation," which were to obtain the injunction against Davern and pursue the additional relief to which NVR is entitled. *See, e.g.*, *Ritger v. Gatlin*, 2010 WL 1490582, at *2 (D.N.J. 2010) (litigation privilege protected to statements intended to achieve success in litigation); *Component Hardware Gr.*, 2007 WL 2177667, at *5 (litigation privilege protected statements intended to obtain injunction).

Fourth, the statements plainly had at least "some connection or logical relation" to this litigation. *Hawkins*, 141 N.J. at 216. In the context of the litigation privilege, relevance is "interpreted quite broadly and liberally," *DeVivo*, 228 N.J. Super. at 461, and "[t]he pertinency thus required is . . . a general frame of reference and relationship to the subject matter of the action." *Hawkins*, 141 N.J. at 218 (quotation and citation omitted). Moreover, the burden of proving that a statement is not relevant to the litigation is on Davern as "the party seeking to show that the statements were not privileged." *Williams v. Kenney*, 379 N.J.

17

Super. 118, 136 (App. Div. 2005). The statements here easily satisfy the relevance

requirement, and Davern cannot credibly argue otherwise.

Finally, Davern's allegations that NVR's statements were false, misleading,

or made in support of meritless claims (*see, e.g.*, Counterclaim ¶¶ 132-33, 137-40,

142-44), do not affect the applicability of the privilege. "In applying the privilege,

[courts] consider neither the justness of the lawyers' motives nor the sincerity of

their communications." *Loigman*, 185 N.J. at 586 (citation omitted); *see DeVivo*,

228 N.J. Super. at 457 (privilege applies even if words "are written or spoken

maliciously, without any justification or excuse, and from personal ill will or anger

against the party defamed"); *Middlesex Concrete Prods. & Excavating Corp. v.

Cateret Indus. Ass'n*, 68 N.J. Super. 85, 91 (App. Div. 1961) ("Even actual malice

does not affect the absolute immunity provided the statement is made in the course

of judicial proceedings and has some relation thereto.") (collecting cases). Further,

"[t]he policy underpinnings to the privilege would be undermined if its application

is dependent upon a trial court's speculation as to the merits of the underlying

suit." *Baglini*, 338 N.J. Super. at 298. As such, Davern cannot overcome the

litigation privilege, and his abuse of process claim fails as a matter of law.

### B. Davern's Tortious Interference Claim Is Barred by the Litigation Privilege

Like his abuse of process claim, in an effort to substantiate his tortious

interference claim, Davern describes a variety of alleged statements and actions by

18

NVR in its pursuit of this litigation.   All of this alleged conduct is absolutely privileged.

### 1. NVR's Communications with Horton regarding this Litigation Are Absolutely Privileged

Although Davern alleges that NVR interfered with his relationship with Horton by contacting Horton "at least four times," he describes only two such instances.   First, he describes a telephone call by NVR's in-house counsel to Horton's in-house counsel shortly after NVR filed suit, intended to "inform [Horton's counsel] about the lawsuit" and about Davern's theft of a "vast number of documents" from NVR, which caused the suit to be filed.   Counterclaim ¶¶ 111-12.   Davern alleges that during the phone call, NVR's counsel did not disclose that "over 70% of [the stolen] documents were Davern's personal documents" or that the documents included "many public materials," and that NVR's counsel did not ask Horton to return or refrain from using NVR's confidential or trade secret information.   *Id.* ¶ 113-14.   Second, Davern identifies a December 2015 letter from NVR's counsel to Horton.   *Id.* ¶¶ 119, 122, Ex. 9.   The stated purpose of the letter was to formally request that Horton provide a list of all NVR information that Davern supplied to Horton or verifiable assurances that such information had been permanently destroyed.   *See id.* Ex. 9, at 1-2. [7]   As explained therein, the letter was

---

[7] The December 2015 letter from NVR's counsel to Horton is attached to Davern's Counterclaims as Exhibit 9.   As such, the Court may consider the substance of the

sent in response to Davern's counsel's suggestion in this litigation that NVR had been remiss by not making such a formal demand of Horton at an earlier stage of the case.[8]  *Id.* at 1.

