IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____ :
                                        :
NVR, INC.,                              :    CIVIL ACTION
                                        :
               Plaintiff,               :    No. 1:15-cv-05059-NLH-
                                        :    KMW
      vs.                               :
                                        :
JONATHAN DAVERN,                        :
                                        :
               Defendant.               :
_____ :

_____

**DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO
STRIKE OR DISMISS DEFENDANT'S COUNTERCLAIMS**
_____

Edward T. Kang
Gregory H. Mathews
David P. Dean
123 S. Broad Street, Suite 1670
Philadelphia, PA 19109
ekang@LawKHF.com
gmathews@LawKHF.com
ddean@LawKHF.com
(215) 525-5850
(215) 525-5860 (fax)
*Attorneys for Defendant*

Dated:  March 21, 2016

## <u>TABLE OF CONTENTS</u>

I.   FACTUAL AND PROCEDURAL BACKGROUND......................................1

II.  ARGUMENT ..................................................................9

   A.  Legal Standard ..........................................................9

   B.  Analysis ...............................................................10

        1.  Davern's Counterclaims are Procedurally Proper..............10

        2.  Davern's Counterclaims are not Precluded by the Litigation
            Privilege..............................................................13

        3.  Davern has Sufficiently Pled his Counterclaims................18

             a.  Davern has sufficiently alleged a counterclaim for tortious
                 interference with existing and prospective relationships..........18

             b.  The Counterclaims adequately state a claim for abuse of
                 process.....................................................21

             c.  Davern's defamation claim provides NVR with more than
                 adequate notice of its grounds...................................24

   III.  CONCLUSION ...........................................................25

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Ashcroft v. Iqbal*,
129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ...................................................9

*Avaya, Inc. v. Cisco Sys., Inc.*,
2012 WL 2065536 (D.N.J. June 7, 2012) .............................................21

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)................................9, 18, 25

*Chamberlain v. Giampapa*,
210 F.3d 154 (3d Cir.2000).................................................................11

*Coast Cities Truck Sales, Inc. v. Navistar Int'l Transp. Co.*,
912 F.Supp. 747 (D.N.J.1995) ...........................................................19

*Cruz v. HSBC*,
2010 WL 2989987 (D.N.J. 2010) .........................................................24

*Demopolis v. Peoples Nat. Bank of Washington*,
59 Wash. App. 105, 796 P.2d 426 (1990).................................................14

*DeVivo v. Ascher*,
228 N.J. Super. 453 (1988) .................................................................14

*Fineman v. Armstrong World Industries, Inc.*,
980 F.2d 171 (3d Cir.1992)..................................................................19

*Galbraith v. Lenape Regional High School Dist.*,
964 F.Supp. 889 (D.N.J.1997) ............................................................21

*Gen. Refractories Co. v. Fireman's Fund Ins. Co.*,
337 F.3d 297 (3d Cir.2003)..................................................................22

*Givens v. Mullikin ex rel. Estate of McElwaney*,
75 S.W.3d 383 (Tenn.2002)................................................................22

*Hawkins v. Harris*,
661 A.2d 284 (N.J. 1995)...............................................................................14, 15

*In re McGuire*,
450 B.R. 68 (Bankr. D.N.J. 2011) ............................................................11

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC*,
2011 WL 743468 (M.D. Pa. Feb. 24, 2011) ...........................................13

*Lum v. Bank of Am.*,
361 F.3d 217 (3d Cir. 2004)........................................................................9

*Mosley v. Delaware River Port Authority, et al.*,
2000 WL 1534743 (D.N.J. 2000) ............................................................21

*Nienstedt v. Wetzel*,
133 Ariz. 348, 651 P.2d 876, 880 (Ariz.Ct.App.1982)............................22

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
998 F.2d 1192 (3d Cir. 1993)......................................................................9

*Peterson v. HVM LLC*,
2016 WL 845144 (D.N.J. Mar. 3, 2016).................................................16

*Phillips v. County of Allegheny*,
515 F.3d 224 (3d Cir. 2008) .......................................................................9

*Post v. Mendel*,
501 A.2d 351 (Pa. 1986) ..........................................................................14

*Printing Mart–Morristown v. Sharp Elecs. Corp.*,
116 N.J. 739, 563 A.2d 31 (1989),...........................................................19

*Singer v. Beach Trading Co.*,
379 N.J. Super. 63, 876 A.2d 885 (App. Div. 2005) ...............................24

*Sourcecorp Inc. v. Croney*,
2011 WL 159707 (3d Cir. 2011)...............................................................11

*Tedards v. Auty*,
232 N.J. Super. 541 A.2d 1030 (App. Div. 1989) .............................................16, 23

*Unitronics, Inc. v. Robotic Parking Sys. Inc.*,
No. 09–3493, 2010 WL 2545169 (D.N.J. Jun.18, 2010).......................................22

*Vallance v. Brewbaker*,
161 Mich.App. 642 N.W.2d 808 (Mich.Ct.App.1987)...........................................22

*Wexco Indus. v. ADM21 Co.*,
2008 WL 5427867 (D.N.J. 2008). ........................................................................19

*Williams v. BASF Catalysts LLC*,
765 F.3d 306 (3d Cir. 2014)..................................................................................15

