## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

NVR, INC.

        Plaintiff,

     v.                           Civ. No. 15-5059 (NLH/KMW)

JONATHAN DAVERN,

        Defendant.                    **OPINION**

**APPEARANCES:**

JAMES S. YU
BARRY J. MILLER (*Pro Hac Vice*)
SEYFARTH SHAW, LLP
620 EIGHTH AVENUE
NEW YORK, NY 10018-1405
    *On behalf of Plaintiff NVR, Inc.*

EDWARD T. KANG
DANIEL D. HAGGERTY
KANG HAGGERTY & FETBROYT LLC
123 S. BROAD STREET, SUITE 1670
PHILADELPHIA, PA 19109
    *On behalf of Defendant Jonathan Davern*

**HILLMAN**, District Judge

    In June, 2015, Defendant Jonathan Davern left the employ of Plaintiff NVR, Inc. homebuilders to work for one of NVR's largest direct competitors, non-party D.R. Horton.  This particular event, in and of itself, undisputedly does not give rise to liability; Davern and NVR did not have a non-compete agreement of any kind.  However, according to NVR, Davern took

with him more than 97,000 documents and emails belonging to NVR which allegedly contained NVR's confidential and proprietary information. (Amend. Compl. ¶ 139)  Moreover, NVR alleges that Davern acted maliciously in taking the documents, doing so "for the specific purpose of doing harm to NVR's competitive position in the Delaware Valley region." (Amend. Compl. ¶ 1)  In short, NVR thinks Davern engaged in corporate espionage; that Davern deliberately stole proprietary information so that he could give it to his new employer, NVR's competitor, D.R. Horton.

However, since the complaint was filed, and since this Court entered a preliminary injunction, *see NVR., Inc. v. Davern,* 2015 U.S. Dis. LEXIS 171428 (D.N.J. Dec. 23, 2015), a second, competing narrative has emerged.  Davern contends that NVR's primary objective is to get Davern fired from D.R. Horton, sabotage Davern's relationship with Horton, and/or injure Horton's competitive position in the market, and that NVR has attempted to accomplish its goal by (1) over-litigating and prolonging this case, and doing so in a manner calculated to needlessly embarrass and burden Davern; and (2) directly contacting Horton on four separate occasions concerning Davern's alleged disloyalty to NVR.  Accordingly, Davern now asserts three counterclaims: (1) tortious interference with his contractual relationship with Horton; (2) abuse of process; and (3) defamation.

2

Presently before the Court is NVR's motion to dismiss the counterclaims, and Davern's motion to seal portions of NVR's brief in connection with a previous motion, which NVR opposes.

For the reasons set forth herein, NVR's Motion will be denied and Davern's motion will be granted.

## I.

Davern asserts that a reasonable factfinder could conclude that NVR is not really concerned with the documents and information Davern allegedly took with him.  His counterclaims assert the following facts to support such an inference:

- Between 2005 and 2015, NVR did not have a policy or practice of training or educating new employees on "what NVR considers to be confidential, proprietary, or trade secret information;" nor did it train employees on how to handle or share such information (Counterclaim ¶ 9-10)

- Despite high attrition rates, "NVR does nothing to retrieve confidential, proprietary or trade secret information residing on personal computing devices of departing employees," (Counterclaim ¶ 26-27) and NVR has no policy prohibiting storage of information on personal devices. (Counterclaim ¶ 25)

- Four days before Davern resigned from NVR, NVR's IT Department learned that Davern had emailed more than 270 messages from his work email to his personal email.  That same day, the IT Department emailed NVR's Vice President for Audit and Corporate Governance, Michael Kotowski, to report the activity, but he did nothing. (Counterclaim ¶ 46-47)

- Discovery in this suit has revealed that NVR's potential damages is very limited.   NVR

3

admitted during its deposition that it has not lost any sales or land opportunities as a result of Davern's alleged conduct, nor has NVR lost any employees. (Counterclaim ¶ 93-94) Moreover, a forensic analysis of Davern's digital devices and email accounts revealed that Davern did not access any NVR information after his resignation. (Counterclaim ¶ 95)

- Despite what has been learned in discovery, "NVR has needlessly pursued this litigation and deliberately escalated its costs." (Counterclaim ¶ 120)

Davern further asserts that a reasonable factfinder could conclude that NVR's filing and pursuit of this litigation is nothing more than pretext for its true motive, which is revenge against Davern and/or to deprive Horton of Davern's services. His counterclaims assert the following facts to support such an inference:

