# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

—————————————————x
:
NVR, INC., a Virginia corporation,                        :        **ECF CASE**
:
Plaintiff,                        :        Civ A. No. 15-cv-05059-NLH-
:        KMW
- against -                                                  :
:
JONATHAN DAVERN, an individual,                :
:
Defendant.                        :
:
—————————————————x

## PLAINTIFF'S ANSWER AND AFFIRMATIVE DEFENSES TO DEFENDANT'S COUNTERCLAIMS

Plaintiff NVR, Inc. ("Plaintiff" or "NVR"), hereby answers the Counterclaims filed in this matter by Defendant Jonathan Davern ("Defendant" or "Davern") as follows, and to the extent that Plaintiff does not answer a specific averment, it is hereby denied:

1.      Paragraph 1 consists of conclusions of law, to which no response is required.  To the extent that a response is deemed required, Plaintiff denies the allegations in Paragraph 1.

2.      Plaintiff denies the allegations in Paragraph 2.  Answering further, Plaintiff admits that Defendant began his employment with NVR on January 4, 2005.

3.     Plaintiff admits that on January 4, 2005, Davern executed a Human Resources Policies and Procedures Acknowledgement, by which he acknowledged that he had received and reviewed specified NVR Human Resources policies ("2005 Acknowledgment").  Plaintiff further admits that the version of the NVR Code of Ethics ("COE") that Davern acknowledged in the 2005 Acknowledgment incorporated and mandated that all NVR employees follow the NVR Standards of Business Conduct ("SBC"), which contained a provision titled "Confidential, Proprietary and Inside Information."  Plaintiff denies the remaining allegations in Paragraph 3.

4.     Plaintiff admits that Exhibit A to Plaintiff's original Complaint in this matter did not contain an excerpt from NVR's COE, and that Paragraph 23 of Plaintiff's original Complaint inadvertently (1) described Exhibit A as containing an excerpt from the COE (instead of the SBC); and (2) stated that Davern's 2005 Acknowledgment confirmed that Davern had received and reviewed the COE, which contained a provision titled "Confidential, Proprietary and Inside Information" (instead of stating that the COE mandated that all employees comply with the SBC, which contained such a provision).  Plaintiff further admits that Defendant's Counsel requested at the November 18, 2015 Rule 30(b)(6) deposition that NVR amend its Complaint to correct the above inadvertent inaccuracies,

which Defendant deemed to be factual errors in the original Complaint.  Plaintiff

denies the remaining allegations in Paragraph 4.

5.     Plaintiff admits that the 2005 Acknowledgment states in relevant part

that "the Human Resources Policies and Procedures do not constitute nor should

they be relied on as constituting an employment contract between NVR and any of

its employees."  Plaintiff denies the remaining allegations in Paragraph 5.

6.     Plaintiff admits that NVR's Amended Complaint asserts claims

against Davern for (1) breach of contract; and (2) breach of contract: specific

performance, arising out of Davern's violation of NVR's COE and SBC.  Plaintiff

further admits that James Sack, NVR's General Counsel, was NVR's corporate

designee for the Rule 30(b)(6) deposition of NVR.  Plaintiff denies the remaining

allegations in Paragraph 6.

## I.     NVR's failure to take reasonable measures to safeguard information it considers to be confidential, proprietary or trade secret

7.     Plaintiff admits the allegations in the first two sentences of Paragraph

7, and that the version of the SBC that became effective on January 1, 2004 stated

that "[a]ll new employees are required to sign a form acknowledging that they have

received, read and agree to comply with" that version.   Plaintiff denies the

remaining allegations in Paragraph 7.

8.     Plaintiff denies the allegations in Paragraph 8.  Responding further, all

NVR employees had access to NVR's policies, including the SBC, as of 2005.

3

9.     Plaintiff denies the allegations in Paragraph 9.  Responding further, NVR's distribution of its policies governing the use and dissemination of confidential, proprietary and trade secret information provided specific information and direction to employees on those subjects.

10.     Plaintiff denies the allegations in Paragraph 10.  Responding further, NVR's distribution of its policies governing the use and dissemination of confidential, proprietary and trade secret information provided specific information and direction to employees on those subjects.

11.     Plaintiff admits that on or about January 2, 2008, NVR revised its COE and that such revisions included, among other things, the addition of a provision titled "Confidential, Proprietary and Inside Information."  To the extent there are additional allegations in Paragraph 11, Plaintiff denies them.

12.     Plaintiff states that Defendant's reference to "special training" is insufficiently specific to render his allegations in Paragraph 12 susceptible to admission or denial, and on that basis Plaintiff denies same.

13.     Plaintiff states that the SBC and COE are documents that speak for themselves and otherwise denies the allegations in Paragraph 13.