Both communications satisfy the requirements of the litigation privilege. First, the communications were made "in connection with" the judicial proceedings in this matter.  *Hawkins*, 141 N.J. at 216.  Courts "favor a broad interpretation" of this requirement, so that "an attorney may enjoy the utmost freedom of communication to secure justice for his client."  *DeVivo*, 228 N.J. Super. at 458. According to Davern, both of NVR's communications to Horton referenced the instant litigation and discussed facts that resulted in its filing.  Counterclaim ¶¶ 111, 119.  Moreover, the December 2015 letter was sent in response to Davern's counsel's suggestion that NVR somehow had shirked its responsibilities in this litigation by not sending such a formal communication sooner.  *Id.* Ex. 9 at 1.  As such, NVR's counsel's communications to Horton were intertwined with its representation of NVR in this litigation and therefore made "in connection with"

letter in connection with this Motion to Dismiss.  *See, e.g.*, *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider . . . exhibits attached to the [counterclaim] . . .") (citations omitted).

[8] In his Counterclaim, Davern ironically reiterates his contention that NVR should have contacted Horton <u>sooner</u> to discuss any information that Davern provided to Horton.  Counterclaim ¶ 86.  He provides no explanation as to how this assertion can be squared with his claim that NVR committed actionable, tortious conduct by contacting Horton to discuss the same subjects in December 2015.

these proceedings. *See DeVivo*, 228 N.J. Super. at 458-59 (letter sent by plaintiff's attorney informing third party of allegations against defendant, was "made in the course of a judicial proceeding," as letter was "intertwined" with representation of plaintiff in the litigation); *TD Bank, N.A. v. Hill*, 2014 WL 413525, at * 6 (D.N.J. 2014) (letter from plaintiff's attorney to third party with whom defendant had contractual relationship, which alerted third party to lawsuit and allegations against defendant, was "made in connection with the judicial proceeding").

Second, the alleged communications were made by NVR's counsel, a "participant authorized by law" in this matter. *Loigman*, 185 N.J. at 586; *see also Zagami, LLC*, 403 N.J. Super. at 104 (privilege extends to "parties and their representatives").

Finally, NVR's communications satisfy the requirements that they (1) be made to achieve the object of the litigation; and (2) have a logical connection to the litigation. *Hawkins*, 141 N.J. at 216. These requirements may be analyzed together, as the former is "part and parcel" of the latter. *Williams*, 379 N.J. Super. at 136. As noted, relevance is "interpreted quite broadly and liberally," *DeVivo*, 228 N.J. Super. at 461; "the question is whether the . . . statements at issue were <u>in any way</u> relevant to the proceedings." *Hawkins*, 141 N.J. at 218-19 (citations and quotations omitted) (emphasis added); *see DeVivo*, 228 N.J. Super. at 460 (privilege inapplicable only where party's statement is "so wanting in relation to

the subject matter of controversy as that no reasonable man can doubt its irrelevancy and impropriety"). Both communications were directly related to this litigation, in that they informed Horton of NVR's allegations against Davern and/or requested that Horton refrain from retaining or otherwise using the information that NVR contends Davern misappropriated. In this regard, they also were undertaken to achieve an object of NVR's suit against Davern, *i.e.*, to prevent Davern from disseminating NVR's confidential and trade secret information or using it in his work for Horton. As such, NVR's communications to Horton satisfy the third and fourth requirements of the litigation privilege, and thus are immune from tort liability. *See DeVivo*, 228 N.J. Super. at 460 (letter to third party describing allegations against defendant in pending litigation was absolutely privileged; letter "clearly met" requirement that it have some relation to litigation); *TD Bank, NA.*, 2014 WL 413525, at *6 (letter to third party describing allegations against defendant in pending litigation was absolutely privileged; letter was designed to achieve object of suit, *i.e.*, enjoining defendant from further bad acts, and directly related to litigation because it described the allegations at issue).