## STATUTES

18 U.S.C. § 1030 ....................................................................................................2

N.J.S.A § 2A:14-1 ................................................................................................13

N.J.S.A § 2A:14-2 ................................................................................................13

N.J.S.A § 2A:14-3 ................................................................................................13

N.J.S.A. § 2A:38A-3 ..............................................................................................2

## RULES

FRCP 12(b)(6)........................................................................................................9

FRCP 13(a)(1).......................................................................................................12

FRCP 15(a)(3)....................................................................................................5,10

FRCP 55(b)(2).......................................................................................................11

L.R. 8.1............................................................................................................20, 21

Defendant Jonathan Davern ("Davern" or "Defendant") submits this brief in support of his Opposition to the Motion to Strike or Dismiss the Answer and Counterclaims (the "Counterclaims") filed in response to the First Amended Complaint of Plaintiff NVR, Inc. ("NVR" or "Plaintiff") (the "Motion to Dismiss" or "Motion"). The conduct of NVR revealed in discovery and in the First Amended Complaint provide grounds for Davern to assert compulsory counterclaims. Because the factual allegations in Davern's Counterclaims set forth plausible claims for relief, NVR's Motion should be denied.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff NVR and D.R. Horton ("Horton") are two of the largest publicly held home building companies in the United States.[1] Defendant Davern is a former Sales Manager of NVR who resigned on June 15, 2015 to accept a position as Division President of Horton for the tristate area of Pennsylvania, New Jersey, and Delaware. In connection with planning to leave NVR, Davern copied and moved all his archived emails and certain other documents from his files maintained at NVR during more than the ten years he was with NVR.  Although NVR knew, before his resignation, that Davern had NVR information, it did nothing to retrieve the NVR information from Davern. Counterclaims, Doc. No. 86, ¶¶ 46-47, 57-58.   After

---

[1] According to the May 2015 issue of *Builder*, the magazine of the Association of Home Builders, NVR is the fourth largest home builder and Horton is the largest home builder in the United States based upon the magazine's calculation of 2014 gross revenue.

learning that Davern was going to work for Horton, however, NVR adopted a litigation strategy to restrict Davern and Horton from competing fairly with NVR in the tristate area.

First, NVR engaged outside counsel, which sent Davern a cease and desist letter on June 19, 2015. *Id.* at ¶ 61. Even though Davern immediately agreed to return all NVR information and turned over all his digital devices so NVR could recover *all* its information, NVR commenced this lawsuit. *Id.* at ¶¶ 62-65. It is undisputed that NVR's follow up forensic examination of all Davern's digital devices confirmed that Davern never accessed any of the disputed emails and files after he left NVR and all such information has been remediated by NVR. *Id.* at ¶¶ 91-92.

NVR filed its complaint in this matter on July 2, 2015, seeking injunctive relief and advancing claims against Davern for misappropriation of trade secrets, violation of Computer Fraud and Abuse Act (18 U.S.C. § 1030 et seq.), violation of New Jersey's Computer Related Offenses Action (N.J.S.A. 2A:38A-3), breach of contract (violation of Code of Ethics), breach of contract (specific performance), breach of fiduciary duty, unfair competition, and unjust enrichment.

NVR's initial complaint, however, contained a number of false representations of material fact. For example, the complaint falsely represented that Davern on January 4, 2005 executed an Acknowledgement, a copy of which was

2

attached as Exhibit C of the original complaint and is attached hereto as <u>Exhibit 1</u>, that he had received and reviewed policies including the Code of Ethics that contained a provision entitled "Confidential, Proprietary and Inside Information" (Complaint, Doc. No. 1, ¶¶ 20, 33) when in fact NVR's 2004 Code of Ethics contains no such provision. *See* Counterclaims, ¶¶ 3-4. NVR's Motion to Dismiss attempts to minimize the significance of this misrepresentation by making a further misrepresentation to the effect that "Davern instead had acknowledged NVR's Standards of Business Conduct ("SBC"), which contained functionally identical provision." Motion to Dismiss, Doc. No. 96-1, p. 14. This statement also is knowingly false. The Acknowledgement signed by Davern at the inception of his employment plainly makes no reference to, let alone acknowledge, his receipt of NVR's Standards of Business Conduct. *See* <u>Exhibit 1</u>. To the contrary, as alleged in the Counterclaims, NVR ignored for over a year the direction of the NVR Board of Directors that all new employees sign an acknowledgement that they have received and read the newly adopted 2004 Standards of Business Conduct containing a provision entitled "Confidential, Proprietary and Inside Information." Counterclaims, ¶ 7. Consequently, Davern did not receive a copy of the Standards of Business Conduct containing a confidential information provision when he signed the Acknowledgement attached as Exhibit 1 or at any other time in 2005, as alleged in the Counterclaims. *Id.* at ¶ 8.

3

The Acknowledgement signed by Davern after he began his employment expressly disclaims that it constitutes a contract or a confidentiality agreement between Davern and NVR. *Id.* at ¶ 5. Furthermore, during the deposition of NVR on November 18, 2015, NVR's designee and General Counsel admitted that the Code of Ethics is not a contract between NVR and any employee. *Id.* at ¶ 6.