- "[R]ight after filing this lawsuit," NVR's General Counsel called Horton's General Counsel to tell Horton about "'the vast number of documents' that Davern took from NVR" but did not explain that "over 70% of these documents were Davern's personal documents." (Counterclaims ¶ 111-13)

- In that same conversation, NVR's General Counsel did not ask Horton to return any confidential or proprietary information Davern might possess. (Counterclaims ¶ 115)

- Despite Davern's deposition transcript being designated "confidential," NVR's counsel asked that the confidential designation be removed so that NVR's counsel could show the transcript to Horton. (Counterclaims ¶ 117)

4

- When Davern's counsel declined to change the confidential designation of the deposition transcript, NVR's counsel wrote to Horton's president, its CEO, its COO, and its Chief Legal Officer suggesting that Horton may be interested in what was said in Davern's deposition, and suggesting that if Davern's counsel "reconsiders his position," NVR might better "avoid undue disruption to your business" through formal legal "claims against D.R. Horton" or "through subpoenas or other formal discovery requests promulgated to D.R. Horton." (Counterclaims Ex. 9)

- "Davern believes that [NVR] has contacted Horton at least four times regarding Davern" and those communications have had the effect of "limit[ing] Davern's impact at Horton." (Counterclaims ¶ 122)

## II.

### A. Motion to Dismiss Standard

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead

all the facts that serve as a basis for the claim. *Bogosian v. Gulf Oil Corp.*, 562 F.2d 434, 446 (3d Cir. 1977).  However, "the Federal Rules of Civil Procedure . . . do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" *Bell Atlantic v. Twombly*, 550 U.S. 544, 563 n.8 (2007) (quoting *Scheuer v. Rhoades*, 416 U.S. 232, 236 (1974)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009)("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)("*Iqbal* . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly*.").

## B.   Motion to Seal Standard

In deciding whether to seal documents filed on the public docket, the Court considers "(a) the nature of the materials or proceedings at issue, (b) the legitimate private or public interests which warrant the relief sought, (c) the clearly defined and serious injury that would result if the relief

6

sought is not granted, and (d) why a less restrictive alternative to the relief sought is not available." L. Civ. R. 5.3(c)(2).

The Court should also consider "1) whether disclosure will violate any privacy interests; 2) whether the information is being sought for a legitimate purpose or for an improper purpose; 3) whether disclosure of the information will cause a party embarrassment; 4) whether confidentiality is being sought over information important to public health and safety; 5) whether the sharing of information among litigants will promote fairness and efficiency; 6) whether a party benefitting from the order of confidentiality is a public entity or official; and 7) whether the case involves issues important to the public." *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995).

## III.

### A.   NVR's Motion to Strike Davern's Counterclaims as Untimely Filed and Without Leave of Court

NVR asserts two arguments in support of its Motion: (1) Davern's Amended Answer containing the counterclaims was filed 7 days late; and (2) Davern failed to seek leave of Court to file the counterclaims.

Both arguments fail.  NVR does not assert that the 7-day delay resulted from any bad faith.  Indeed, Davern's counsel explains that the delay resulted from an internal calendaring

7

error and nothing more.  Additionally, NVR identifies no prejudice attributable to the 7-day delay.

The Court also declines to dismiss the counterclaims due to Davern's failure to seek leave.  Rather, the Court will grant leave *nunc pro tunc* to the counterclaims' filing date.[1]  "The court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2).  The grant or denial of leave is within the discretion of the District Court, and a court may deny leave to amend in the presence of "undue delay, bad faith, dilatory motive, prejudice, [or] futility." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)(internal citations omitted).

The Court discerns no undue delay or dilatory motive in amendment.  The counterclaims are based on events that happened after the initiation of this suit and have developed over the course of this litigation. *See* Fed. R. Civ. P. 13(e)("The court may permit a party to file a supplemental pleading asserting a counterclaim that matured or was acquired by the party after serving an earlier pleading.").

The Court rejects NVR's assertion that it will be prejudiced by allowing amendment.  While NVR asserts that

---

[1]  Davern disputes that leave was required under the circumstances.  The Court assumes without deciding that leave was required.

"substantial new discovery" will be needed, the Court disagrees that, within the context of this suit, such new discovery will be so substantial as to rise to the level of prejudicial.

Lastly, there is nothing before the Court suggesting the counterclaims are made in bad faith, and for the reasons set forth next, amendment would not be futile.