14.     Plaintiff denies the allegations in Paragraph 14 and incorporates its responses to Paragraphs 9 and 10 herein.

15.     Plaintiff states that the SBC and COE are documents that speak for themselves and otherwise denies the allegations in Paragraph 15.

16.     Plaintiff admits that during the Preliminary Injunction hearing, NVR's Counsel stated that Davern was a manager for NVR who, among other things "had the responsibility for enforcing the policies that you're going to hear about that the company has adopted to prevent this sort of scenario [in which an employee steals the Company's confidential, proprietary and trade secret information] from happening."  Plaintiff states that the job description for the Sales Manager position is a document that speaks for itself and otherwise denies Defendant's allegations regarding such document.  Answering further, Plaintiff denies that the COE and SBC "designate" the Senior Vice President of Human Resources ("Sr. VP of HR") as having the managerial responsibility to enforce compliance with the policies, but notes that (1) the COE and SBC do enumerate certain responsibilities for the Sr. VP of HR; and (2) the SBC states that (i) "[t]he Board expects management to implement and enforce these policies by whatever means are necessary . . ." and (ii) "failure to enforce these policies is considered a serious dereliction of the assigned duties of every director, officer or employee."  Plaintiff denies the remaining allegations in Paragraph 16.

17.     Plaintiff admits the allegations in Paragraph 17.

36059906v.3

18.     Plaintiff states that the NVR End User Computing Policy ("EUCP") is a document that speaks for itself and otherwise denies the allegations in Paragraph 18.

19.     Plaintiff admits that the EUCP provides that (1) employees may use personally owned computing devices (e.g., PCs, smartphones, and table devices) to access applications made accessible by the Company over the internet (e.g., Outlook Web Access); (2) if NVR information is downloaded and stored on a personal computing device, the device must be configured to require an access PIN or password; (3) a personally owned computing device may not be used to connect to the NVR network, due to security, privacy and confidentiality concerns; and (4) any exceptions to the foregoing rules be pre-approved by NVR's Chief Information Officer.   To the extent there are additional allegations in Paragraph 19, NVR denies them.

20.     Plaintiff admits the allegations in Paragraph 20.

21.     Plaintiff states that the EUCP is a document that speaks for itself and otherwise denies the allegations in Paragraph 21.

22.     Plaintiff admits the allegations in Paragraph 22.

23.     Plaintiff admits the allegations in Paragraph 23.

24.     Plaintiff admits that its Mobile Telecommunications and Computing Policy" ("MTCP") allows designated categories of employees to use personal

mobile phones to perform job responsibilities for NVR, that Davern was authorized to use his personal smartphone pursuant to the MTCP, and that Davern was reimbursed for costs certain costs incurred relating to his use of such device. Responding further, Plaintiff states that the MTCP is a document that speaks for itself and otherwise denies the remaining allegations in Paragraph 24.

25.     Plaintiff admits that the EUCP and MTCP permit employees to use their personal computing devices, such as smart phones and tablets, to conduct business and perform work on behalf of NVR, subject to a variety of enumerated restrictions listed in each policy.   Plaintiff denies the remaining allegations in Paragraph 25.

26.     Plaintiff admits that, like any employer, NVR has employee attrition. Plaintiff denies the allegation that it has "high attrition rates," that it has attrition at the levels described in Paragraph 26 "each year," and the remaining allegations in Paragraph 26.

27.     Plaintiff denies the allegations in Paragraph 27.

28.     Plaintiff denies the allegations in Paragraph 28.   Answering further, Plaintiff states that NVR does conduct exit interviews with departing employees, and that during some such interviews, the Company informs employees that they should return any NVR information in their possession.

29.     Plaintiff denies the allegations in Paragraph 29.

30.     Plaintiff denies the allegations in Paragraph 30.

31.     Plaintiff admits that it has no policy that expressly and specifically directs confidential information to be stamped "confidential."  Responding further, NVR states that it has policies governing the use and dissemination of confidential information that call on employees to use reasonable measures to protect NVR's information and otherwise denies the allegations in Paragraph 31.

32.     Plaintiff states that the policy referenced in Paragraph 32 is a document that speaks for itself and otherwise denies the allegations in Paragraph 32.

33.     Plaintiff denies the allegations in Paragraph 33.

34.     Plaintiff denies the allegations in Paragraph 34.

35.     Plaintiff admits that (1) NVR utilizes software called Proofpoint, and (2) David Whitaker, NVR Chief Information Officer, testified that Proofpoint's intended purposes include the protection of NVR from outside spammers and malicious email senders.  NVR denies the remaining allegations in Paragraph 35.

36.     Plaintiff states that NVR's Memorandum of Law in Support of its Motion for Preliminary Injunction and supporting Declaration of David Whitaker are documents that speak for themselves.  Plaintiff further states that Mr. Whitaker's deposition testimony as transcribed is also a document that speaks for itself.  Responding further, Plaintiff denies the remaining allegations in Paragraph

36, and specifically notes that the Proofpoint application did, in fact, flag e-mails that Davern sent out of NVR's systems for further review (as Davern alleges in Paragraph 46) and that the software also has the capacity to trap outgoing e-mails.