That Horton is a third party does not diminish application of the privilege. As noted above, courts extend the privilege to communications between counsel and an interested third party. *DeVivo*, 228 N.J. Super. at 457-63; *TD Bank, NA.*, 2014 WL 413525, at *6. Horton's connection to this litigation is not subject to

doubt.   Davern began working for Horton (a direct competitor of NVR) immediately after he left NVR, and NVR's claims against Davern in this case are based in large part upon (1) Davern's provision of NVR's confidential and trade secret information to Horton; and (2) Davern's recruitment of NVR employees to join him at Horton.  *See* Am Compl ¶¶ 2, 45-55.  Horton and its employees are witnesses in this matter.[9]  Horton is, in fact, paying Davern's attorneys' fees in this matter.  Indeed, the first thing that Davern's counsel did when the Court stated its intention to enjoin Davern was to raise the issue of how the injunction affected Horton.  Dkt. 70, Hrg. Tr. 29-30 (Davern's counsel: "[the proposed preliminary injunction] may pose a risk to D.R. Horton because what's being requested . . . is to enjoin not only Mr. Davern, but all persons acting in concert with him.  So, D.R. Horton is part of this case, your Honor, whether they're a named defendant or not, because whatever Mr. Davern does, he's doing as the division president of D.R. Horton."); *see id.* at 31-32.  Under these circumstances, Horton and its employees have a clear connection to this litigation that requires application of the litigation privilege to NVR's correspondence with Horton about the case.  *See DeVivo*, 228 N.J. Super. at 463 (where third-party to whom communication was made had interest in the outcome of the litigation, was "not [a] stranger[]" to the litigation,

---

[9] Subsequent to the Preliminary Injunction hearing, NVR noticed depositions of a current executive employee of Horton, a former executive employee of Horton, and a Rule 30(b)(6) deposition of Horton, itself.

and could properly have been joined as a party, third-party "had sufficiently significant interest in the communication and litigation for absolute immunity to apply"); *see also Hawkins*, 141 N.J. at 216, 218 (privilege protects "preliminary conversations and interviews" with prospective witnesses that are "in some way related to or connected with" a pending action; "communications by parties and witnesses are protected to promote the development and free exchange of information and to foster judicial and extra-judicial resolution of disputes") (quotation omitted).[10]

### 2. NVR's Pursuit of Judicial Relief is Protected by the Litigation Privilege

The remaining conduct that Davern alleges in support of his tortious interference claim likewise is immunized by the litigation privilege.  Davern contends that NVR (1) "needlessly pursued this litigation and deliberately escalated its costs and the demands upon the time of Davern that would otherwise be available to perform his job responsibilities for Horton, . . . solely for the

---

[10] For the reasons discussed in Section II.A above, Davern's allegations that NVR's statements were false, misleading or malicious (*see e.g.*, Counterclaim ¶¶ 111-119) do not affect the application of the privilege.  Davern's contention that "[t]he clear import of [NVR's December 2015 letter] was that if Horton terminated Davern, it would not be burdened by this litigation," likewise fails to negate the privilege.  Indeed, threats of litigation are protected by the privilege, whether oblique or direct.  *See, e.g.*, *Ruberton v. Gabage*, 280 N.J. Super. 125, 131 (App. Div. 1995) (litigation privilege protected threats of criminal prosecution made during settlement conference in civil case; "an attorney must be free to advance the strengths of his or her client's case in a candid and objective way, unfettered by the fear" of a tort action).

24

purpose of causing Horton to terminate Davern;" Counterclaim ¶ 120; (2) "sought and obtained a preliminary injunction against Davern as part of a strategy to limit his effectiveness as a manager . . . [and] not because of any genuine fear or risk that [NVR] likely would suffer irreparable harm . . . ." *id.* ¶ 121; and (3) challenged Davern's confidentiality designation over his deposition transcript, so that NVR could show the transcript to Horton and "cast Davern in such an unfavorable light that Horton would terminate Davern."[11]  *Id.* ¶¶ 117-18.