The original complaint also falsely alleged that NVR's web-filtering solution known as Proofpoint "is programmed to flag and trap emails . . . to create a second check on emails with sensitive and possibly confidential information from leaving NVR without authorization." Complaint, ¶ 28. This allegation was repeated in the motion for preliminary injunction and substantiated by a declaration of David Whitaker, the Chief Information officer of NVR. Counterclaims, ¶ 36. During the NVR deposition, however, Mr. Whitaker admitted that his declaration was drafted by counsel and that in fact the proofing software does not have the ability to trap or intercept emails employees send to personal email accounts. *Id.*

Defendant's counsel established these false representations during the November 18, 2015 deposition of NVR's corporate designee and requested that NVR amend its complaint to correct the false representations. *Id.* at ¶ 6. Contrary to the allegations in NVR's Motion to Dismiss, the purpose of Davern's repeated requests to NVR to amend its initial complaint was not, broadly speaking, to

conform the complaint to the evidence (Motion to Dismiss, p. 6), but rather to correct these knowingly false representations.

NVR filed an Amended Complaint (Doc. No. 82) against Davern on or about January 15, 2015.   Although the Amended Complaint does not correct the false representations highlighted above, it expands considerably on the claims in NVR's initial complaint. For example, the Amended Complaint adds a new Section IV containing extensive allegations that Davern solicited NVR employees to leave NVR (Amended Complaint, ¶¶ 45-48) thereby substantially expanding the acts constituting alleged breach of fiduciary duty (*Id.* at ¶ 139).   Furthermore, the Amended Complaint continues to allege two counts for breach of contract based upon Davern's alleged failure to comply with the confidentiality provisions of the Code of Ethics, even though NVR has admitted that its Code of Ethics does not constitute a contract with employees.  *Id.* at ¶¶ 122 – 134.

Defendant did not answer the Amended Complaint as called for by FRCP 15(a)(3) due to an internal docketing error.  However, NVR did not ask for a default, and none was entered by the Court.  On February 5, 2016, Davern answered the Amended Complaint and asserted counterclaims for tortious interference with his employment relationship with Horton, abuse of process, and defamation.  (Doc. No. 86).  Each of these counterclaims relates to conduct which has come to light during discovery after the original complaint was filed.

Throughout this litigation, NVR has seriously overstated and misrepresented the extent of its claims against Davern.  Since filing the initial complaint, NVR has been claiming Davern took "more than 97,000 documents and emails to himself containing NVR's confidential, proprietary and trade secret information for his own benefit."  *See* Amended Complaint, ¶ 139.  NVR made similar allegations in most of its court filings in this litigation.  What NVR failed to disclose is that out of this "97,000 documents and emails" that purportedly constitute "NVR's confidential, proprietary and trade secret information," NVR designated in discovery only 29,042 of these documents as its trade secrets, confidential information, or proprietary information.  In other words, about 70,000 of the 97,000 documents that Davern allegedly took were Davern's personal documents and emails.  *See* Counterclaims, ¶ 101.  NVR's counsel made similar representations to the Court during the Preliminary Injunction hearing.  *Id.* at ¶ 139.  Furthermore, even a cursory review of the 29,092 of the documents that NVR designated as its alleged trade secret, confidential information, or proprietary information, reveals that most of these "confidential" documents are far from any confidential information, let alone trade secret. *Id.* at ¶ 102.  For example, NVR has claimed that a publicly circulated advertisement and a copy of NVR's logo constitute "trade secret, confidential information, and proprietary information." *See id.* at ¶¶ 103 – 107.

6

NVR has also made repeated attempts, during the pendency of this litigation, to cause Horton to terminate Davern, including a call from NVR's general counsel to Horton's general counsel informing him of the lawsuit and the "vast number of documents" Davern took, while omitting to disclose that the vast majority of the documents were neither confidential nor trade secret.  *Id.* at ¶ 111-114.

In addition, NVR attempted to remove proper confidentiality designations from portions of Davern's deposition transcript so that it could share portions of the transcript that it believed cast Davern in an unfavorable light, and sent correspondence to Horton inferring that the only way for Horton to avoid becoming embroiled in this litigation was to fire Davern.  *Id.* at ¶¶ 117 – 119, and Exhibit 9 thereto.

Subsequent to filing the Amended Complaint, as part of its expansion of the scope of this litigation, NVR issued document subpoenas to Horton, Doug Brown who is Davern's immediate supervisor, and George Seagraves, a former Horton Senior Manager and also has noticed each of them (collectively the "Horton Non-Parties") for deposition.  NVR engaged a second law firm, McCarter & English, to pursue discovery from the Horton Non-Parties and others. The Document subpoena to Horton seeks 43 categories of documents which far exceed the narrow scope of discovery that would be consistent with the Court's Preliminary Injunction and the document subpoenas to Brown and Seagraves are duplicative of document requests

to Horton. NVR's refusal to make any concessions in the scope of these document subpoenas and the Rule 30(b)(6) topics for the Horton deposition has required both Davern and Horton to file separate motions for protective orders or to quash the subpoenas. *See, e.g.*, Motion to Quash, Doc. No. 97.