**B.    NVR's Motion to Dismiss**

NVR asserts that all three counterclaims are barred by the litigation privilege, and that each counterclaim fails to state a claim.  The Court addresses each argument in turn.

**1.    The litigation privilege**

Under New Jersey law, the litigation privilege "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the object of the litigation; and (4) that have some connection or logical relation to the action." *Hawkins v. Harris*, 141 N.J. 207, 216 (1995); *see also Loigman v. The Township Committee of the Township of Middletown*, 185 N.J. 566, 585 (2006).

The Court holds that the litigation privilege does not apply to bar Davern's counterclaims because all three counterclaims are premised on the theory that this entire litigation is pretextual.  According to Davern, all of NVR's actions were not designed to achieve the object of the

litigation-- i.e., the retrieval of confidential information and money damages-- but rather, to get Davern fired from Horton, sabotage Davern's relationship with Horton, and/or harm Horton's competitive position in the market.  In light of such allegations, the litigation privilege cannot shield NVR from liability for filing and pursuing alleged sham litigation, nor from making out-of-court statements to a non-party, which statements are alleged to have been made for purposes unrelated to the litigation.

**2.   Tortious interference with Davern's contractual relationship with Horton**

Davern must allege facts establishing that he "had a reasonable expectation of economic advantage that was lost as a direct result of defendants' malicious interference, and that [he] suffered losses thereby." *Lamorte Burns & Co. v. Walters*, 167 N.J. 285, 305-06 (2001).

NVR argues that Davern's tortious interference claim fails because Davern has not alleged that he has lost any economic advantage as a result of NVR's alleged tortious conduct. Basically, NVR argues that because Davern remains employed with Horton, his claim must fail.  The Court disagrees.

Davern has adequately alleged that NVR's actions have hampered Davern's ability "to fully perform his employment duties[,] has led to Davern earning less from Horton than he

10

otherwise would have, and has diminished Davern's reputation within the company, affecting his future prospects with Horton." (Opposition Breif, p. 20)  Specifically, the crossclaim alleges that "NVR's tortious conduct prevented Davern from performing his duties for Horton fully and completely, which effectively limited Davern's impact at Horton," (Counterclaim ¶ 122) and "diminished Davern's reputation with Horton." (Counterclaim ¶ 124)

The Motion to Dismiss the tortious interference counterclaim will be denied.

**3.   Abuse of process**

"An action for malicious abuse of process will lie against one who uses a writ after its issuance solely to coerce or injure the defendant." *Tedards v. Auty*, 232 N.J. Super. 541, 549 (App. Div. 1989)(citing *Ash v. Cohn*, 119 N.J.L. 54, 58 (E. & A. 1937)).  "[P]rocess has not been abused unless after its issuance the defendant reveals an ulterior purpose he had in securing it by committing further acts whereby he demonstrably uses the process as a means to coerce or oppress the plaintiff." *Id.* at 550.

As already set forth, Davern alleges that NVR has an ulterior motive in filing suit and continuing to pursue this suit in the manner in which it has: to get Davern fired from Horton, sabotage Davern's relationship with Horton, and/or harm

11

Horton's competitive position in the market.  This states a claim for abuse of process.

NVR, however, relying on *Jewett v. IDT Corp.*, argues that an abuse of process claim "does not apply broadly to all proceedings in a legal action.  Rather, it is limited to certain products of litigation that a court issues, such as a summons, mandate, or writ used by a court to compel the appearance of the defendant in a legal action or compliance with its orders." 2007 U.S. Dist. LEXIS 67284 at *19 (D.N.J. Sept. 11, 2007).  Therefore, NVR asserts, Davern's counterclaim fails.

The Court disagrees.  Davern asserts that NVR never needed to file this suit in the first place because prior to the filing of the complaint, Davern agreed to give back all of the documents and information to NVR.  (Opposition Brief p. 22)  Indeed, the counterclaim alleges, "NVR instigated this lawsuit against Davern notwithstanding the fact that before filing suit, NVR knew that Davern had agreed to return all NVR information in his possession and had . . . turned over to counsel all his digital devices for this purpose." (Counterclaim ¶ 128)  Thus, the summons issued to Davern when NVR filed this suit fulfills the "process" requirement. *See also Avaya, Inc. v. Cisco Sys.*, 2012 U.S. Dist. LEXIS 79219 at *9 (D.N.J. June 6, 2012)("The typical abuse of process claim involves leveraging some

12

attachment process or complaint in order to achieve some other end.").