37.   Plaintiff denies the allegations in Paragraph 37.

38.   Plaintiff admits that it maintains hard copy documents pertaining to certain NVR land deals in unlocked file cabinets in its Division offices, and does not have a way to detect the removal of such information from its file cabinets. Plaintiff denies the remaining allegations in Paragraph 38.

39.   Plaintiff admits that it maintains an internal telephone directory, which it periodically updates and distributes to certain of its employees.  NVR otherwise denies the allegations in Paragraph 39.

40.   Plaintiff denies the allegations in Paragraph 40.

## II.   Davern's Resignation from NVR

41.   Plaintiff admits the allegations in the first sentence of Paragraph 41, and that The RIO Group ("RIO") solicited NVR employees Steve Sembach and Sander Mens ("Mens") to pursue job opportunities with D.R. Horton ("Horton"). Plaintiff is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 41 concerning RIO's solicitation of other NVR employees "[o]ver the years," and on that basis, denies same.

42.     Upon information and belief, Plaintiff admits the allegations in Paragraph 42.

43.     Plaintiff admits the allegations in the first two sentences of Paragraph 43, except to deny that Mens was Davern's "co-worker."  Davern was Mens' supervisor, and Mens was his subordinate at the time that Davern facilitated Horton's solicitation of Mens.  Plaintiff denies the allegations in the third sentence of Paragraph 43.

44.     Plaintiff denies the allegations in Paragraph 44.  Responding further, NVR states that Davern's conduct in facilitating Horton's solicitation of his subordinate was inconsistent with NVR's expectations that its managers refrain from unethical conduct, as expressed in the COE and SBC.

45.     NVR admits that it is not uncommon for employees in the home building industry move from one employer to another.   Plaintiff denies the remaining allegations in Paragraph 45.

46.     Plaintiff admits the allegations in Paragraph 46.

47.     Plaintiff admits that in June 2015, Michael Kotowski ("Kotowski") knew that Davern's sending of more than 270 email messages from his NVR email account to his personal email account violated Company policy.  Plaintiff denies the remaining allegations in Paragraph 47.

48.    Plaintiff admits that Davern submitted his resignation to NVR on June 15, 2015, and that Dylan Sinclair ("Sinclair") thereafter suggested to Davern that he go home and consider his decision.  Plaintiff denies the remaining allegations in Paragraph 48.

49.    Plaintiff admits the allegations in the first sentence of Paragraph 49 and that Davern had taken steps to delete all of his e-mails prior to information NVR of his resignation.  Plaintiff denies the remaining allegations in Paragraph 49. Responding further, NVR states that Davern's conduct in deleting his e-mails from his Company-issued laptop computer and from NVR's e-mail server was designed to obscure information from NVR and to prevent discovery of conduct in which he had engaged that was contrary to NVR's interests, and his actions in this regard were inconsistent with NVR's expectations of its managers to comport themselves in an ethical manner, as described in the SBC and COE.

50.    Plaintiff states that the e-mail message described in Paragraph 50 is a document that speaks for itself and otherwise denies the allegations in Paragraph 50.

51.    Plaintiff denies the allegations in Paragraph 51.  Responding further, NVR notes that Sinclair secured Davern's computer at the time of his resignation to maintain control over NVR information in Davern's possession.

52.     Plaintiff admits that NVR requires managers to complete a Resignation/Termination checklist, and states that the document referenced in Paragraph 52 is a document that speaks for itself.

53.     Plaintiff states that the document referenced in Paragraph 53 is a document that speaks for itself and otherwise denies the allegations in Paragraph 53.

54.     Plaintiff admits the allegations in Paragraph 54.

55.     Plaintiff admits the allegations in Paragraph 55.

56.     Plaintiff states that the e-mail referenced in Paragraph 56 is a document that speaks for itself and otherwise denies the allegations in Paragraph 56.

57.     Plaintiff states that Kotowski's deposition testimony, as transcribed is a document that speaks for itself. To the extent there are additional allegations in Paragraph 57, NVR denies them.

58.     Plaintiff states that Kotowski's deposition testimony, as transcribed, is a document that speaks for itself.   To the extent there are additional allegations in Paragraph 58, NVR denies them.

36059906v.3

## III.   Davern's efforts not to use, disclose and to return NVR Information

59.   Plaintiff is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59, and on that basis, denies same.

60.   Plaintiff states that the e-mail referenced in Paragraph 60 is a document that speaks for itself and otherwise denies the allegations in Paragraph 60.

61.   Plaintiff states that the correspondence referenced in Paragraph 61 is a document that speaks for itself and otherwise denies the allegations in Paragraph 61.