All of the litigation-related conduct on which Davern premises his interference claim is within the scope of NVR's pursuit of legal relief against Davern and satisfies all elements of the litigation privilege, regardless of NVR's alleged motives.  *See Simone v. Golden Nugget Hotel & Casino*, 844 F.2d 1031, 1039 (3d. Cir. 1988) ("The legal pursuit of one's right, no matter what may be the motive of the promoter of the action, cannot be deemed either illegal or inequitable") (quotation and citation omitted); *DeVivo*, 228 N.J. Super. at 458.  The conduct of which Davern complains plainly occurred in connection with the judicial proceedings in this matter and was undertaken by NVR or its counsel, who are litigants or authorized participants.  It was intended to achieve the objects of

---

[11] This last allegation is so inchoate that it also fails the pleading requirements of *Twombly*.  Davern does not contend that NVR's challenge to his designation of his entire deposition transcript as confidential even resulted in the removal of the designation, much less the sharing of the transcript with Horton.

this litigation, *i.e.* to obtain the injunction and secure additional relief on behalf of NVR, and goes far beyond the "general frame of reference and relationship" to the subject matter of this case. *Hawkins*, 141 N.J. at 218. As such, NVR's conduct is immunized from tort liability. *See, e.g.*, *Loigman*, 185 N.J. at 585-86 (litigation privilege barred tort claim based on filing of sequestration motion); *Wallach*, 2009 WL 3762901, at *2 (litigation privilege barred tortious interference claim based on filing of third-party complaint against plaintiff's counsel and motion for disqualification); *Allia*, 2008 WL 1732964, at *9 n.8 (litigation privilege barred tort claims based on attorney conduct that "occurred as part of [attorneys'] representation" of their client).

### C.   The Only Statements upon which Davern's Defamation Claim Could Be Based Are Protected by the Litigation Privilege

Davern's defamation claim rests entirely on his allegation that NVR falsely stated in "written and oral" communications to Horton that "Davern stole 97,000 documents constituting NVR's trade secrets or confidential information." Counterclaim ¶ 150. However, as detailed in Section III.C below, the only communications between NVR and Horton that Davern identifies anywhere in his counterclaims – the two communications alleged in support of his tortious interference claim – do not include such a statement. And while Davern does plead that NVR's Amended Complaint contains a similar allegation – that Davern

misappropriated "more than 97,000 documents . . . ," *id.* ¶ 98 (citing Am. Compl. ¶ 139)) – that pleading is not a communication between NVR and Horton.

Even so, to the extent that Davern's defamation claim is premised upon NVR's statement in its Amended Complaint (or any other pleading in this matter), the claim is barred by the litigation privilege for the reasons discussed in Section II.A.  Likewise, to the extent that his claim is premised on the communications between NVR and Horton described in support of his tortious interference claim, that claim is barred by the litigation privilege for the reasons discussed in Section II.B.1.  Davern cannot identify any statement by NVR that was made outside the expansive reach of the litigation privilege, and the Court should dismiss his defamation claim with prejudice.

## III.  Davern Cannot Plead the Elements of his Counterclaims

The Court should dismiss Davern's counterclaims for the additional reason that they are insufficiently pled.  A court must dismiss a counterclaim where a plaintiff-in-counterclaim's factual allegations, accepted as true, fail to state a claim on which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A plaintiff-in-counterclaim "must plead enough facts to state a claim to relief that is plausible on its face," and to provide "fair notice of what the . . . claim is and the grounds upon which it rests . . . ."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 570 (2009) (quotations omitted); *see Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d

Cir. 2009). Indeed, factual allegations must be enough to raise a right to relief above the speculative level; "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555); *Fowler*, 578 F.3d at 210. Nor may the court accept legal conclusions that are couched as factual allegations. *Twombly*, 550 U.S. at 555; *In re Nice Sys., Ltd. Sec. Litig.*, 135 F. Supp. 2d 551, 565 (D.N.J. 2001). As a general rule of pleading, this plausibility standard applies equally to counterclaims. *See, e.g.*, *Cnty. of Hudson v. Janiszewski*, 351 F. App'x 662, 667-68 (3d Cir. 2009) (applying principles of *Twombly* to counterclaims). When a counterclaim fails to "possess enough heft" to show that the pleader is entitled to relief, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 557-58 (citations omitted).