On March 16, 2016, NVR took the deposition of Mike Sachs, the person with The RIO Group who recruited Davern to Horton. Two partners with McCarter & English spent a full day questioning Mr. Sachs in a fruitless effort to substantiate new allegations in the Amended Complaint such as that Davern "encouraged key NVR employees to leave NVR and join him at Horton and facilitated Horton's attempts to recruit such individuals." Amended Complaint, ¶ 2.

In short, Davern's counterclaims against NVR are based on (1) NVR's efforts to escalate and continue this litigation, despite knowing that Davern turned over all NVR materials in his possession before this litigation commenced, and lacking any evidence that Davern has used any of NVR's protectable information in any improper way; (2) NVR's continuing material misrepresentations in pleadings before this Court and abusive litigation tactics targeted at obstructing Davern and Horton from fairly competing with NVR; (3) NVR's repeated false and defamatory statements concerning the personal, professional, and business reputation and character of Davern; and (4) NVR's efforts to sabotage Davern's relationship with his new employer.

## II.    ARGUMENT

### A.    Legal Standard

In deciding a Rule 12(b)(6) motion to dismiss, the court must "accept all factual allegations as true, construe the [counterclaim] in the light most favorable to the [non-moving party] and determine whether, under a reasonable reading of the [counterclaim], the [non-moving party] is entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).  In addition to the allegations in the counterclaim, "courts generally consider . . . exhibits attached to the [counterclaim], matters of public record and documents that form the basis of the claim."  *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993).  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court explained that to state a claim, the pleading must allege sufficient factual allegations "to raise a right to relief above the speculative level." *Id*., 127 S.Ct. at 1965.   In *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court, applying *Twombly*, explained, "when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.*, 129 S.Ct. at 1950.  "Determining whether a [counterclaim] states a plausible claim for relief will . . . be a context

specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### B.   Analysis

#### 1.   Davern's Counterclaims are Procedurally Proper

NVR contends that Davern's Counterclaims must be dismissed because they are procedurally improper.  NVR's argument takes two forms.  First, NVR argues that the Counterclaims should be stricken because Davern did not answer the Amended Complaint within the fourteen (14) day period prescribed by the federal rules.  FRCP 15(a)(3) ("any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later").  Second, NVR argues that the Counterclaims should be stricken because Davern filed the Counterclaims without leave of court.  Neither of these arguments has merit, and NVR's request to strike Davern's Counterclaims should be denied.

As an initial matter, Davern concedes that his Answer with Counterclaims to the Amended Complaint was not filed within fourteen days of the Amended Complaint as contemplated by Rule 15(a)(3).  Due to an internal docketing error by Davern's counsel, Defendant did not file his response, including these Counterclaims, until twenty-one days had elapsed.

Defendant sincerely regrets that his Answer and Counterclaims were filed a

week late due to this internal docketing error.  However, Davern respectfully submits that this delay should not lead the Court to strike Defendant's pleading.  NVR did not seek, nor did the Court grant, a default pursuant to the rules.  *See* Fed. R. Civ. P. 55(b)(2) (allowing the Court to enter a default only upon application and after hearing).  Even if NVR had made the proper application to the Court, a default judgment would not have been appropriate in this case.  "Default judgments are disfavored in our Circuit" *In re McGuire*, 450 B.R. 68, 73 (Bankr. D.N.J. 2011) (quoting *Sourcecorp Inc. v. Croney*,  2011 WL 159707 (3d Cir. 2011)).  Further, in deciding an application for a default judgment, a court should consider "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir.2000).  None of these factors favor default in this case.  NVR cannot conceivably be prejudiced by a delay of just seven days in the filing of Davern's answer.  As has been apparent throughout this litigation, Davern has multiple litigable defenses to NVR's claims (and, indeed, has been defending the case vigorously since its inception).  Finally, the delay in the filing of Davern's responsive pleading is the result of an innocent mistake by Defendant's counsel, and not any culpable conduct on Davern's part.

Second, NVR's arguments that Davern's Counterclaims should be stricken because they are raised for the first time in the Answer to the Amended Complaint

are unpersuasive.  Rule 13 requires that a party raise as a counterclaim any claim that the pleader has against the opposing party at the time of the service of the pleading.  Fed. R. Civ. P. 13(a)(1).  Davern's Counterclaims are based largely on conduct by NVR that occurred after Davern filed his initial responsive pleading in this matter.  Davern filed his answer to NVR's initial complaint on July 23, 2015, at which time Davern did not have, or at least did not know of, his claims against NVR. Indeed, Davern's claims against NVR for tortious interference, abuse of process, and defamation arose after the filing of that initial responsive pleading.  For example, NVR's improper contacts with Horton, Davern's employer, occurred not only when the initial lawsuit was filed, but also in December of 2015, long after Davern had responded to the complaint.