The Court also rejects NVR's argument that Davern alleges no "further acts" after the issuance of process that would plausibly support a conclusion that NVR has pursued this suit solely to injure Davern.  Davern alleges that discovery in this suit has revealed that NVR's potential damages recovery is limited.  NVR admitted during its deposition that it has not lost any sales or land opportunities as a result of Davern's alleged conduct, nor has NVR lost any employees. (Counterclaim ¶ 93-94)  Moreover, a forensic analysis of Davern's digital devices and email accounts revealed that Davern did not access any NVR information after his resignation. (Counterclaim ¶ 95)  Yet this Court has observed first-hand how NVR continues to litigate this case in a manner inconsistent with any realistic potential damages recovery.[2]

Accordingly, the Motion to Dismiss the abuse of process counterclaim will be denied.

**4.   Defamation**

NVR argues that Davern fails to identify any defamatory statements, and therefore the defamation counterclaim fails to

---

[2]   NVR's opposition to Davern's Motion to Seal, discussed *infra*, is but one example of NVR's conduct in this regard.

give NVR fair notice of the nature of the claim.  The Court disagrees.

Detailed pleading is not required under Fed. R. Civ. P. 8(a)(2).  Davern alleges that NVR's General Counsel told Horton that "Davern stole 97,000 documents constituting NVR's trade secrets or confidential information" (Counterclaim ¶ 151), and the counterclaim further explains why that statement was allegedly misleading-- approximately 70,000 of those documents are allegedly personal documents (*see* counterclaim ¶ 151, 153); and also false-- Davern denies that any of the information contained in the documents constituted NVR's trade secrets (*see* counterclaim ¶ 152).

The Motion to Dismiss the defamation counterclaim will be denied.

## C.   Davern's Motion to Seal

Davern proposes that certain redactions be made to NVR's reply brief, and accompanying exhibit B-4 (Docket #91), filed in connection with NVR's previous Motion for a Temporary Restraining Order.[3]  Davern asserts that these limited redactions are appropriate because the information contained therein is subject to the parties' Discovery Confidentiality Agreement and because NVR seeks disclosure of such materials for no legitimate

---

[3]  The specific proposed redactions are set forth at p. 4-5 of Davern's moving brief, docket #124.

purpose, but rather simply to embarrass Davern and harm his relationship with his current employer.

In opposition, NVR submits a 20-page brief in which it argues Davern consented to the materials being publicly filed, and further advocates for an overly narrow and hyper-technical view of what may be sealed under the Court's Local Rule and relevant caselaw.  Notably, nowhere in the 20-page brief does NVR explain why the information at issue should be available to the public; rather, it simply asserts that Davern has not met his burden to overcome the presumption of public access.

The Court finds both of NVR's arguments entirely unpersuasive.

As to the issue of consent, defense counsel adequately explains that consent was inadvertent and resulted from a miscommunication occurring over various email exchanges.  The Court concludes that Davern's counsel did not truly consent, which is logically implicit in the fact that Davern's counsel filed the Motion to Seal in the first place.[4]

---

[4]  The Court does not know whether counsel for the parties attempted to clarify the apparent miscommunication prior to NVR filing its opposition.  The Court would expect, however, in the normal course of litigation conducted in a manner consistent with this Court's Guidelines for Litigation Conduct, L. Civ. R. App'x R, that once Davern's counsel filed the Motion to Seal, NVR's counsel would have noted the apparent inconsistency between Davern's counsel's informal position over email and formal position in the motion to seal, and would have reached out to Davern's counsel to attempt to resolve the issue prior to

The Court also concludes that the information sought to be sealed has little to no value to the public at large, and further, would embarrass Davern if disclosed.  Moreover, while the Court makes no factual finding, the Court does note that Davern asserts that NVR opposes sealing this information for an improper purpose, which is to negatively impact Davern's employment relationship with Horton.

Accordingly, the Motion to Seal will be granted.


Dated:  November 29, 2016
At Camden, New Jersey

                                          ___s/ Noel L. Hillman    _
                                          NOEL L. HILLMAN, U.S.D.J.

---

taking the position NVR has in its opposition. *Cf.* L. Civ. R. 37.1(b)("Discovery motions must be accompanied by an affidavit, or other document complying with 28 U.S.C. § 1746, certifying that the moving party has conferred with the opposing party in a good faith effort to resolve by agreement the issues raised by the motion without the intervention of the Court and that the parties have been unable to reach agreement.").