62.   Plaintiff admits that Davern contacted James Yu upon receipt of the correspondence referenced in Paragraph 62 and stated a general intent to cooperate with the demands stated in that correspondence.   Plaintiff otherwise denies the allegations in Paragraph 62.

63.   Plaintiff is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63, and on that basis, denies same.

64.   Plaintiff admits that Davern's counsel represented that Davern had surrendered to his counsel electronic and hard copy information taken from NVR. Plaintiff otherwise denies the allegations in Paragraph 64.

65.    Plaintiff admits that NVR filed the instant lawsuit on July 2, 2015. Plaintiff denies the remaining allegations in Paragraph 65.

## IV.   NVR's Public Disclosures about Confidential Information and the Activities of its Vice President of Internal Audit and Corporate Governance Related to Davern.

66.    Plaintiff admits the allegations in Paragraph 66.  Answering further, Plaintiff admits that Kotowski also administratively reports to NVR's Chief Financial Officer.

67.    Plaintiff admits that Kotowski reviews NVR's Form 10-K prior to filing, but denies the remaining allegations in Paragraph 67.

68.    Plaintiff state that NVR's Annual Report on Form 10-K for 2014 ("10-K") is a document that speaks for itself and otherwise denies the allegations in Paragraph 68.

69.    Plaintiff admits the allegations in Paragraph 69.

70.    Plaintiff states that the COE and SBC are documents that speak for themselves and otherwise denies the allegations in Paragraph 70.

71.    Plaintiff denies the allegations in Paragraph 71.

72.    Plaintiff admits the allegations in Paragraph 72.

73.    Plaintiff admits that after Kotowski learned that Davern had forwarded certain emails to his personal email account before resigning on June 15, 2015, Kotowski investigated Davern's sending of such emails.  Plaintiff further

admits that Kotowski also undertook to investigate whether Davern was involved in the May 29, 2015 deletion of certain files from NVR's network server.  To the extent there are additional allegations in Paragraph 73, they are unintelligible and, on that basis, Plaintiff denies same.

74.    Plaintiff admits that in conjunction with Kotowski's investigation of the emails that Davern sent to his personal email account and the disappearance of certain files from NVR's network server, Kotowski learned that a number of employees in the New Jersey South Division had access to the files that had disappeared, and that Kotowski expressed surprised at that information.  To the extent there are additional allegations in Paragraph 74, they are unintelligible and, on that basis, Plaintiff denies same.

75.    Plaintiff admits that Kotowski was told that there was no way to determine who accessed the files that had been deleted from the NVR network server on or about May 29, 2015.  To the extent there are additional allegations in Paragraph 75, Plaintiff denies them.

76.    Plaintiff denies the allegations in Paragraph 76.

77.    Plaintiff denies the allegations in Paragraph 77.

78.    Plaintiff denies the allegations in Paragraph 78.

79.    Plaintiff admits that Kotowski reviewed the original Complaint filed in this action.  Plaintiff denies the remaining allegations in Paragraph 79.

80.    Plaintiff admits that as of December 15, 2015, neither Kotowski, the Chief Ethics Officer, nor any other member of management had informed the NVR Audit Committee about Davern's unprecedented violations of NVR's COE, SBC and other policies.  Answering further, Plaintiff states that NVR does not employ an individual with the title of "Chief Legal Officer."   To the extent there are additional allegations in Paragraph 80, Plaintiff denies them.

## V.    Forensic Analysis of Davern's Email Accounts and Storage Devices

81.    Plaintiff admits that on or about July 2, 2015, Davern's Counsel delivered to NVR's Counsel, among other things, a 64 FB SanDisk portable USB storage device ("64 GB USB Drive"), and a 128 GB USB PNY portable USB storage device ("128 GB USB Drive").   To the extent there are additional allegations in Paragraph 81, Plaintiff denies them.

82.    Plaintiff admits the allegations in Paragraph 82.  Responding further, Plaintiff notes that despite Davern's representation that he had surrendered access to all of his personal e-mail accounts, discovery subsequently revealed that he had failed to disclose another e-mail account hosted by Yahoo!, which Davern failed to disclose.

## VI.    The Alleged Trade Secret Information

83.    Plaintiff denies the allegations in Paragraph 83.

84.    Plaintiff admits the allegations in Paragraph 84.

85.     Plaintiff denies the allegations in Paragraph 85.  Responding further, NVR notes that Davern admitted at deposition that he compiled the document referenced in Paragraph 85 from information that he learned in the course of his work for NVR.

86.     Plaintiff denies the allegations in Paragraph 86.  Responding further, NVR states that NVR's General Counsel contacted the Chief Legal Officer ("CLO") for Horton on or about August 19, 2015, to discuss any NVR information that was in the possession of Horton.  Horton's CLO asserted that Horton had no such information and subsequently refused to discuss the matter further.  Horton's outside counsel subsequently made representations to NVR's counsel that Horton did not intend to conduct any search for or remediation of any information in its systems that may belong to NVR.