### A. Davern Cannot Plead the Elements of an Abuse of Process Claim

To sustain an action for abuse of process, a party must prove that a "litigator perform[ed] further acts after the issuance of process which represent the perversion or abuse of the legitimate purposes of that process." *Penwag Prop. Co., Inc. v. Landau*, 148 N.J. Super. 493, 499 (App. Div. 1977), *aff'd*, 76 N.J. 595 (1978). "It is not sufficient for a malicious abuse of process claim that the 'litigation is inspired by malicious or other improper motives;' . . . . there must be

further acts committed 'after or other than the filing of the complaint [and the injunction application,] and proceeding upon them.'" *Component Hardware Gr.*, 2007 WL 2177667, at *4 (quoting *Landau*, 148 N.J. Super. at 498 & *Klesh v. Coddington*, 295 N.J. Super. 51, 64 (Law Div. 1996)); *see Tedards v. Auty*, 232 N.J. Super. 541, 548-49 (App. Div. 1989).  Thus, Davern's abuse of process claim can proceed only if he can allege that NVR "demonstrably used process after its issuance solely to coerce or injure" him.  *SBK Catalouge P'ship v. Orion Pictures Corp.*, 723 F. Supp. 1053, 1068 (D.N.J. 1989) (citing *Tedards*, 232 N.J. Super. at 548-49).

Davern has not pled and cannot plead the "further acts" required to sustain his claim.  Davern accuses NVR of making a number of false, misleading or otherwise problematic statements – in various written submissions to the Court, during the preliminary injunction hearing, and during discussions with Davern's counsel leading up to the hearing, *see supra*, Section II.A – and contends that the Court relied upon "certain of th[ose] material factual inaccuracies in its opinion granting the Preliminary Injunction."  Counterclaim ¶ 133.  None of NVR's alleged statements qualify as "further acts" because none constitute the use of process "after its issuance solely to coerce or injure" Davern.  *Tedards*, 232 N.J. Super. at 549.

In the context of an abuse of process claim, the term "process" is defined narrowly; it "does not apply broadly to all proceedings in a legal action," but only to "certain products of litigation that a court issues, such as a 'summons, mandate, or writ used by a court to compel the appearance of the defendant in a legal action or compliance with its orders.'"  *Jewett v. IDT Corp.*, 2007 WL 2688932, at *7 (D.N.J. 2007) (quoting *Ruberton*, 280 N.J. Super. at 131).  Given this restrictive definition, as applied to Davern's allegations, the Preliminary Injunction Order issued by the Court is the only process that NVR could have abused.  *See Jewett*, 2007 WL 2688932, at *7 (where plaintiff alleged that defendant abused process by filing motions based on improper motives, "only the order or orders issued [in response to the motions] constitute[d] process"); *see also Component Hardware Gr.*, 2007 WL 2177667, at *4 ("there must be further acts committed <u>after or other than the filing of the complaint [and the injunction application,]</u> and proceeding upon them.") (quotation marks omitted) (emphasis added).

Davern does not allege that NVR subsequently misused the Preliminary Injunction Order to coerce or harm him, or make any effort to otherwise connect his alleged injuries to the Order – nor can he.  The Preliminary Injunction Order merely restricts Davern from engaging in unlawful behavior; it does not restrict the lawful performance of his duties at Horton.  *See* Dkt. 72.  As the Court correctly recognized in its Opinion granting NVR's Motion for Preliminary Injunction,

"Davern can claim no harm by being obligated to compete only by lawful means."

Dkt. 71, at 8.  Because Davern cannot allege that NVR used any process after its

issuance solely to coerce or injure him, his abuse of process claim should be

dismissed with prejudice.  *See Jewett*, 2007 WL 2688932, at *7-8 (dismissing with

prejudice abuse of process claim where plaintiff failed to allege misuse of Court's

order after issuance and instead presented "an exhaustive set of allegations of

[defendant's] misconduct during the litigation" as "demonstrations of improper

intent," evidencing plaintiff'misunderstanding of the cause of action); *Component

Hardware Gr.*, 2007 WL 2177667, at *4 (denying as futile defendant's request to

add counterclaim for abuse of process where material misrepresentations in

complaint and injunction application did not  injure defendant).