Similarly, the extent of NVR's false representations to the Court, as well as NVR's unnecessary and improper escalation of this litigation, occurred after Davern's initial responsive pleading in July 2015.  While some of the false statements highlighted in Davern's Counterclaims are included in NVR's initial complaint, Defendant did not become aware of the full extent of NVR's misconduct until well into the discovery period in the case, particularly with the deposition of NVR in November.  Despite repeated requests from Davern's counsel, NVR failed to correct their knowingly false representations in their Amended Complaint.  It would have been impossible, then, for Davern to plead his Counterclaims in his

initial answer to NVR's complaint, and as such, it was appropriate for Davern to assert his Counterclaims based on those false representations in his answer to the Amended Complaint. Thus when the Amended Complaint was filed, Davern was required to assert these compulsory counterclaims.[2] *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC,* 2011 WL 743468, at *2 (M.D. Pa. Feb. 24, 2011) ("the compulsory nature of the counterclaims outweighs all other factors and . . . the interests of justice demand that defendants be given an opportunity to adjudicate their claims.").

Nor are Davern's counterclaims precluded on statute of limitations grounds, as they have been pled well within the time required under New Jersey law: 2 years for Davern's abuse of process claim (N.J. Stat. § 2A:14-2), 1 year for defamation (N.J. Stat. § 2A:14-3), and 6 years for tortious interference (N.J. Stat. § 2A:14-1).[3]

### 2. Davern's Counterclaims are not Precluded by the Litigation Privilege

NVR's primary argument in support of its motion to dismiss is that Davern's Counterclaims are completely barred by the litigation privilege. The litigation

---

[2] To qualify as a compulsory counterclaim, "there need not be precise identity of issue and facts between the claim and the counterclaim; rather, the relevant inquiry is whether the counterclaim 'bears a logical relationship to an opposing party's claim.' " *TransAmerica Occidental Life Ins. Co. v. Aviation Office of America, Inc.,* 292 F.3d 384, 389 (3d Cir.2002) (quoting *Xeros Corp. v. SCM Corp.,* 576 F.2d 1057, 1059 (3d Cir.1978)). The objective of Rule 13(a) is to promote judicial economy, thus the term "transaction or occurrence" is construed liberally. *Id.*

[3] Davern respectfully requests that if the Court finds that the Counterclaims should be dismissed on the grounds that Davern failed to seek leave, that the Court dismiss the Counterclaims without prejudice, so that Davern may formally file a motion for leave.

privilege, as it has been formulated by New Jersey courts, grants immunity to statements that "(1) have been made in the course of a judicial proceeding and (2) have some relation to the judicial proceeding." *DeVivo v. Ascher*, 228 N.J. Super. 453, 457 (1988).  The purpose of the litigation privilege is to "afford[] attorneys wide latitude in communications involved with the representation of their clients," *id.* at 458, and to provide litigants with "an unqualified opportunity to explore the truth of a matter without fear of recrimination." *Hawkins v. Harris*, 661 A.2d 284, 289-90 (N.J. 1995).  NVR contends that all of the statements and other conduct that forms the basis for Davern's Counterclaims are covered by the litigation privilege, and therefore that the Counterclaims should be dismissed.  Davern's allegations, however, are not covered by the privilege, and NVR's motion should be denied.

While the litigation privilege is often referred to as an "absolute" privilege, the privilege does not extend to every possible utterance made during the course of litigation.  For example, defamatory statements made by counsel or a party are only protected by the privilege if they are pertinent or material to the ongoing proceedings. *See Hawkins*, 661 A.2d at 290 (citing *Demopolis v. Peoples Nat. Bank of Washington*, 59 Wash. App. 105, 109, 796 P.2d 426, 429 (1990) ("[E]xtrajudicial defamatory allegations related to a party's honesty are not sufficiently 'pertinent' to a judicial proceeding to clothe them with an absolute privilege"); *see also Post v. Mendel*, 507 A.2d 351, 356 (Pa. 1986) (finding that letter drafted by attorney

14

detailing misconduct by opposing counsel and sent to attorney, judge, disciplinary board, and attorney's client was not pertinent and material to the proceedings, and thus not "within the sphere of communications which judicial immunity was designed to protect").

Courts have also declined to extend the privilege to false representations made by litigants to the court.  As the Third Circuit has stated, "[t]he practice of allowing attorneys and litigants to use unfettered expression to make their cases is to serve the courts' truth-seeking function; it is not the goal in itself." *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 318 (3d Cir. 2014), reh'g denied (Dec. 1, 2014).  In *Williams*, the court addressed claims by plaintiffs in a class action that a series of false statements and other fraudulent activity by counsel and various asbestos manufacturers had prevented plaintiffs from obtaining recovery for their asbestos-related injuries.   The Third Circuit, acknowledged that under New Jersey law, the litigation privilege reflects "the need for unfettered expression" in adversarial proceedings. Id. at 318 (quoting *Hawkins v. Harris*, 141 N.J. 207, 661 A. 2d 284, 287 (1995)).  But the *Williams* Court concluded that the alleged conduct was antithetical to the goals for the litigation privilege:

> Here the claim is that lawyers and litigants actively frustrated the search for the truth and purposefully misled their adversaries. The purposes of the privilege are never served by allowing counsel to practice deceit and deception in the course of litigation, nor by permitting counsel to make false and misleading statements in the course of judicial proceedings.