87.     Plaintiff admits that it utilizes Lot Purchase Agreements in connection with its purchase of land.  Plaintiff denies the remaining allegations in Paragraph 87.

88.     Plaintiff admits that (1) NVR contends that the terms of its Lot Purchase Agreements ("LPA") constitute legally protectable information; and (2) NVR's General Counsel testified that one exemplar of an LPA was filed on the public docket in a case pending before the U.S. District Court for the Eastern

District of Pennsylvania, on July 13, 2006.   Plaintiff denies the remaining allegations in Paragraph 88.

89.   Plaintiff admits that NVR's General Counsel participated in drafting the standard form of NVR's LPA in 1992, and that he has helped modify the form over the years.   Plaintiff further admits that NVR's General Counsel testified at deposition that in many of the LPAs, there is a confidentiality clause, but that he does not see every LPA.   Plaintiff denies the remaining allegations in Paragraph 89.

90.   Plaintiff admits that NVR contends that its internal phone directory contains legally protectable information.   Plaintiff denies the remaining allegations in Paragraph 90.

91.   Plaintiff admits that the forensic examination performed on Davern's digital devices and email accounts did not reveal that Davern accessed any of the NVR information in his possession after he ceased to be employed by NVR because (1) Davern's Counsel spoliated the access information on, among other devices, the 64 GB USB Drive and the 128 GB USB Drive; and (2) there is no way to determine whether Davern accessed any of the emails in his email accounts on any particular date.   Responding further, Plaintiff notes that Davern's counsel spoliated metadata on flash drives provided in the course of discovery in this matter and e-mails once contained in Davern's personal e-mail accounts

disappeared from those accounts during discovery in this matter, making it impossible to confirm the extent to which Davern disseminated NVR's legally protected information.

92.    Plaintiff denies the allegations in Paragraph 92.

## VII.   NVR has suffered no damages and there is no likelihood of irreparable harm

93.    Plaintiff states that its testimony during the Rule 30(b)(6) deposition of NVR, as transcribed, is a document that speaks for itself and otherwise denies the allegations in Paragraph 93.

94.    Plaintiff denies the allegations in Paragraph 94.

95.    Plaintiff states that the Rule 30(b)(6) deposition of NVR, as transcribed, is a document that speaks for itself.  Answering further, Plaintiff states that the forensic analysis was unable to determine whether or not Davern accessed any NVR information residing on digital devices or in his email accounts because Davern's Counsel spoliated access information on certain devices and there is no way to determine whether Davern accessed any of the emails in his email accounts on any particular date.  Plaintiff otherwise denies the allegations in Paragraph 95.

96.    Plaintiff denies the allegations in Paragraph 96.

97.    Plaintiff admits that Davern has provided an assurance that he will not solicit any NVR employees to become employees of Horton.  Plaintiff denies the remaining allegations in Paragraph 97.  Answering further, Plaintiff states that

Horton has solicited NVR employees leveraging Davern's prior relationships with NVR employees, and has in fact pursued some of the land opportunities identified in Davern's June 1, 2015 email to Doug Brown.

## VIII.  The Alleged Trade Secret Information and NVR's Misrepresentations of it to Prejudice Davern

98.    Plaintiff states that the original Complaint in this action and the Amended Complaint are documents that speak for themselves and otherwise denies the allegations in Paragraph 98.

99.    The allegations of Paragraph 99 are too vague to be susceptible to admission or denial, and on that basis, Plaintiff denies same.

100.   Plaintiff admits that sent a letter to Davern's Counsel in response to a discovery dispute stating that 28,541 documents that Davern contained trade secret, confidential or proprietary information.   Plaintiff denies the remaining allegations in Paragraph 100.

101.   Plaintiff denies the allegations in Paragraph 101.

102.   Plaintiff denies the allegations in Paragraph 102.

103.   Plaintiff admits that the document assigned identifier NVR00003069 in the electronic database of documents hosted by NVR's electronic discovery vendor ("ESI Database"), contains a draft advertisement for properties in the New Jersey Central Division, which was sent to Davern in his capacity as a Sales Manager for approval.   Plaintiff states that the document speaks for itself.

20

Responding further, NVR admits that NVR sent Davern's Counsel a letter in response to a discovery dispute stating that the document contained trade secret, proprietary and confidential information, as the way in which the document was stored indicated that it had not been circulated for public review.

104.   Plaintiff admits that the document assigned identifier NVR00003069 in the ESI Database was described by NVR in a letter to Davern's Counsel as containing trade secret information, as described in its response to Paragraph 103.