### B.   Davern Cannot Plead the Elements of a Tortious Interference Claim

Whether Davern intends to state a claim for tortious interference with

prospective relationships or for tortious interference with contractual relations, the

elements of both claims are "virtually identical."  *Sols. Partners, Inc. v. Thomas*,

2010 WL 2036139, at *2 (D.N.J. 2010) (Hillman, J.) (citing *Carpet Gr. Int'l v.

Oriental Rug Importers Ass'n, Inc.*, 256 F. Supp. 2d 249, 288 (D.N.J. 2003)).  To

state a claim for either cause of action, Davern must allege (1) the existence of a

contract or a reasonable expectation of economic advantage; (2) that NVR

maliciously interfered with a contract or expectation; (3) that the interference

caused the loss of a contract or perspective gain; and (4) resulting damages to Davern. *Id.*; *Lamorte Burns & Co. v. Walters*, 167 N.J. 285, 306 (2001).

Davern has failed to plead at least the third and fourth elements of this claim. He alleges that NVR engaged in a variety of actions related to this litigation to interfere with his relationship with Horton – by (1) merely pursuing the litigation and "deliberately escalat[ing]" costs and demands on Davern's time; (2) obtaining the Preliminary Injunction Order; (3) challenging Davern's confidentiality designation over his deposition transcript; and (4) communicating with Horton about the case. *See* Counterclaim ¶¶ 111, 119, 117, 120-22. Yet Davern does not allege that any of NVR's purported conduct caused him to lose his job with Horton or any other potential gain stemming from his employment relationship – nor can he, as he has remained employed by Horton in a lucrative position throughout the course of this litigation. *See Diversified Indus., Inc. v. Vinyl Trends, Inc.*, 2014 WL 4199059, at *6 (D.N.J. 2014) (dismissing tortious interference claim because plaintiff "continue[d] to receive the anticipated economic benefits of conducting business with [a third party], [plaintiff] ha[d] not alleged that [defendant]'s interference caused the loss of any prospective economic gain"); *see also Found. Credit Funds, LLC v. Branch Banking & Tr. Co.*, 2006 WL 3780677, at *2 (D.N.J. 2006) (Hillman, J.) (tortious interference claim failed where plaintiff failed to

allege causal connection between an "actual interference with [a] relationship" and actual damages).

Davern likewise does not (and cannot) adequately allege that he suffered any damages.[12]  Davern alleges only that (1) "NVR's tortious conduct prevented [him] from performing his duties for Horton fully and completely, which effectively limited Davern's impact at Horton;" and (2) "NVR has caused Davern to suffer financial injury and diminished Davern's reputation with Horton."  Counterclaim ¶¶ 122, 124.  These vague contentions are the sort of conclusory remarks that the Court must disregard in assessing the viability of Davern's counterclaims. *Twombly*, 550 U.S. at 554; *see Diversified Indus., Inc.*, 2014 WL 4199059, at *6 ("Conclusory allegations of lost profit . . . are bare conclusions unworthy of the Court's consideration"); *Koger, Inc. v. Klco*, 2009 WL 905061, at *5 (D.N.J. 2009) (allegation that plaintiff had "lost or may lose business as a result of [defendant's] tortious conduct" was impermissible formulaic recitation of the elements of a claim).  For these reasons alone, Davern's tortious interference claim should be dismissed.

Even if they were adequately pled, Davern's contentions about the unexplained "limitation" of his impact as an employee of Horton and

---

[12] Indeed, subsequent to filing his Counterclaims, on March 8, 2016, Davern updated his Rule 26(a) disclosures, in which he affirmatively stated that he has no available computation of damages and failed to identify any damage that he has incurred in connection with his Counterclaims.