*Id.*

In rejecting defendants' arguments that the litigation privilege precluded liability for such false statements, the court held that "when, as here, defendants have uttered words that prevent a fair proceeding, the litigation privilege provides no relief." *Id.* at 318. See also *Peterson v. HVM LLC*, 2016 WL 845144, at *11 (D.N.J. Mar. 3, 2016) ("these tort claims [malicious prosecution and abuse of process], as they develop factually, might turn out to be barred by the privilege. Nevertheless, at the pleading stage, I am cautious about applying the privilege to bar torts which, by their very nature, relate to court proceedings. To hold the privilege *genetically* applicable would, in effect, negate these torts; that is too much weight for the privilege to bear."); *Tedards v. Auty*, 232 N.J. Super. 541, 551, 557 A.2d 1030, 1035 (App. Div. 1989) ("The duty to represent a client does not shield an attorney from the consequences of offering evidence that he knows is false. *RPC* 3.3(a)(4).").

These limitations on the "absolute" litigation privilege prevent the application of the privilege to Davern's Counterclaims here, as those Counterclaims are based on knowingly false statements made by NVR to the Court and third parties, and statements and conduct by NVR for the purpose of frustrating the search for the truth and instead engineer an outcome injurious to Davern and unrelated to NVR's pursuit of its remedies in this litigation. For example, Davern's abuse of process claim is based upon false, uncorrected statements made by NVR in its initial complaint, the

Amended Complaint and during the Preliminary Injunction hearing concerning Davern, the nature of the information Davern is alleged to have taken from NVR, and the adequacy of NVR's safeguards to protect confidential information, among other allegations *See, e.g.,* Counterclaims, ¶¶ 132-133. NVR's failure to correct the false representations to the Court, and the Court's subsequent reliance on those false representations in granting the preliminary injunction and fashioning the order setting forth its scope, has interfered with the fairness of the proceeding, and should not be covered by the litigation privilege.

Neither should NVR's statements and conduct that form the basis for Davern's claims for tortious interference and defamation be privileged. As set forth above, Davern's Counterclaims detail how both NVR (through James Sack, an officer and general counsel of the company) and its outside counsel contacted Davern's new employer, D.R. Horton, on multiple occasions, with the goal of causing Horton to terminate Davern's employment. *See* Counterclaims, ¶¶ 112-119. These communications were not pertinent to the instant litigation or NVR's pursuit of its remedies in this case. Indeed, as set forth in the Counterclaims, Sack testified during his deposition that at no time during his communications with Horton did he seek to determine whether Horton had obtained any of NVR's confidential information, nor did he seek the return of any such information. *Id.* at ¶¶ 86, 115. Rather, NVR's communications concerning its allegations against Davern were, in

essence, veiled threats to Horton that NVR would entangle Horton in this litigation unless Horton terminated Davern's employment.  *Id.* at ¶ 119.

Under these circumstances, Davern has alleged conduct by NVR in his Counterclaims that places that conduct and the statements surrounding it outside of the protection of the litigation privilege.  For these reasons, NVR's motion to dismiss based upon the litigation privilege should be denied.

### 3.      Davern has Sufficiently Pled his Counterclaims

NVR's motion to dismiss also contends that each of Davern's counterclaims is insufficiently pled, such that it should be dismissed at the pleading stage. However, in so arguing NVR has ignored the specific factual allegations that support each of Davern's claims, as well as the pleading standards set forth in *Twombly* and its progeny.

### a.      Davern has sufficiently alleged a counterclaim for tortious interference with existing and prospective relationships.

The Counterclaims detail the manner in which NVR has interfered with Davern's contractual relationship with Horton in repeated attempts to get Horton to terminate its employment relationship with Davern.  Further, the Counterclaims specify how NVR's tactics in this litigation, undertaken not as a legitimate pursuit of its own rights but as a way to damage a former employee and competitor, have undermined Davern's ability to perform his duties for Horton.

18

Under New Jersey law, a party complaining of tortious interference must demonstrate (1) that the party had a contract or reasonable expectation of an economic benefit; (2) that the opposing party knew of this contract or expectancy; (3) that the opposing party wrongfully and intentionally interfered with the contract or expectancy; (4) a reasonable probability that but for the opposing party's wrongful interference, the party would have realized the economic benefit; and (5) that the party was injured as a result of the opposing party's conduct. *Coast Cities Truck Sales, Inc. v. Navistar Int'l Transp. Co.*, 912 F.Supp. 747, 771 (D.N.J.1995) (citing *Printing Mart–Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 563 A.2d 31 (1989), and *Fineman v. Armstrong World Industries, Inc.*, 980 F.2d 171, 186 (3d Cir.1992)). Plaintiff does not deny that Davern had a contractual relationship with Horton, that NVR knew of that contract, or that Davern has sufficiently alleged interference by NVR.  However, NVR disputes that Davern has adequately alleged that he has suffered any damages as a result of NVR's actions.

NVR is correct that Davern has not lost his job as a result of NVR's interference, but this does not end the inquiry.  Davern need not allege that NVR caused Horton to terminate its contractual relationship with Davern, only that NVR interfered with the performance of the contract. *Wexco Indus. v. ADM21 Co.*, 2008 WL 5427867, at *9 (D.N.J. 2008).  Davern has done that here.  Specifically, Davern has alleged in the Counterclaims that NVR's actions—including but not limited to

19

making false statements to Horton concerning Davern's actions, needlessly escalating this litigation and threatening to embroil Horton within it, and pursuing an overly broad preliminary injunction that prevents Davern from using not just NVR's trade secrets and confidential information but also industry information gained as a result of Davern's extensive professional experience—have prevented Davern from fully performing his job duties for Horton.  Counterclaims at ¶¶ 112-114, 117-121.