105.   Plaintiff denies the allegations in Paragraph 105.

106.   Plaintiff admits that the file assigned identifier NVR00004569 in the ESI Database displays a NVR logo, which was attached to an internal email from an NVR Sales Manager to Davern and other NVR employees, which enclosed forms pertaining to a new procedure that the Company had implemented.  Plaintiff further admits that NVR sent Davern's Counsel a letter in response to a discovery dispute stating that the document contained trade secret, proprietary and confidential information, as the way in which the document was stored indicated that it was intended for limited distribution or circulation.

107.   Plaintiff admits that the document assigned identifier NVR00004569 in the ESI Database was described by NVR in a letter to Davern's Counsel as containing trade secret, proprietary and confidential information, as described in its response to Paragraph 106.

## COUNT I
## TORTIOUS INTERFERENCE WITH EXISTING AND PROSPECTIVE RELATIONSHIPS

108.   Paragraph 108 consists of a statement incorporating preceding paragraphs, to which no response is required.   To the extent that a response is deemed required, Plaintiff denies the allegations in Paragraph 108 and incorporates its responses to the preceding paragraphs.

109.   Paragraph 109 consists of legal conclusions, to which no response is required.   To the extent that a response is deemed required, Plaintiff denies the allegations in Paragraph 109.

110.   Plaintiff admits that NVR's Counsel stated at the Preliminary Injunction hearing that Davern was a very successful ten-plus-year employee of the Company.   The remainder of Paragraph 110 is too vague to be susceptible to admission or denial, and on that basis, Plaintiff denies those allegations.

111.   Plaintiff admits that after NVR filed the present litigation, NVR's General Counsel contacted the CLO for Horton to inform the CLO about the lawsuit as a courtesy.   Plaintiff denies the remaining allegations in Paragraph 111.

112.   Plaintiff admits that NVR's General Counsel testified at deposition that he told Horton's CLO, among other things, that NVR was "stunned, surprised to learn that one of [NVR's] employee had joined Horton and had taken this vast

22

number of documents, and it was unusual in [NVR's] experience."  Plaintiff denies the remaining allegations in Paragraph 112.

113.   Plaintiff admits that NVR's General Counsel did not tell Horton's CLO that over 70% of the documents that Davern stole from NVR were Davern's "personal documents," as such a statement would have been inaccurate.

114.   Plaintiff admits that NVR's General Counsel did not tell Horton's CLO that the information that Davern stole from NVR included "many public materials, such as NVR's advertisements and logos, which are widely circulated to the public," as such a statement would have been, at the least, misleading.

115.   Plaintiff admits the allegations in Paragraph 115.  Answering further, Plaintiff states that Horton's CLO represented that Horton did not have any of NVR's information, and that NVR's General Counsel therefore did not feel it was necessary to request that Horton return or not use any confidential or trade secret information in Davern's possession.

116.   Plaintiff is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 116, which pertain to Davern's personal beliefs, and on that basis, denies same.

117.   Plaintiff admits that during the deposition of Davern, Davern's Counsel designated the entirety of the deposition transcript as Confidential

pursuant to the governing Confidentiality Order.  Plaintiff denies the remaining allegations in Paragraph 117.

118.   Plaintiff is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 118, which pertain to Davern's personal beliefs, and on that basis, denies same.

119.   Plaintiff admits that on December 9, 2015, NVR's Counsel wrote a letter to Horton's President, CEO, COO and CLO, and that a copy of the letter is attached to Davern's Counterclaims as Exhibit 9.  Plaintiff denies the remaining allegations in Paragraph 119.

120.   Plaintiff denies the allegations in Paragraph 120.

121.   Plaintiff denies the allegations in the first sentence of Paragraph 121. Plaintiff is without knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 121, which pertain to Davern's personal beliefs, and on that basis, denies same.

122.   Plaintiff is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 122, which pertain to Davern's personal beliefs and Davern's performance of duties for Horton, and on that basis, denies same.

123.   Paragraph 123 contains legal conclusions, to which no response is required.  To the extent that a response is deemed required, Plaintiff denies such legal conclusions and the remaining factual allegations in Paragraph 123.

124.   Paragraph 124 consists of legal conclusions, to which no response is required.  To the extent that a response is deemed required, Plaintiff denies the allegations in Paragraph 124.

125.   Paragraph 125 consists of legal conclusions, to which no response is required.  To the extent that a response is deemed required, Plaintiff denies the allegations in Paragraph 125.

126.   Paragraph 126 consists of legal conclusions, to which no response is required.  To the extent that a response is deemed required, Plaintiff denies the allegations in Paragraph 126.

## COUNT II
## ABUSE OF PROCESS

127.   Paragraph 127 consists of a statement incorporating preceding paragraphs, to which no response is required.  To the extent that a response is deemed required, Plaintiff denies the allegations in Paragraph 127 and incorporates its responses to the preceding paragraphs.