"diminishment" of his reputation, absent a corresponding lost profit or economic gain, would not constitute actionable injuries.  *See Diversified Indus., Inc.*, 2014 WL 4199059, at *6 ("Defendant has identified no authority which would permit recovery for reputational harm and time diverted from ordinary business where there is no allegation of lost profit or economic gain"); *Valentine v. Bank of Am.*, 2010 WL 421087, at *3 (D.N.J. 2010) (tortious interference claim dismissed where plaintiff failed to allege facts showing that reputational injury caused damage).

### C.   Davern's Defamation Claim Fails to Provide Fair Notice of the Grounds upon which the Claim Rests

As noted, Davern's defamation claim rests entirely upon the following allegation:  "In its communications to Horton, both written and oral, NVR falsely stated that Davern stole 97,000 documents constituting NVR's trade secrets or confidential information."  Counterclaim ¶ 150.  This allegation falls far short of the governing pleading standards.

"In the case of a [counterclaim] charging defamation, [a plaintiff-in-counterclaim] must plead facts sufficient to identify the defamatory words, their utterer and the fact of their publication.  A vague conclusory allegation is not enough."  *Allia*, 2008 WL 1732964, at *5 (quotation and citation omitted).  Yet that is all Davern offers.  It is not clear which statements he intends to implicate, how many of them exist, in what context(s) they were made, or who made them. *See, e.g.*, *Novartis Pharm. Corp. v. Bausch & Lomb, Inc.*, 2008 WL 4911868, at *6

(D.N.J. 2008) (dismissing defamation claim that failed to allege, *inter alia*, when the alleged statements were made and who made them); *see also Lynch v. N.J. Educ. Ass'n.*, 161 N.J. 152, 167 (1999) ("Whether a statement is defamatory depends on its content, verifiability, <u>and context</u>") (emphasis added).  While Davern refers to "NVR" as the alleged speaker, NVR – as an entity – is not capable of making a statement giving rise to tort liability.  *See Bose v. Horizon Blue Cross Blue Shield of N.J.*, 2014 WL 1293861, at *7 (D.N.J. 2014) (dismissing defamation claim where plaintiffs failed to allege who at a defendant corporation made the statement at issue).

Moreover, although Davern refers to "written and oral" communications in which NVR stated to Horton that "Davern stole 97,000 documents . . . ," Counterclaim ¶ 150, he entirely fails to describe any communications between NVR and Horton in which NVR made such a statement.  Indeed, the only communications between NVR and Horton that Davern identifies include no such statement.  NVR's December 2015 letter to Horton is before the Court and includes no such statement.  Counterclaim Ex. 9.  Similarly, Davern does not allege that any such statement was made in the telephone call between NVR's in-house counsel and Horton's in-house counsel.[13]  *Id.* ¶ 119.  Finally, as noted, while

---

[13] Davern can make no such claim because the telephone call between the companies' respective in-house counsel occurred at the outset of the litigation, before NVR had discovered the extent of Davern's misappropriation.

Davern does plead that NVR's First Amended Complaint contains a similar allegation – that Davern misappropriated "more than 97,000 documents and emails to himself containing NVR's confidential, proprietary and trade secret information for his own benefit," *id.* ¶ 98 (citing Am. Compl. ¶ 139)) – that pleading is not a communication between NVR and Horton.   Given the ambiguity in Davern's pleading, he has not provided the requisite "fair notice of what [his] . . . [defamation] claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.  The claim should be dismissed.

## CONCLUSION

For the foregoing reasons, NVR respectfully requests that the Court dismiss the counterclaims asserted by Davern with prejudice, and award other such relief as the Court deems just and appropriate.

Dated:      March 11, 2016
              New York, New York

SEYFARTH SHAW LLP

By:    s/ James S. Yu
    James S. Yu
620 Eighth Avenue
New York, New York 10018
Phone: (212) 218-5500
Fax: (212) 218-5526
jyu@seyfarth.com

Barry J. Miller (Admitted *Pro Hac Vice*)
Lauren S. Wachsman (Admitted *Pro Hac Vice*)
SEYFARTH SHAW LLP
2 Seaport Lane, #300
Boston, MA 02210
Phone: (617) 946-4800
Fax: (617) 946-4801

*Attorneys for Plaintiff NVR, Inc.*

37