Further, Davern has alleged that he has been injured as a result of NVR's tortious conduct, as Davern's inability to fully perform his employment duties has led to Davern earning less from Horton than he otherwise would have, and has diminished Davern's reputation within the company, affecting his future prospects with Horton. *Id.* at ¶¶ 122, 124. Contrary to NVR's assertion that Davern's allegations are "vague" and conclusory," the Counterclaims specifically allege that the impact of NVR's conduct has been to escalate the litigation costs incurred by Davern and to escalate "the demands upon the time of Davern that would otherwise be available to perform his job responsibilities for Horton." *Id.*, at ¶ 120.   At the pleading stage this is certainly sufficiently specific and Davern is not required to quantify the extent to which he has been diverted from performing his job responsibilities and as a result suffered the loss of the full economic benefits of his employment by Horton. *See* L.R. 8.1 ("A pleading which sets forth a claim for relief

in the nature of unliquidated money damages shall state in the ad damnum clause a demand for damages generally without specifying the amount."). Accordingly, Davern has stated a claim for tortious interference, and NVR's motion to dismiss that counterclaim should be denied.

> **b.    The Counterclaims adequately state a claim for abuse of process.**

To establish a claim for abuse of process under New Jersey law, a party must show "1) an ulterior motive and 2) some further act after an issuance of process representing the perversion of the legitimate use of process." *See Mosley v. Delaware River Port Authority, et al.*, 2000 WL 1534743, at *9 (D.N.J. 2000). "The touchstone of this tort is that, subsequent to the issuance of process, a party has perverted that process." *Id.* (citing *Galbraith v. Lenape Regional High School Dist.*, 964 F.Supp. 889, 897 (D.N.J.1997)).

NVR incorrectly argues that Davern has not alleged sufficient "further acts" to make out a claim. Specifically, NVR contends that under the definition of "process" in the context of an abuse of process claim, aside from the initial complaint, the Preliminary Injunction Order is the only process that NVR could have abused. *See* NVR Brief at p. 30. This position is incorrect as a matter of law. In *Avaya, Inc. v. Cisco Sys., Inc.*, 2012 WL 2065536 (D.N.J. June 7, 2012), the court summarized the breadth of scope of processes attendant to litigation that may ground a claim for abuse of process:

courts, in and out of New Jersey, are in agreement that discovery may constitute "process" in an abuse of process claim. *See, e.g., Gen. Refractories Co. v. Fireman's Fund Ins. Co.,* 337 F.3d 297 (3d Cir.2003) (interpreting Pennsylvanian law to include discovery in the general category of processes); *Unitronics, Inc. v. Robotic Parking Sys. Inc.,* No. 09–3493, 2010 WL 2545169 (D.N.J. Jun.18, 2010) (recognizing discovery, pursuant to New Jersey law, as a process in the context of an abuse of process claim); *Giordano v. Claudio,* 714 F.Supp.2d 508 (E.D.Pa.2010) (indicating that discrete portions of a lawsuit, such as discovery requests, can serve as the underlying process); *Nienstedt v. Wetzel,* 133 Ariz. 348, 651 P.2d 876, 880 (Ariz.Ct.App.1982) (defining process as a compulsory act proceeding under court authority and that process includes the "entire range of procedures incident to the litigation process"); *Vallance v. Brewbaker,* 161 Mich.App. 642, 411 N.W.2d 808, 810 (Mich.Ct.App.1987) (performing discovery "for the improper purpose of imposing an added burden and expense on the opposing party" may form the basis of an abuse of process claim); *Givens v. Mullikin ex rel. Estate of McElwaney,* 75 S.W.3d 383 (Tenn.2002) (recognizing that discovery is a process which can be abused when attempting to impose substantial costs on the opposing party).

2012 WL 2065536 at *6.

Even within the unduly restrictive confines conceded by NVR, obtaining the preliminary injunction by illegitimate means could constitute an abuse of process, the Counterclaims adequately allege facts making out of claim for abuse of process. First, Davern has alleged that the filing of the initial complaint in this matter, *after Davern had already agreed to return all NVR information in his possession*, was intended not to pursue legitimate remedies, but to improperly prevent Davern from moving on from NVR and plying his talents for Horton, and to restrict competition by one of NVR's competitors. *See* Counterclaims, ¶¶ 128 – 130. After the original

complaint was filed, Davern alleges that NVR used it as a pretext to contact Horton in an effort to cause Horton to terminate Davern.  Counterclaims, ¶ 132.  Further, it is alleged that NVR relied upon knowingly false material misrepresentations to obtain the Preliminary Injunction.  *Id.* at ¶ 133.  It also is alleged that NVR employed litigation tactics in connection with the Preliminary Injunction hearing that were intended to cast Davern's counsel in a poor light at the hearing to facilitate obtaining an injunction that would restrict Davern and open a door for more expansive, abusive discovery practices. *Id.* at ¶¶ 134-138.