128.   Plaintiff admits that at the time NVR filed the instant lawsuit, Davern had represented that he would return all NVR information in his possession.  NVR is without knowledge or information sufficient to form a belief as to the truth of the

allegation pertaining to Davern "turning over" digital devices to his Counsel, and on that basis, denies same.   To the extent there are additional allegations in Paragraph 128, NVR denies them.

129.   Plaintiff denies the allegations in Paragraph 129.

130.   Plaintiff denies the allegations in Paragraph 130.

131.   Plaintiff denies the allegations in Paragraph 131.

132.   Plaintiff denies the allegations in Paragraph 132.

133.   Plaintiff denies the allegations in Paragraph 133.

134.   Plaintiff admits that NVR's Counsel sent a letter to Davern's Counsel on December 3, 2016, that the letter included the quoted language in Paragraph 134, and that a copy of the letter is attached as Exhibit 10 to Davern's Counterclaims.   To the extent there are additional allegations in Paragraph 134, Plaintiff denies them.

135.   Plaintiff admits the allegations in Paragraph 135.

136.   Plaintiff admits that (1) Davern prepared and submitted to NVR "designations" of portions of the transcripts of the depositions of NVR, Dylan Sinclair, Michael Kotowski and Timothy Richardson at 7:49 p.m. on the night before the Preliminary Injunction hearing; and (2) Davern prepared and submitted to NVR's Counsel a revised version of NVR's proposed joint stipulation of facts, which added 60 new facts to NVR's draft, at 6:16 p.m. on the night before the

Preliminary Injunction hearing. Plaintiff is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 136, which consist of statements regarding Davern's intent in preparing the above items, and on that basis, denies same.

137. Plaintiff admits that NVR informed Davern's Counsel that NVR could not agree to most of the 60 new facts that Davern's Counsel proposed at 6:16 p.m. the night before the Preliminary Injunction hearing because, among other reasons, NVR did not have sufficient time to vet and respond to a large number of statements of fact at that late hour. Plaintiff further admits that NVR informed Davern's Counsel that after Davern's Counsel presented NVR with proposed designations of deposition testimony in lieu of live testimony separate from a joint stipulation – at 7:49 p.m. the night before the hearing – NVR's Counsel explained why NVR could not agree to their proposal and would object to such designations at the hearing. Plaintiff further admits that NVR's Counsel reiterated NVR's position as to why it could not agree to the proposal at the Preliminary Injunction hearing. Plaintiff denies the remaining allegations in Paragraph 137.

138. Plaintiff denies the allegations in Paragraph 138.

139. Plaintiff admits that NVR's Counsel stated at the Preliminary Injunction hearing that Davern "stole 90,000 documents from NVR," and that NVR's Counsel did not state that "over 70% of these documents were Davern's

36059906v.3

personal documents," as such a statement would have been inaccurate.  Plaintiff denies the remaining allegations in Paragraph 139.

140.   Plaintiff admits that NVR's Counsel did not state at the Preliminary Injunction hearing that the information that Davern stole from NVR included "many public materials, such as NVR's advertisements and logos, which are widely circulated to the public," as such a statement would have been inaccurate and misleading.  Responding further, there would have been no cause for NVR to describe Davern's theft of any non-sensitive information in the context of the Preliminary Injunction hearing, and to the extent that Davern or his counsel thought such allegations to be material, it was incumbent upon Davern's counsel, not NVR's counsel, to make them.

141.   Plaintiff admits the allegations in Paragraph 141.

142.   Plaintiff admits that the Court entered NVR's proposed Preliminary Injunction Order without revision.  Plaintiff denies the remaining allegations in Paragraph 142.

143.   Plaintiff admits that after the Court entered the Preliminary Injunction Order, NVR prepared and filed an Amended Complaint, which alleges at Paragraph 88, that NVR "retained a third-party investigator to inspect and image Davern's wife's computer and all other electronic devices to which he has access in order to assess the full extent of Davern's misappropriation and to protect NVR

from further harm to its business." Plaintiff denies the remaining allegations in Paragraph 143.

144.   Plaintiff denies the allegations in Paragraph 144.

145.   Plaintiff denies the allegations in Paragraph 145.

146.   Plaintiff denies the allegations in Paragraph 146.

147.   Plaintiff denies the allegations in Paragraph 147.

## COUNT III
## DEFAMATION

148.   Paragraph 148 consists of a statement incorporating preceding paragraphs, to which no response is required. To the extent that a response is deemed required, Plaintiff denies the allegations in Paragraph 148 and incorporates its responses to the preceding paragraphs.