The Counterclaims detail NVR's continuation of this strategy through their crafting of the Preliminary Injunction Order, which restricts Davern's ability to use not just NVR's trade secrets and confidential information but also industry information gained as a result of Davern's extensive professional experience.  *Id.* at ¶¶ 143 – 144. These types of allegations are sufficient to plead a claim for abuse of process. *Tedards v. Auty*, 557 A.2d 1030, 1035 (N.J. App. Div. 1989) (summary judgment not appropriate on abuse of process claim alleging that defendant acted with malice and obtained writ *ne exeat* on the basis of statements in the wife's "certification that he [the attorney] knew were materially false. The duty to represent a client does not shield an attorney from the consequences of offering evidence that he knows is false. *RPC* 3.3(a)(4).").

For these reasons, Davern's counterclaim for abuse of process has been adequately plead and NVR's motion to dismiss this count should be denied.[4]

### c. Davern's defamation claim provides NVR with more than adequate notice of its grounds.

A claim for defamation under New Jersey law requires a party to show that the opposing party "(1) made a false and defamatory statement concerning the [party], (2) communicated the statement to a third party, and (3) had a sufficient degree of fault." *Cruz v. HSBC*, 2010 WL 2989987, at *2 (D.N.J. 2010) (citing *Singer v. Beach Trading Co.*, 379 N.J.Super. 63, 876 A.2d 885, 894 (N.J.Super.Ct.App.Div.2005)).   NVR argues that Davern's counterclaim for defamation is not pled with the requisite specificity and should be dismissed, as it characterizes Davern's allegations as merely "conclusory," in that they do not identify specific statements or who made them. *See* NVR's Brief at p. 34.

This contention from NVR, however, completely ignores the factual allegations contained throughout the Counterclaims.   Indeed, the Counterclaims identify specific false, defamatory statements—for example, that Davern stole "vast numbers" of documents from NVR, without disclosing that over 70% of those documents were Davern's personal documents—made by NVR's general counsel. Counterclaims at ¶¶ 112 – 113.   The allegations in the Counterclaims thus give NVR

---

[4] As described above, NVR's abusive litigation practices have continued since issuance of the Preliminary injunction including abusive discovery practices, leading to the pending motion for protective order. Doc. No. 97.

more than adequate notice to defend against Davern's claim, and the motion to dismiss should be denied. *Twombly*, 550 U.S. at 555.

## III.   CONCLUSION

In light of the foregoing, Davern requests that the Court enter an order denying Plaintiff's motion to strike or dismiss Plaintiff's counterclaims.

<div style="margin-left: 40%">

Respectfully submitted,

KANG HAGGERTY & FETBROYT LLC

By:   *s/Edward T. Kang*
     Edward T. Kang
     Gregory H. Mathews
     David P. Dean
     123 S. Broad Street, Suite 1670
     Philadelphia, PA 19109
     ekang@LawKHF.com
     gmathews@LawKHF.com
     ddean@LawKHF.com
     (215) 525-5850
     (215) 525-5860 (fax)

</div>

Dated:  March 21, 2016         *Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____

| | |
|---|---|
| NVR, INC., | :   CIVIL ACTION |
| | : |
|            Plaintiff, | :   No. 1:15-cv-05059-NLH- |
| | :   KMW |
|   vs. | : |
| | : |
| JONATHAN DAVERN, | : |
| | : |
|            Defendant. | : |

_____ :

## **ORDER**

**AND NOW**, this _____ day of _____, 2016, upon

consideration of Plaintiff NVR, Inc.'s Motion to Strike or Dismiss Defendant's

Counterclaims (the "Motion"), and Defendant Jonathan Davern's response in

opposition thereto, it is hereby **ORDERED** that the Motion is **DENIED**.


**BY THE COURT:**



_____

  **Hon. Noel L. Hillman, U.S.D.J.**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

—————————————————————

| | |
|---|---|
| NVR, INC., | : |
| | : CIVIL ACTION |
| | : |
| Plaintiff, | : No. 1:15-cv-05059-NLH- |
| | : KMW |
| vs. | : |
| | : |
| JONATHAN DAVERN, | : |
| | : |
| Defendant. | : |

—————————————————————

**<u>CERTIFICATE OF SERVICE</u>**

I, Edward T. Kang, herby certify that on March 21, 2016, a true and correct copy of Defendant's Brief in Opposition to Plaintiff's Motion to Strike or Dismiss Plaintiff's Counterclaims has been filed electronically and may be viewed and/or downloaded through the ECF system maintained by the Clerk of the United States District Court for the District of New Jersey. The following counsel representing the following party will receive electronic notification:

James S. Yu, Esquire
Seyfarth Shaw LLP
620 East Avenue
New York, NY 10018

Barry J. Miller, Esquire
Lauren S. Wachsman, Esquire
Seyfarth Shaw LLP
2 Seaport Lane, #300
Boston, MA 02210

Robert A. Mintz, Esquire
Thomas F. Doherty, Esquire
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102

By:   *s/Edward T. Kang*
Edward T. Kang

Dated: March 21, 2016