149.   Plaintiff denies the allegations in Paragraph 149.

150.   Plaintiff denies the allegations in Paragraph 150.

151.   Plaintiff denies the allegations in Paragraph 151.

152.   Plaintiff denies the allegations in Paragraph 152.

153.   Plaintiff denies the allegations in Paragraph 153.

154.   Plaintiff denies the allegations in Paragraph 154.

155.   Plaintiff denies the allegations in Paragraph 155.

156.   Plaintiff denies the allegations in Paragraph 156.

157.   Paragraph 157 consists of legal conclusions, to which no response is required.   To the extent that a response is deemed required, Plaintiff denies the allegations in Paragraph 157.   Responding further, NVR states that its allegations regarding Davern's conduct were true, and irrespective of whether Davern's conduct is deemed criminal in nature, such statements cannot form the basis of a defamation claim.

158.   Plaintiff denies the allegations in Paragraph 158.

159.   Paragraph 159 consists of legal conclusions, to which no response is required.   To the extent that a response is deemed required, Plaintiff denies the allegations in Paragraph 159.

160.   Plaintiff denies the allegations in Paragraph 160.

## ADDITIONAL DEFENSES

By listing the following as defenses, Plaintiff does not concede that each of the matters covered by the numbered defenses is to be proven by Plaintiff, and Plaintiff reserves its position that Defendant retains the burden of proof on all matters necessary to state his Counterclaims and to establish his alleged damages.

### FIRST ADDITIONAL DEFENSE

Davern's Counterclaims fail to state a claim upon which relief may be granted.

### SECOND ADDITIONAL DEFENSE

Davern's Counterclaims fail because all of the conduct upon which they are based is absolutely immunized by the litigation privilege.

### THIRD ADDITIONAL DEFENSE

Davern's Counterclaims fail because the alleged defamatory statements were truthful statements made in good faith, and NVR did not fail to use reasonable care to determine the statements' truth or falsity.

### FOURTH ADDITIONAL DEFENSE

Davern's Counterclaims fail because no act of NVR was the actual or proximate cause of any damage or loss to Davern.

### FIFTH ADDITIONAL DEFENSE

Davern's Counterclaims fail to the extent that they are barred by the doctrines of laches, estoppel, or unclean hands, or based upon the after-acquired-evidence doctrine.

### SIXTH ADDITIONAL DEFENSE

Without conceding that Davern has suffered any damages as a result of any purportedly wrongful act of NVR, Davern's claims for damages are barred to the extent that he has failed to mitigate his damages.

36059906v.3

## SEVENTH ADDITIONAL DEFENSE

Davern is barred from relief to the extent that he caused or contributed to the damages on which his Counterclaims are based.

## EIGHTH ADDITIONAL DEFENSE

Davern is not entitled to any penalty or multiplication of damages because Plaintiff did not willfully, knowingly, wantonly, intentionally or recklessly fail to comply with any provisions of the law, and Plaintiff's conduct in this matter was not outrageous, attributable to any evil motive, or due to reckless indifference to his rights.

## NINTH ADDITIONAL DEFENSE

Without conceding that Davern has suffered any damages as a result of any allegedly defamatory conduct by NVR, Davern is not entitled to compensatory damages in connection with his defamation claim because Davern's own admitted conduct caused his general reputation for honesty and fair dealing to be sufficiently low and tarnished in the public's estimation that any additional statements that NVR made about his conduct could not have inflicted upon him further reputational damage or other harm.

## RESERVATION OF RIGHTS

Plaintiff's investigation is ongoing and discovery in this action is not complete.   Plaintiff reserves its right to raise additional defenses as may be

36059906v.3

discovered during the course of these proceedings.

WHEREFORE, Plaintiff prays that the Court deny Defendant's prayer for relief, dismiss Defendant' Counterclaims, enter judgment in favor of Plaintiff, and provide Plaintiff with such other remedies as are appropriate under the circumstances.

Dated:        December 14, 2016
              New York, New York

                           SEYFARTH SHAW LLP

                           By: */s/ James Yu*                    ___
                               James S. Yu
                           620 Eighth Avenue
                           New York, New York 10018
                           Phone: (212) 218-5500
                           Fax: (212) 218-5526
                           jyu@seyfarth.com

                           Barry J. Miller (Admitted *Pro Hac Vice*)
                           Lauren S. Wachsman (Admitted *Pro Hac Vice*)
                           SEYFARTH SHAW LLP
                           2 Seaport Lane, #300
                           Boston, MA 02210
                           Phone:  (617) 946-4800
                           Fax: (617) 946-4801

                           *Attorneys for Plaintiff NVR, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 14, 2016, I served the foregoing Plaintiff's

Answer and Affirmative Defenses to Defendant's Counterclaims, via electronic

mail to the following counsel of record:

Edward T. Kang
eking@lawkhf.com
Daniel D. Haggerty
dhaggerty@lawkhf.com
David P. Dean
ddean@lawkhf.com
Gregory H. Mathews
gmathews@lawkhf.com
KANG HAGGERTY & FETBROYT LLC
123 S. Broad Street
Suite 1670
Philadelphia, PA 19109


*/s/ James Yu*
James Yu

36059906v.3