IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____ :
                                                            :
NVR, INC.,                                          :   CIVIL ACTION
                                                            :
                            Plaintiff,            :   No. 1:15-cv-05059-NLH-KMW
                                                            :
          vs.                                            :
                                                            :
JONATHAN DAVERN,                        :
                                                            :
                            Defendant.         :
_____ :

_____

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT**
_____


Edward T. Kang
Gregory H. Mathews
David P. Dean
123 S. Broad Street, Suite 1670
Philadelphia, PA 19109
ekang@LawKHF.com
gmathews@LawKHF.com
ddean@LawKHF.com
(215) 525-5850
(215) 525-5860 (fax)
*Attorneys for Defendant*

Dated:  December 19, 2016

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION..............................................................................................1

II.   FACTUAL BACKGROUND ............................................................................1

III.  LEGAL STANDARD. ......................................................................................1

IV.   ARGUMENT. ...................................................................................................3

   A.   Davern is entitled to summary judgement on the misappropriation of trade
secrets claim..................................................................................................4

      1.  NVR has suffered no "actual loss" as required by the NJTSA.............5

      2.  Davern was not unjustly enriched by NVR's confidential
information. ...........................................................................................8

   B.   Davern is entitled to summary judgement on NVR's claims for violation
of the Computer Fraud & Abuse Act or the New Jersey Computer Related
Offenses Act ...............................................................................................10

      1.  Plaintiff admits that Davern did not access NVR's computer
systems "without authorization" not "exceeded" his authority to
access such systems.............................................................................12

      2.  NVR has not satisfied the damage element for CFAA and CROA
liability................................................................................................15

   C.   Davern is entitled to summary judgment on NVR's two breach of contract
claims. .........................................................................................................19

      1.  The NVR policies do not constitute a contract between Davern and
NVR.....................................................................................................20

      2.  There is no evidence Davern has used or disclosed NVR's
Confidential Information.....................................................................22

3.  NVR was not damaged by Davern's alleged violation of the Code of Ethics and Standards of Business Conduct......................................24

D.  Davern is entitled to summary judgment on NVR's claim for breach of fiduciary duty because NVR has failed to satisfy the element of "harm" necessary to recover money damages............................................................25

E.  Davern is entitled to summary judgment on NVR's unfair competition claim............................................................................................................27

F.  Davern is entitled to summary judgment on NVR's equitable claims..........28

1.  Davern is entitled to summary judgment on the unjust enrichment claim ............................................................................................29

2.  Davern is entitled to summary judgment on NVR's claim for disgorgement of compensation............................................................31

3.  NVR is not entitled to a permanent injunction....................................36

V.  CONCLUSION .........................................................................................38

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*3PD, Inc. v. U.S. Transport Corp.,* 2015 WL 4249408, (D. Md. July 9, 2015)
appeal dismissed (Aug. 27, 2015)..........................................................................6, 7

*Advanced Fluid Systems, Inc. v. Huber,* 28 F. Supp. 3d 306
(M.D. Pa. 2014)..................................................................................................15, 16

*Advantage Ambulance Grp., Inc. v. Lugo,* 2009 WL 839085,
(E.D. Pa. Mar. 30, 2009)...........................................................................................16

*Am. Civil Liberties Union of New Jersey v. Black Horse Pike Reg'l Bd. of Educ.,*
84 F.3d 1471 (3d Cir. 1996)......................................................................................36

*Am. Mach. Movers Inc. v. Mach. Movers of New Orleans, LLC,*
136 F.Supp.2d 599 (E.D. La. 2001)...........................................................................7

*Amoco Production Co. v. Gambell,* 480 U.S. 531 (1987) .......................................37

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)..............................................2

*Assocs. Commercial Corp. v. Wallia,* 511 A.2d 709
(N.J. Super. App. Div.1986). ....................................................................................29

*Brooks v. AM Resorts*, LLC, 954 F. Supp. 2d 331 (E.D.Pa. 2013). .......................16

*Callano v. Oakwood Park Homes Corp.,* 219 A.2d 332 (N.J. Super. App. Div.
1966). ........................................................................................................................29

*Cameco, Inc. v. Gedicke,* 157 N.J. 504, 724 A.2d 783 (1999). ..................25, 32, 33

*Cancer Genetics, Inc. v. Hartmayer*, 2008 WL 323738
(D.N.J. Feb. 5,2008).............................................................................................20, 21

*Carbo Ceramics, Inc. v. Keefe,* 166 Fed.Appx. 714 (5th Cir.2006).........................6

*Carnegie Strategic Design Eng'rs, LLC v Cloherty,* 2014 WL 896636,
(W.D. Pa. Mar. 6, 2014).............................................................................................14

*Celotex Corp. v. Catrett,* 477 U.S. 317, (1986) .......................................................2, 3

*Cf. Gil v. Related Mgmt. Co.,* No. 06-2174, 2006 WL 2358574
(D.N.J. Aug. 14, 2006).................................................................................................21

*CIBA–GEIGY Corp. v. Bolar Pharmaceutical Co., Inc.,* 747 F.2d 844
(3d Cir.1984).................................................................................................................36

*Cotter v. Newark Housing Auth.,* 422 F. App'x 95 (3d Cir.2011). ...........................19

*County of Essex v. First Union Nat. Bank*, 862 A.2d 1168
(N.J. Super. App. Div. 2004) .......................................................................................29

*Dresser-Rand v. Jones*, 957 F. Supp. 2d 210 (E.D.Pa. 2013). ...................11, 13, 14

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). ......................................37

*Electro–Miniatures Corp. v. Wendon Co.,* 771 F.2d 23 (2d Cir.1985). ....................8

*Fairway Dodge, L.L.C. v. Decker Dodge, Inc.,* 191 N.J. 460 (N.J.2007). ..............12

*Firetrace USA, LLC v. Jesclard,* 800 F.Supp.2d 1042 (D.Ariz.2010) .......................7

*FMC Corp. v. Taiwan Tainan Giant Indus. Co.,* 730 F.2d 61(2d Cir.1984)...........38

*Halsey v. Pfeiffer,* 750 F.3d 273 (3d Cir.2014).........................................................2

*Garcia v. Kankakee County Hous. Auth.,* 279 F.3d 532 (7th Cir.2002).................21

*Harp v. Rahme,* 984 F.Supp.2d 398 (E.D.Pa. 2013)...................................................2

*In re Nickelodeon Consumer Privacy Litig.,* 827 F.3d 262, (3d Cir. 2016) ............12

*Kaye v. Rosenfielde*, 121 A. 3d. 862 (N.J. 2015)................................................ 31-35

*Kirleis v. Dickie, McCamey & Chilcote, P.C.,* 560 F.3d 156 (3d Cir.2009) .............2

*LinkCo, Inc. v. Fujitsu Ltd.,* 232 F.Supp.2d 182 (S.D.N.Y.2002)..............................8

*Marcus v. Rogers,* 2012 WL 2428046 (N.J.App. Div. June 28, 2012). .................16

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, (1986)........3

*Mertens v. Hewitt Assocs.,* 508 U.S. 248 (1993). ....................................29

*Mu Sigma, Inc. v. Affine, Inc.*, No. 12–cv–1323 (FLW), 2013 WL 3772724,
(D.N.J. July 17, 2013). ..........................................................12

*Murphy v. Implicito,* 920 A.2d 678 (N.J. Super. Ct. App. Div. 2007). ............19, 24

*Neo Gen Screening, Inc. v. TeleChem Int'l, Inc.,* 69 F. App'x 550
(3d Cir. 2003) ..................................................................37

*New Jersey Optometric Ass'n v. Hillman-Kohan Eyeglasses, Inc*., 365 A.2d 956
(N.J. Super. Ch. 1976)...........................................................27

*News Am. Mktg. In-Store, Inc. v. Marquis,* 862 A.2d 837 (Conn. 2004) ......6, 26, 27

*P. C. Yonkers, Inc. v. Celebrations: The Party and Seasonal Superstore, LLC*,
428 F. 3d 504 (3d Cir. 2005).....................................................11

*Roth v. Norfalco LLC,* 651 F.3d 367 (3d Cir. 2011).................................2

*Shamrock Foods Co. v. Gast.* 535 F, Supp. 2d 962 (D. Ariz. 2009) .......................11

*Storage Tech. Corp. v. Cisco Sys., Inc.,* WL 22231544 (D. Minn. September 25,
2003), aff'd, 395 F.3d 921 (8th Cir. 2005)..............................................7

*StrikeForce Techs., Inc. v. WhiteSky, Inc.,* 2013 WL 3508835, (D.N.J. 2013).........4

*Tank Connection, LLC v. Haight,* 2016 WL 492751 (D. Kan. Feb. 5, 2016). ..........8

*Trading Partners Collaboration v. Kantor*, 2009 WL 1653130
(D.N.J. June 9, 2009). .......................................................18, 19, 24

*Unilogic, Inc. v. Burroughs Corp.,* 10 Cal.App.4th 612 (Cal. Ct. App. 1992). ......10

*VRG Corp. v. 463 GKN Realty Corp.*, 641 A.2d 519 (N.J. 1994)..........................29

*Wanaque Borough Sewerage Auth. v. Twp. of W. Milford*,
677 A.2d 747 (N.J. 1996)......................................................................29

*Weinberger v. Romero—Barcelo,* 456 U.S. 305, (1982) .........................................37


## **STATUTES**

N.J.S.A. § 2A:38A-3.................................................................................3,11

N.J.S.A. § 2A:38A-3(a). ...........................................................................13

N.J.S.A. 2A:38A-3(c). ..............................................................................13

N.J.S.A. 2A:38A-3(e). ..............................................................................13

N.J.S.A. § 56:15-1 ....................................................................................4

N.J.S.A. § 56:15-2 ....................................................................................4

N.J.S.A. § 56:15–3 ....................................................................................4

N.J.S.A. § 56:15-4 ....................................................................................5, 8

18 U.S.C. § 1030.....................................................................................3,10

18 U.S.C. § 1030(a). ................................................................................11

18 U.S.C §1030(e)(8).................................................................................16

18 U.S.C. 1030(e)(11)...............................................................................16

18 U.S.C. 1030(g). ....................................................................................16

## **RULES**

FRCP 1 ...................................................................................................3

FRCP 56(a) .............................................................................................1

## **OTHER AUTHORITIES**

2 Restatement (Second), Agency, Liability for Loss Caused §401, comment (b) (1958). ...................................................................................25

19 Samuel Williston & Richard A. Lord, a Treatise on the Law of Contracts § 54:12 (4th ed. 1993). ..........................................................21

H.R. Rep. No. 98-984, at 20 (1984)......................................................11

Restatement (First) of Restitution (1937) § 136 ....................................8

Restatement (Second) of Agency § 469. ...............................................31

Restatement (Third) Agency § 8.01.......................................................31

*Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465 (1984)........................................3

Defendant Jonathan Davern ("Defendant" or "Davern"), by and through his undersigned counsel, submits this memorandum of law in support of his Motion for Summary Judgment against Plaintiff NVR, Inc.

## I.    INTRODUCTION

Davern resigned from his position as a Sales Manager with Plaintiff NVR, Inc. ("NVR" or "Plaintiff"), to become a Division President of D.R. Horton, Inc. ("Horton"). Four days after his departure from NVR, Davern received a letter from NVR's counsel demanding that he not use or disclose any information of NVR in his possession. Davern responded that day that he would comply and promptly turned over all his digital devices and email account information for inspection and remediation by NVR's forensic examiner. NVR recovered all the information in Davern's possession.  Even though NVR recovered all of its information and suffered no damages, it nonetheless filed suit against Davern, sought injunctive relief, and needlessly prolonged this litigation for over a year.

## II.    FACTUAL BACKGROUND

Davern incorporates by reference his Statement of Material Facts Not in Dispute ("SMF"), as though set forth fully at length herein.

## III.    LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FRCP 56(a).

"Material facts are those that could affect the outcome of the proceeding, and a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Roth v. Norfalco LLC*, 651 F.3d 367, 373 (3d Cir. 2011) (internal quotation marks omitted).  Although "courts are to view facts and inferences in the light most favorable to the nonmoving party, a nonmoving plaintiff cannot rely on unsupported assertions, speculation, or conclusory allegations to avoid the entry of summary judgment." *Harp v. Rahme*, 984 F.Supp.2d 398, 409 (E.D.Pa. 2013).  *Kirleis v. Dickie, McCamey & Chilcote, P.C.,* 560 F.3d 156, 161 (3d Cir. 2009) ("Conclusory, self-serving [statements] are insufficient to withstand a motion for summary judgment. Instead, the [party] must set forth specific facts that reveal a genuine issue of material fact.") (citations omitted).  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). An inference based upon "'speculation or conjecture,' "however, "'does not create a material factual dispute sufficient to defeat summary judgment.'" *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir.2014) (citations omitted). Rather, the non-moving party must support each essential element with concrete record evidence. See *Celotex Corp. v. Catrett*,

2

477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," the Court may grant summary judgment. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citing FRCP 1; Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 467 (1984)).

## IV.   ARGUMENT

Davern should be granted summary judgment on all counts because there are no genuine issues of material fact and Davern is entitled to summary judgment as a matter of law.  NVR's amended complaint (Doc. No. 82) (the "Complaint") alleges claims for (1) misappropriation of trade secrets under the New Jersey Trade Secrets Act; (2) violation of the Computer Fraud & Abuse Act, 18 U.S.C. § 1030 et seq.; (3) violation of the New Jersey Computer Related Offenses Act, N.J.S.A. 2A:38A-3; (4) breach of contract-violation of NVR Code of Ethics and Standards of Business Conduct; (5) breach of contract-specific performance-return of property and confidential information; (6) breach of fiduciary duty; (7) unfair competition, and

(8) unjust enrichment.  NVR cannot prove facts to satisfy the elements of any of these causes of action and Davern is entitled to summary judgment as a matter of law.

### A.    Davern is entitled to summary judgment on the misappropriation of trade secrets claim.

The Complaint alleges that Davern misappropriated NVR's trade secrets and confidential information in violation of the New Jersey Trade Secrets Act (the "NJTSA").  Compl. ¶ 101.  The Complaint asserts Davern "will be or is being unjustly enriched by the misappropriation" Compl. ¶ 102. Although the Complaint does not specifically allege that NVR has suffered any "actual loss," it alleges that "NVR will be threatened with loss . . . unless Davern is enjoined" and then it seeks actual, incidental, compensatory, punitive and consequential damages and attorneys' fees and costs, for the alleged violation of the NJTSA. Compl., ¶¶104-105.

The NJTSA, N.J.S.A. § 56:15-1, *et seq.*, prohibits the actual or threatened misappropriation of a "trade secret." N.J.S.A. § 56:15–3. A "trade secret," in turn, means "information" that (1) "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use," <u>and</u> (2) that the holder reasonably endeavors to maintain as confidential. N.J.S.A. § 56:15-2. *StrikeForce Techs., Inc. v. WhiteSky, Inc*., 2013 WL 3508835, at *8 (D.N.J. 2013) (trade secret is information that has "economic value as a result

4

of not being known to others who might derive economic value from its use and that is the subject of reasonable efforts to maintain its secrecy."). Under the NJTSA,

> A complainant is entitled to recover damages for misappropriation. Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by the misappropriation that is not taken into account in computing actual loss.

N.J.S.A. 56:15-4. Davern is entitled to summary judgment on NVR's misappropriation of trade secrets claim because (i) NVR has not suffered any compensable "actual loss" as required by the NJTSA and (ii) Davern has not been unjustly enriched.

## 1.   NVR has suffered no "actual loss" as required by the NJTSA.

Since the inception of this litigation, Davern has sought for NVR to demonstrate that it has been damaged in any way as a result of Davern taking NVR documents when he resigned or from the list of land opportunities in New Jersey that he gave to Horton before he resigned. During NVR's corporate designee deposition on November 18, 2016, NVR admitted that it had not lost any sales nor any land opportunities as a result of Davern's alleged misappropriation. SMF, ¶ 251. Since the NVR deposition, Davern's counsel has repeatedly asked NVR' counsel to identify NVR's damages. The only purported damages identified by NVR related to the alleged misappropriation of trade secrets are the attorneys' fees and costs incurred by NVR in connection with this litigation. SMF, ¶¶ 258; 261; 265.

Although attorneys' fees and costs may be recovered under certain circumstances pursuant to the NJTSA, they do not constitute compensable damages as "actual loss" from the misappropriation, and proof of "actual loss" is an element required in order to prove liability under the Act.  In *News Am. Mktg. In-Store, Inc. v. Marquis,* the Connecticut Appellate Court affirmed the trial court's grant of summary judgment in favor of a former employee accused, among other things, of violation of the Connecticut Uniform Trade Secrets Act, containing relevant provisions identical to the NJTSA.  The court found,

> Actual damage is a necessary element that must be proven by the plaintiff to prevail on its trade secrets claim. To allow the plaintiff to characterize the cost of its own investigation of suspected wrongdoing as actual damages would effectively eliminate the plaintiff's burden of proving actual harm resulting from Marquis' alleged violation of the trade secrets act. The court properly concluded that the plaintiff had failed to adduce evidence of actual loss as a result of Marquis' conduct.

*News Am. Mktg. In-Store, Inc. v. Marquis,* 862 A.2d 837, 846–47 (Conn. 2004), *aff'd*, 885 A.2d 758 (Conn. 2005).  This has been a consistent judicial position.  In *Carbo Ceramics, Inc. v. Keefe,* 166 Fed.Appx. 714, 725 (5th Cir. 2006), the Court of Appeals for the Fifth Circuit affirmed summary judgment because the plaintiff "failed to meet its burden of presenting sufficient evidence demonstrating a triable issue of material fact as to actual damages recoverable under its trade secret misappropriation claim." In *3PD, Inc. v. U.S. Transport Corp.,* 2015 WL 4249408, *3 (D. Md. July 9, 2015) *appeal dismissed* (Aug. 27, 2015), the District Court

granted defendant summary judgment where plaintiff had "not adequately demonstrated its damages . . . as measured by the 'actual loss caused by the misappropriation.'" In *Storage Tech. Corp. v. Cisco Sys., Inc.,* WL 22231544, *9 (D. Minn. September 25, 2003) ), *aff'd,* 395 F.3d 921 (8th Cir. 2005), the District Court granted summary judgment to defendant under the Minnesota Trade Secrets Act because "[e]ven if the record contained evidence of [plaintiff]'s trade secrets and their misappropriation, [defendant] would be entitled to summary judgment because [plaintiff] fails to submit a viable damages theory…[Plaintiff] does not identify any actual loss from the alleged misappropriation.  Nor does [plaintiff] advance any argument regarding a reasonable royalty." *See also Firetrace USA, LLC v. Jesclard,* 800 F.Supp.2d 1042, 1054 (D.Ariz. 2010) (granting summary judgment in a misappropriation and breach-of-contract case against a former employee because "[p]laintiffs ha[d] not met their burden to overcome summary judgment by showing evidence they were proximately damaged by [defendant's] use of confidential information"); *Am. Mach. Movers Inc. v. Mach. Movers of New Orleans, LLC,* 136 F.Supp.2d 599 (E.D. La. 2001) (granting summary judgment  under the  Louisiana Trade Secrets Act "because the plaintiff has failed to provide evidence of any damage resulting from the claimed trade secret infraction.");

Most recently, the United States District Court for the District of Kansas reached the same conclusion with respect to application of statutory provisions

7

identical to New Jersey's: "Permitting the plaintiff to claim the cost of its own investigation as compensable damages would effectively eliminate the statutory requirement of 'actual loss' for an actionable misappropriation." *Tank Connection, LLC v. Haight,* 2016 WL 492751, at *7 (D. Kan. Feb. 5, 2016). Because there is no evidence of actual loss, which is a necessary element to establishing liability, Plaintiff cannot prove a violation of the NJTSA.

### 2. Davern was not unjustly enriched by NVR's confidential information.

Under the NJTSA, a plaintiff can recover "unjust enrichment caused by the misappropriation that is not taken into account in computing actual loss". N.J.S.A. 56:15-4. "Unjust enrichment is measured by the profits the defendant obtained from using the trade secret." *LinkCo, Inc. v. Fujitsu Ltd.,* 232 F.Supp.2d 182, 185 (S.D.N.Y. 2002) (citing *Electro–Miniatures Corp. v. Wendon Co.,* 771 F.2d 23, 27 (2d Cir. 1985)); *see* Restatement (First) of Restitution (1937) § 136. The Complaint alleges in purely conclusory fashion that "Davern will be or is being unjustly enriched by the misappropriation and/or threatened misappropriation of NVR's trade secrets and confidential information." Compl., ¶ 102. The Eighth Cause of Action asserts a separate cause of action in equity for unjust enrichment, which is discussed below, but the discovery record is devoid of any evidence that Davern profited in any way as a result of the NVR information he possessed. Horton testified that, during Davern's interview with Horton executives on May 21, 2015, no one asked

8

Davern "for any information concerning NVR, anything confidential" and Davern did not provide Horton with any NVR documents or promise to provide NVR documents to Horton in the future. SMF, ¶¶ 70, 72.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████    While NVR contends this amounted to confidential information of NVR, Beazer had already publicly announced it was exiting the market.  SMF, ¶ 78.  In any case, Brown testified during his deposition that Horton already knew about the land opportunities presented by Beazer leaving the market and never discussed any Beazer land opportunities with Davern. SMF, ¶¶ 79-80.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████   ██████████████████. Doug Brown testified that he never even realized there was a separate tab to the Excel spreadsheet listing the so-called land opportunities, that he never looked at the list of land opportunities and never talked with Davern about the document. SMF, ¶ 88.

There is no evidence of record that any of these things resulted in any economic benefit to Davern.  Before any of these things occurred, in April, 2015, Horton had offered Davern a Vice President of Sales position in the Washington DC division, which he turned down. SMF, ¶ 63.  Horton's outgoing Region President

George Seagraves set up the May 21, 2015 meeting and was interested in pursuing Davern because of "his talents and his experience." SMF, ¶¶ 64-66.  The evidence is that Davern received the job offer based upon his merits as a candidate, not because of any alleged misappropriation of NVR information.  Nor is there any evidence that the terms of the offer were enhanced because of Davern's alleged misappropriation or disclosure of NVR information. SMF, ¶ 109.  As Doug Brown testified, "I had my deal on the table and we were going to run with that." SMF, ¶ 286.

Because there is no evidence that Davern was either unjustly enriched or that NVR suffered any "actual loss" due to Davern's conduct, NVR cannot establish the damage element for liability under the NJTSA.  Davern is entitled to summary judgment on the First Cause of Action. *See, Unilogic, Inc. v. Burroughs Corp.,* 10 Cal.App.4th 612 (Cal. Ct. App. 1992) (judgment of nonsuit affirmed under California Trade Secrets Act where trade secret owner admitted it suffered no loss and failed to introduce competent evidence of unjust enrichment or reasonable royalty).

**B.    Davern is entitled to summary judgment on NVR's claims for violation of the Computer Fraud & Abuse Act or the New Jersey Computer Related Offenses Act.**

The NVR's second cause of action is for alleged violation of the Computer Fraud & Abuse Act, ("CFAA") 18 U.S.C. 18 U.S.C. § 1030 *et seq*.  The third cause

of action is for alleged violation of New Jersey's Computer Related Offenses Act,

("CROA") N.J.S.A. 2A:38A-3. The CFAA, proscribes seven types of computer

crimes mainly involving accessing computers without authorization or in excess of

authorization, and then obtaining information or damaging computer data. 18 U.S.C.

§ 1030(a).[1]   CFAA provides a private right of action for losses incurred due to

violation of CFAA. *P.C. Yonkers, Inc. v. Celebrations: The Party and Seasonal*

*Superstore, LLC*, 428 F. 3d 504, 510-511 (3d Cir. 2005).

In a similar vein, the CROA provides that "[a] person or enterprise damaged

in business or property as a result of any of the following actions may sue the actor

therefor in the Superior Court and may recover compensatory and punitive damages

as the cost of the suit, including a reasonable attorney's fee, costs of investigation

and litigation: a. The purposeful or knowing, and unauthorized altering, damaging,

taking or destruction of any data, data base, computer program, computer software

or computer equipment existing internally or externally to a computer, computer

system or computer network...." *Id.*   "The Computer Act imposes liability against an

---

[1] "Its legislative history indicates "[t]he general purpose of the CFAA was to create a cause of action against computer hackers (e.g. electronic trespassers)." *Shamrock Foods Co. v. Gast.* 535 F.Supp. 2d 962, 965 (D. Ariz. 2009) (internal quotations omitted).  The House Committee Report on the bill that became the CFAA states that under Section 1030 "the conduct prohibited is analogous to that of 'breaking and entering' rather than using a computer (similar to the use of gun) in committing the offense." H.R. Rep. No. 98-984, at 20 (1984), cited in *Dresser-Rand v. Jones*, 957 F. Supp. 2d 619 at fn. 1. (E.D.Pa. 2013).

"actor" whose "purposeful or knowing" conduct is proscribed by the statute." *Fairway Dodge, L.L.C. v. Decker Dodge, Inc.,* 191 N.J. 460, 924 A.2d 517, 522 (N.J. 2007).

The Third Circuit Court of Appeals has made clear that "courts seem to have interpreted the New Jersey Act [the CROA] in harmony with its federal counterpart [the CRAA]." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 278 (3d Cir. 2016) citing *Mu Sigma, Inc. v. Affine, Inc.*, No. 12–cv–1323 (FLW), 2013 WL 3772724, at *9–10 (D.N.J. July 17, 2013) (dismissing claims under the state and federal computer statutes for identical reasons).

### 1. Plaintiff admits that Davern did not access NVR's computer systems "without authorization" nor "exceeded" his authority to access such systems.

The Complaint alleges that Davern violated Section 1030(a)(2)(C) of the CFAA by "accessing a computer network without authorization and/or exceeded authority to obtain information from a protected computer." Complaint, ¶ 114(a). Specifically, NVR alleges that Davern was not authorized or exceeded his authority "to access NVR's protected servers to alter, remove or delete NVR's confidential information for his own use and gain." Compl., ¶ 111. The Complaint also alleges "Davern was not authorized by NVR and/or exceeded his authority . . . to access NVR's computer network to copy, download or transfer NVR's confidential

information to his personal email accounts for his own use and gain." Compl., ¶ 110.

Similarly, the Complaint alleges that Davern "without authorization, altered, damaged, took or destroyed data existing internally in NVR's computers" in violation of N.J.S.A. 2A:38A-3(a); "without authorization, accessed a computer system causing damage to business or property to NVR in violation of N.J.S.A. 2A:38A-3(c), "and/or . . . without authorization, accessed and recklessly altering, damaging, destroying or obtaining data from NVR's computers and computer systems" in violation of N.J.S.A. 2A:38A-3(e). Compl., ¶ 118(a)-(c).

NVR's allegations and the facts of record make clear that there was no such violation of the CFAA or the CROA because Davern was authorized to access all of the NVR network servers and files as an NVR employee and the CFAA and the CROA does not address the "use" of computer data by a person authorized to access it.

In the recent decision of *Dresser-Rand Company v. Jones et al*, 957 F. Supp. 2d 210 (E.D.Pa. 2013), the court undertook a thorough examination of the CFAA, and addressed whether departing employees who downloaded thousands of their employer's files while still employed and subsequently shared them with their new employer violated CFAA. The court's review of the case law indicated that courts in the Third Circuit have sided with the Ninth and Fourth Circuit in taking a narrow

interpretation of the statute.  The court found "the narrow interpretation adopted by the Ninth and Fourth Circuits to be true to the language of the statute and the intentions of Congress." 957 F. Supp. 2d 610, 616.  The court concluded that because the departing employees "were authorized to access their laptops and download files while they were still employed . . . they did not hack into them when they downloaded the files.  Their alleged misuse of the files may have remedies under other laws, but not under the CFAA."  957 F. Supp. at 620-621.

As in *Dresser-Rand*, Davern was authorized to access the computers and computer networks of NVR in connection with performing his job responsibilities. Compl., ¶ 42.  During NVR's deposition, its corporate designee testified repeatedly that Davern was authorized to access all of the NVR servers and files that he accessed. SMF, Ex. 1, NVR 181:613; 273:17-274:6. As the court made clear in Dresser, any alleged wrongful *use* of information the person had authorization to access must be the subject of a different cause of action than the CFAA. In addition to *Dresser-Rand,* and the decisions from the Fourth and Ninth Circuits on which it relied, later decisions in the Third Circuit have followed the same narrow interpretation of the CFAA embraced by *Dresser-Rand.*  For example, in *Carnegie Strategic Design Eng'rs, LLC v Cloherty,* 2014 WL 896636, at *9 (W.D. Pa. Mar. 6, 2014) the court explained,

> The scope of the CFAA does not extend to employees who were authorized to access the data in question, but did so in bad faith or to

14

> the future detriment of his former employer because [the court]
> interprets the term 'authorization' narrowly and finds that it does not
> extend to the improper use of information validly accessed.

In the same regard, in *Advanced Fluid Systems, Inc. v. Huber,* 28 F. Supp. 3d 306

(M.D. Pa. 2014), the Chief Judge of the Middle District of Pennsylvania wrote that

> The court finds no reason to depart from the persuasive decisions of its
> sister courts, which are based upon the plain language of the statute,
> congressional intent, and a fair and balanced evaluation of circuit court
> opinions. The court holds that the CFAA prohibits unauthorized *access*
> to information rather than unauthorized *use* of such information.

28 F. Supp. 3d at 329 (emphasis in original).

Because NVR admits that Davern was authorized to access all the NVR

servers and files in connection with his job responsibilities his alleged misuse of

NVR's data, files and information is beyond the ambit of the conduct regulated by

the CFAA. This is the consistent position of the Federal District Courts of the

Eastern District, the Middle District and the Western District of Pennsylvania, and

Davern urges it should also be the same position of the District of New Jersey.

Because courts interpret the CFAA and the CROA in harmony with each

other, NVR's CROA fails for the same reasons that its CFAA claim fails with respect

to the element of "without authorization" or in excess of authority.

## 2. NVR has not satisfied the damage element for CFAA and CROA liability.

In addition, the CFAA requires that NVR prove it suffered economic loss or

damage "aggregating at least $5,000 in value" as a result of Defendant's violation

of CFAA.  18 U.S.C. 1030(g).  NVR has not satisfied the damage element required for a finding of liability for violation of the CFAA. Under the CFAA, "damage" is "any impairment to the integrity or availability of data, a program, or information." 18 U.S.C §1030(e)(8). CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of the interruption of service." 18 U.S.C. 1030(e)(11). To constitute "loss" the alleged loss "must be related to the impairment or damage to a computer or computer system." *Brooks v. AM Resorts*, LLC, 954 F.Supp.2d 331, 337-338 (E.D.Pa. 2013).  Loss does not include "claims for lost business opportunities, damaged reputation and other missed revenue opportunities." *Advanced Fluid Systems, Inc. v. Huber,* 28 F. Supp. 3d 306, 330 (M.D. Pa. 2014) (citing *Advantage Ambulance Grp., Inc. v. Lugo,* 2009 WL 839085, at *3-4 (E.D. Pa. Mar. 30, 2009) (dismissing CFAA claim for lost revenue from dissemination of trade secrets from unauthorized access).

Similarly, the CROA requires proof of "damage in business or property" and for the same reasons, there is no evidence of such damages.  *Marcus v. Rogers,* 2012 WL 2428046, at *4 (N.J. App. Div. June 28, 2012) ("This statute plainly requires a plaintiff to prove that he or she was 'damaged in business or property.'").

16

Here, the only alleged damage or loss is (i) "upon information and belief, Davern was responsible for the corruption of certain confidential data and files from NVR's servers two weeks prior to his resignation" including the contents of the server folder titled 'Land Opportunities\signed Contracts,'" Compl., ¶ 112, and (ii) partially destroyed "certain email communications, files, and other confidential, proprietary and trade secret information stored electronically on his NVR email account and NVR laptop" in an effort to conceal his misconduct. *Id.*, ¶ 113.

Completely missing from the record is any evidence that there was any impairment of data or damage to any NVR computer network or system in the minimum statutory amount.  To the contrary, ████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████.  Furthermore, although it is undisputed that Davern deleted all the emails on his corporate laptop, not only was this expressly authorized by NVR policy, but equally important, NVR has admitted that all the deleted emails still reside on the corporate laptop.  Under these circumstances, NVR simply cannot prove any "loss" or "damage" in the statutory amount as required to make out a violation of CFAA.

17

In *Trading Partners Collaboration v. Kantor*, 2009 WL 1653130 (D.N.J. June 9, 2009), the court considered, among other things, whether an employee's emailing copies of his employer's member list and other proprietary information to his personal email account violated the CFAA.   In denying plaintiff's motion for preliminary injunction, the Court found that plaintiff had failed to establish that any of the information was taken "without authorization":

> Plaintiff has not offered sufficient evidence to support a finding that Defendant knowingly or purposefully took, without authorization, data from Plaintiff's computer while he was an employee of Defendant. Defendant Kantor has stated that he is not in possession of any confidential information from Plaintiff . . . but has agreed to turn over any confidential information that he may have in his possession.

2009 WL 1653130 at *8. As in *Trading Partners*, Davern denies that any of the information he forwarded to his personal email account was confidential.   Rather, he avers that the compensation information was routinely shared with candidates for employment and family members and the information in Land Files was known by land brokers and others within the industry. SMF, ¶¶ 92-93. Unquestionably, Davern had authorization to access such information. SMF, ¶ 241.  In any event, Davern no longer has possession of such information, having turned it over to NVR's forensic examiner. SMF, ¶ 190. Accordingly, NVR cannot establish the "knowing or purposeful and without authorization" element required to prove a violation of the CFAA.  Its CROA claim suffers from the same flaw as its CFAA claim.

**C.     Davern is entitled to summary judgment on NVR's two breach of contract claims.**

Plaintiff's Fourth Cause of Action is a breach of contract claim for alleged breach of NVR's Code of Ethics, which is included as part of its Human Resources Policies and Procedures. The Fifth Cause of Action is for breach of contract-specific performance related to an alleged breach of NVR's Code of Ethics.  Under New Jersey law, "to establish a breach of contract claim, a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result." *Trading Partners Collaboration, LLC v. Kantor*, 2009 WL 1653130, at *4 (D.N.J., 2009) (quoting *Murphy v. Implicito,* 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007)); *Cotter v. Newark Housing Auth.,* 422 F. App'x 95, 98 (3d Cir.2011).

The Complaint alleges that Davern breached two of NVR's policies: its Code of Ethics and Standards of Business Conduct, each of which are alleged to prohibit "using or divulging any of NVR's confidential information other than in the performance of duties for and authorized by NVR."  Complaint, ¶ 124.  The Complaint alleges that due to the breach, NVR "has suffered and continues to suffer irreparable harm" as well as "actual, incidental, compensatory, punitive and consequential damages, along with reasonable attorneys' fees and costs". Amended Complaint, ¶¶ 120-121; 128-129.

Davern is entitled to summary judgment on both the breach of contract counts because (i) the policies did not create a contractual relationship between NVR and Davern; (ii) there is no evidence that Davern used or disclosed any NVR confidential information, and (iii) NVR has not proved damages caused by a breach of contract.

### 1. The NVR policies do not constitute a contract between Davern and NVR.

First, NVR presumes but does not prove that the Code of Ethics and Standards of Business Conduct, as referred in the Code of Ethics, constitutes a contract between Davern and NVR. Indeed, both the facts and the law indicate otherwise. Factually, NVR avers that execution of the "Human Resources Policies and Procedures Acknowledgement, which includes its Code of Ethics (the "Acknowledgement") was "in consideration for his employment with NVR." Compl., ¶ 38. But, contrary to this averment, it is undisputed that the Acknowledgement was executed by Davern *after* he began his employment with NVR, and there is no statement in the Acknowledgement that it is being executed "in consideration for" NVR's employment of Davern. SMF, Ex. 2.

The Acknowledgement at issue here contains an express disclaimer that it creates a contractual relationship with employees: "the Human Resources Policies and Procedures do not constitute nor should they be relied on as constituting an employment contract between NVR and any if its employees." SMF, Ex. 2. In *Cancer Genetics, Inc. v. Hartmayer*, 2008 WL 323738 (D.N.J. Feb. 5, 2008), the

20

Court denied a preliminary injunction on a breach of contract claim based upon a

purported breach of a Code of Business and Ethics signed by the former employee.

The court explained:

> The Code expressly disclaims that it creates a contractual restrictive
> covenant. The Court must assume that the parties executed the Code
> based on the plain meaning of the disclaimer. *Cf. Gil v. Related Mgmt.
> Co.,* No. 06-2174, 2006 WL 2358574, 5 (D.N.J. Aug. 14, 2006) (stating
> that in New Jersey '[a]n effective disclaimer must be expressed in
> language 'such that no one could reasonably have thought [the
> handbook] was intended to create legally binding obligations' and
> noting that defendant's effective disclaimer stated that '[n]othing in this
> handbook shall be construed as a contract of employment'); *see also
> Garcia v. Kankakee County Hous. Auth.,* 279 F.3d 532, 535-36 (7th
> Cir.2002) (discussing employment handbooks that states "[t]his
> Manual creates no rights, contractual or otherwise, between the
> Authority, any prospective or current employee, or any other person"
> and holding that "[d]isclaimers of this kind are enough in Illinois to
> show that the handbook does not create legal rights"); 19 Samuel
> Williston & Richard A. Lord, a Treatise on the Law of Contracts §
> 54:12 (4th ed. 1993) ("An explicit and conspicuous disclaimer in an
> employee personnel manual, stating that no contract rights exist or that
> the policies in the manual are not intended to create contractual rights,
> demonstrates the employer's intent that the manual be treated as only a
> guide for the employee....

2008 WL 323738, at *5. Execution of the Acknowledgement did not create a valid

enforceable contract between NVR and Davern because of its express contractual

disclaimer, and for this reason alone, Davern is entitled to summary judgment on

Plaintiff's two counts based on alleged breach of NVR's Human Resources policies.

On November 18, 2015, at the 30(b)(6) deposition of NVR, NVR's general

counsel and corporate designee, Jim Sack, admitted that the Code of Ethics and

Standards of Business Conduct "is not a contract" between Davern and NVR. SMF, ¶ 6. In light of this clear admission by NVR that its Human Resources policies do not constitute a contract between employees and the company, it was bad faith for NVR to file a First Amended Complaint in January 2016, which continued to assert two counts for breach of contract based on its allegations that Davern did not comply with the Confidential Information provisions of the Code of Ethics and Standards of Business Conduct.

### 2.    There is no evidence Davern has used or disclosed NVR's confidential information.

While the Complaint alleges Davern breached the Code of Ethics and Standards of Business conduct by using or disclosing the confidential information of NVR as defined in the policies, the record from discovery contains no evidence to support these allegations. It is undisputed that all the NVR information taken by Davern passed through his corporate laptop and was either forwarded to his personal email account or placed on thumb drives. All this information was returned by Davern upon receipt of NVR's cease and desist letter and remediated by NVR's forensic vendor. SMF, ¶ 228.

Furthermore, NVR's corporate designee testified that there is no evidence, including forensic evidence, that Davern shared any NVR information in his possession with his new employer or anyone else since leaving NVR. SMF, ¶ 229. NVR also testified that there is no forensic evidence that after leaving employment,

Davern accessed any of the NVR files and data residing on the 128 GB Drive. SMF, ¶ 230. Davern has attested that he has not disclosed any NVR information to any person since he left NVR. SMF, ¶ 191. Horton has testified that it has not received any NVR information from Davern. SMF, ¶ 427.

NVR alleges that before leaving NVR, Davern provided Doug Brown of Horton with confidential information in the form of a list of 40 land opportunities in New Jersey. Compl., ¶55. The only evidence on this issue, however, is that the list of 40 land opportunities was compiled by Davern based on his "general knowledge" derived from public information, not confidential or trade secret information of NVR. SMF, ¶¶ 92, 93, 94,100. ████████████████████ ████████████████████████████████ but NVR has not produced or even identified such documents to substantiate this assertion.

NVR also alleges that Davern sent a text to Doug Brown on May 27, 2015 telling him about "potential opportunities associated with Beazer Homes pulling out of New Jersey." Compl., ¶ 49. This cannot be NVR confidential information, however, as it was publicly known that Beazer was leaving the New Jersey market, resulting in land purchase opportunities for others - Beazer had publicly announced on April 30, 2015 that it was exiting the New Jersey market. SMF, ¶¶ 77-78. Horton testified it knew Beazer was leaving the New Jersey market and that deals were out there, before Davern sent the text to Brown on May 27, 2015. SMF, ¶ 79.

Because Davern neither used nor disclosed any confidential information of NVR, he did not violate the Code of Ethics or Standards of Business Conduct provisions on Confidential Information.

### 3.   NVR was not damaged by Davern's alleged violation of the Code of Ethics and Standards of Business Conduct.

As, noted above, NVR admitted during its 30(b)(6) deposition in November that it had not lost any sales or land opportunities as a result of Davern's conduct. SMF, ¶ 251.



Proof of damages is a necessary element for establishing liability for a claim of breach of contract. *Murphy v. Implicito,* 392 N.J. Super. 245, 920 A.2d 678, 689 (N.J.Super.Ct.App.Div.2007). *Trading Partners Collaboration, LLC v. Kantor*, 2009 WL 1653130, at *4 (D.N.J., 2009).  Without any evidence of damages, Counts Four and Five fail, and Davern is entitled to summary judgment on these counts.

**D.    Davern is entitled to summary judgment on NVR's claim for breach of fiduciary duty because NVR has failed to satisfy the element of "harm" necessary to recover money damages.**

In its sixth cause of action, NVR alleges that as a Sales Manager, Davern owed fiduciary duties to NVR, including a duty of loyalty.  Compl., ¶ 137.  NVR alleges Davern breached this duty by "soliciting NVR employees" to leave NVR and "join a competitor;" by misappropriating confidential, proprietary and trade secret information and developing "a plan to divert corporate opportunities from NVR to a competitor."  *Id.*, ¶ 139.  As a result of this alleged breach of duty, NVR seeks "money damages" including "the compensation that NVR paid to Davern during the period of time that he was engaged in conduct disloyal to NVR."  *Id.*, ¶ 141.

While Davern does not dispute the principle that an employee owes a duty of loyalty to his employer, to recover for alleged breach of loyalty, harm is a necessary element of a prima facie case. 2 Restatement (Second), Agency, Liability for Loss Caused §401, comment (b) (1958). *Cameco, Inc. v. Gedicke,* 157 N.J. 504, 518, 724 A.2d 783, 790 (1999) ("Generally, to recover money damages, the employer must establish that the employee's breach proximately caused the requested damages").

NVR complains that Davern breached his duty of loyalty by helping the RIO Group recruit NVR employees Sander Mens and Steve Sembach.  NVR alleges that Davern gave Mike Sachs of the RIO Group Sander Mens's "contact information, endorsed Mens as NVR's top sales representative in 'PA/NJ/DE,' and told the RIO

Group that Mens was expecting his call."  Compl., ¶ 45.  With respect to Steve Sembach, an NVR Financial Analyst, Davern told Sachs, who already had identified Sembach as a possible candidate for a financial position with Horton, that Sembach was "super talented."  SMF, ¶ 120.  Despite these alleged acts of disloyalty, neither Mens nor Sembach was given a job offer by Horton.  Neither of these acts by Davern resulted in any damage to NVR.  ███████████████████████████ ██████████████████████████.

While NVR alleges that giving Doug Brown the Excel spreadsheet containing a tab listing land opportunities, Brown testified he did not even realize Davern had sent him the list and never looked at it.  SMF, ¶ 88.  He also testified that Horton already knew about each of the land opportunities and in any event never pursued any of them.  SMF, ¶ 100.  Again, NVR has admitted it did not lose any land opportunity in New Jersey due to any conduct by Davern.  SMF, ¶ 251.

Because NVR cannot prove it has suffered any harm or damage, it cannot recover on a theory of breach of fiduciary duty.  In *News America Marketing In-Store, Inc. v. Marquis*, 86 Conn. App. 527 (Appellate Ct., Conn. 2004), the court granted judgment in favor of a former employee with respect to his former employer's claim of breach of duty of loyalty, and explained:

> Removing documents on the eve of resignation from employment . . .
> and trying to induce a fellow employee to leave the principal to become
> employed by a competitor are, of course, breaches of the duty of
> loyalty.  Such breaches, however, do not automatically convert to a

> judgment of liability for a plaintiff without proof of harm.  One of the
> elements of a cause of action in tort for a breach of loyalty is actual
> harm, without which the cause of action is incomplete.

86 Conn App. at 536.

Since there is no evidence in the record that NVR was harmed or damaged in any way by the conduct NVR asserts constitutes a breach of Davern's duty of loyalty, NVR cannot establish this element for liability for breach of fiduciary duty. Accordingly, Davern is entitled to summary judgment on the claim for breach of fiduciary duty.

### E.    Davern is entitled to summary judgment on NVR's unfair competition claim.

"In essence, unfair competition is a business tort.  Generally, it consists of the misappropriation of one's property by another-property which has some sort of commercial or pecuniary value.  The misappropriation usually takes the form of 'palming off' or 'passing off' another's goods as your own, although this Modus operandi is not essential." *New Jersey Optometric Ass'n v. Hillman-Kohan Eyeglasses, Inc*., 365 A.2d 956, 965 (N.J. Super. Ch. 1976) (internal citation omitted).  Accordingly, part of the required proof is that what was taken has commercial value and is being used by the taker or another to unfairly compete against the owner of the misappropriated property.  Plaintiff, acknowledging this requirement, alleges in the Complaint that "*upon information and belief*, Davern is unfairly competing in the marketplace using NVR's confidential and trade secret

27

information." Compl., ¶ 145 (emphasis added). But there is no evidence in the record to support this claim.

Both Davern and Horton have testified that they do not possess any NVR information. SMF, ¶¶ 192, 427. NVR has no evidence that any NVR documents that Davern once possessed have been used by Davern to compete in the marketplace against NVR. NVR has admitted that it has not lost any business, sales, or land opportunities due to any conduct by Davern. SMF, ¶ 251.

The Davern Declaration provides direct evidence to the contrary. He attests that he has neither provided any of the contents of the forwarded emails to Horton nor has he used such information. SMF, ¶ 209. Even though he has worked for Horton since June 22, 2015, NVR has no evidence that it has suffered any competitive injury that may be the result of unfair competition by Davern owing to any information forwarded to Davern's personal email account. In sum, Plaintiff has not and cannot succeed on its unfair competition cause of action.

## F. Davern is entitled to summary judgment on NVR's equitable claims.

Three aspects of NVR's claims seek remedies that are equitable in nature. The eighth cause of action is for unjust enrichment, which is a claim in equity. NVR also seeks restitution of compensation paid to Davern during the period of his alleged disloyalty on the theory it would be unjust and inequitable for Davern to retain compensation paid by NVR to him during the period of his alleged disloyalty.

28

Finally, NVR asks the Court to impose a permanent injunction, which is an equitable remedy. As the U.S. Supreme Court has explained, "'equitable relief' . . . refer[s] to those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256–57, 113 S. Ct. 2063, 2068–69, 124 L. Ed. 2d 161 (1993) (emphasis in original).

### 1.   Davern is entitled to summary judgment on the unjust enrichment claim.

"The doctrine of unjust enrichment rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." *Assocs. Commercial Corp. v. Wallia,* 511 *A.*2d 709 (N.J. Super. App. Div.1986) (citing *Callano v. Oakwood Park Homes Corp.,* 219 A.2d 332 (N.J. Super. App. Div. 1966)). Success on a claim for unjust enrichment "requires proof that 'defendant[s] received a benefit and that retention of that benefit without payment would be unjust.'" *County of Essex v. First Union Nat. Bank*, 862 *A.*2d 1168, 1172 (N.J. Super. App. Div. 2004) (quoting *VRG Corp. v. 463 GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994)), *aff'd, remanded by* 891 A.2d 600 (N.J. 2006). "Recovery . . . is typically measured by the amount the defendant benefitted from the plaintiff's performance." *Wanaque Borough Sewerage Auth. v. Twp. of W. Milford*, 677 A.2d 747, 752–53 (N.J. 1996).

The Complaint alleges that Davern "retained NVR's confidential information that in equity and good conscience he should not have retained" Compl., ¶ 149.  NVR then alleges in purely conclusory fashion that as a result Davern has been "unjustly enriched at NVR's expense." *Id.*, ¶150. NVR asserts it is therefore entitled to "actual, incidental, compensatory, punitive and consequential damages, along with reasonable attorneys' fees and costs." *Id.*, ¶151.

NVR's unjust enrichment claim fails to satisfy any of the basic elements for recovery on this equitable ground. ██████████████████████ ████████████████████████████████████████ ████████████████████████████████. There is no evidence in the record that he retained anything. To the contrary, Davern has sworn that nothing was retained. SMF, ¶ 192.

Second, there is no evidence that Davern received a benefit during the period he possessed such information.  Davern has testified that he never accessed or used the NVR information. SMF, ¶ 191. NVR has no forensic evidence that Davern accessed the NVR information he took before it was returned to NVR. SMF, ¶ 230. Horton has testified that it never received or used any NVR information. SMF, ¶ 427. Further, as discussed earlier, there is no connection between the amount of compensation Horton offered and paid to Davern and Davern's possession of NVR information for a period before his first day of employment by Horton.  Third, NVR

admits that it has not suffered any expense or loss as a result of Davern's briefly

possessing then returning NVR's information.  Nothing "unjust" or inequitable has

occurred such that NVR is entitled to some recovery.  Finally, even if NVR were

entitled to some recovery based upon Davern's conduct, it would, by law, be limited

to the amount that Davern benefitted from his purportedly unjust conduct "at the

expense" of NVR.  There is simply nothing in the record indicating that Davern has

received a benefit in any amount, or that such benefit was at the expense of NVR.

Consequently, NVR's unjust enrichment claim fails completely.

### 2.    Davern is entitled to summary judgment on NVR's claim for disgorgement of compensation

One of the remedies sought by NVR in its claim for breach of fiduciary duty,

is the recovery of "the compensation that NVR paid to Davern during the period of

time that he was engaged in conduct disloyal to NVR." Compl., ¶141. This is a form

of equitable remedy available to the trial court according to *Kaye v. Rosefielde*, 121

A.3d 862 (N.J. 2015), which adopted Restatement (Second) of Agency § 469 and

Restatement (Third) Agency § 8.01. The New Jersey Supreme Court held:

> In accordance with the broad discretion afforded to courts fashioning
> equitable remedies that are fair and practical, a trial court may order
> disgorgement of an employee's compensation as a remedy for a breach
> of loyalty in an appropriate case.

*Kaye v. Rosefielde*, 223 N.J. 218, 222, 121 A. 3d 862 at 865 (2015). The court made

clear, however, that disgorgement of compensation is not automatic upon a finding

that a defendant has acted disloyally toward his employer.  Rather, "a trial court considers the parties' expectations of the services that the employee will perform in return for his or her compensation, as well as the 'egregiousness' of the misconduct that leads to the claim." 121 A.3d at 870.

To determine whether disgorgement is an appropriate remedy in a given case, the trial court should consider the following factors (referred to herein as the "Kaye Factors"):

> The degree of responsibility and level of compensation, the number of acts of disloyalty, the extent to which those acts placed the employer's business in jeopardy, and the degree of planning to undermine the employer that is undertaken by the employee.[2]

*Id.* at 874. In addition, the New Jersey Supreme Court noted that "[i]n a particular case, other factors may guide the court in the exercise of its discretion to impose an equitable remedy" citing its decision in *Cameco, Inc. v. Gedicke*, 724 A.2d 783, 791 (N.J. 1999), which listed a number of potentially relevant factors a trial court can consider.  The New Jersey Supreme Court, in *Cameco*, concluded: "Absent a governing contractual provision, the judicial task is to search for a fair and

---

[2] These factors appear to be a slight recasting of the four factors identified by the court in *Cameco*: "1) the 'existence of contractual provisions' relevant to the employee's action; 2) the employer's knowledge of, or agreement to, the employee's actions; 3) the 'status of the employee and his or her relationship to the employer,' e.g. corporate officer or director versus production line worker; and 4) the 'nature of the employee's [conduct] and its effect on the employer.'" 121 A.3d at 870 (citing *Cameco,* 724 A.2d at 791).

reasonable solution in light of the relevant considerations."   724 A.2d at 791. Finally, the court in *Kaye* directed that "[t]he trial court should state its reasons for granting or denying disgorgement." 121 A.3d at 874.

Here, application of the Kaye Factors does not justify disgorgement of Davern's compensation during the period of his purported disloyalty.  The first Kaye Factor is "[t]he degree of responsibility and level of compensation." ████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████This factor is either neutral or slightly favors disgorgement because of Davern's level of compensation.

The second Kaye Factor is "the number of acts of disloyalty."  The Complaint identifies six acts of disloyalty by Davern: 1) ██████████████████████████ ███████████████████████████████ 2) ██████████████████████████ ██████████████████████████████ 3) providing NVR's phone directory to The RIO Group; (SMF ¶ 104); 4) ████████████████████████ ███████████████████████████████; 5) ██████████████████████ ████████████████████████████████ and 6) taking extensive NVR confidential information when he left NVR.  This factor favors disgorgement.

---

[3] As NVR testified: ████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████████████████.

The third Kaye Factor is "the extent to which those acts placed the employer's business in jeopardy."  Here, there is no evidence that NVR's business was placed in jeopardy by any of the acts NVR alleges were disloyal.  ████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████. The RIO Group testified that it did not share NVR's phone directory with anyone. SMF, ¶ 110. Finally, Davern returned all NVR information in his possession and none of the information was accessed or shared with others. SMF, ¶¶ 191, 228. This factor strongly favors not ordering disgorgement.

The fourth Kaye Factor is "the degree of planning to undermine the employer that is undertaken by the employee."  Here, although NVR has asserted that Davern undertook a "plot" to harm NVR, there is no evidence in the record to support this assertion. The only evidence on this issue indicates, to the contrary, that Davern held NVR in high regard and did not do anything to adversely affect NVR. SMF, ¶ 209. In addition, after leaving NVR and before receiving a cease and desist letter from NVR's counsel, Davern, of his own volition, told prominent land broker David Vasso, that he would not pursue a land opportunity Vasso identified to him because he had learned about the deal while at NVR and "did not want to do anything to unfairly compete with NVR." SMF, ¶ 184. While Davern took all his archived emails

and other NVR information when he left, he did so because he thought it "could be useful reference material in the future," but not as part of some elaborate scheme to harm NVR. SMF, ¶ 21. Far from taking steps "to undermine" NVR, Davern took steps not to harm NVR. ███████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████    In sum, the evidence does not indicate that Davern undertook plans to undermine NVR and this factor favors not requiring Davern to disgorge any of his compensation.

Thus, two of the four Kaye Factors tilt in favor of disgorgement or are neutral and two of the factors favor not requiring disgorgement. Given that the disloyal acts were generally benign, having no adverse impact upon NVR, and that there is no suggestion that Davern failed to perform his job responsibilities during the period, on balance, the equities favor not requiring disgorgement.

If the Court nevertheless decides to order disgorgement, it must be limited to "the compensation earned during the period of disloyalty." *Kaye*, 121 A.3d at 871.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████      ████████████████████████████████████

████████████████████████████████████████████

██████   Consequently, the total amount of compensation that could be subject to disgorgement is $19,061.64.

### 3.    NVR is not entitled to a permanent injunction.

At the outset of this lawsuit, Davern consented to an injunction (Doc. No. 5) to permit time to inspect and remediate the NVR information in his possession at the time he resigned from NVR. Later, the Court entered a preliminary injunction on December 23, 2015, based upon the injunctive provisions of the NJTSA.  N.J.S.A. 56:15-3. The Complaint seeks a permanent injunction against Davern that would permanently enjoin him "and all persons and/or entities acting on his behalf, for his benefit or in concert or participation with him" from accessing, using or disclosing NVR's confidential information. Compl., *ad damnum* clause.  NVR has not met the requirements for issuance of a permanent injunction.

Our Court of appeals has explained: "In deciding whether a permanent injunction should be issued, the court must determine if the plaintiff has actually succeeded on the merits (i.e. met its burden of proof). If so, the court must then consider the appropriate remedy." *Am. Civil Liberties Union of New Jersey v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1477 (3d Cir. 1996) (quoting *CIBA–GEIGY Corp. v. Bolar Pharmaceutical Co., Inc.,* 747 F.2d 844, 850 (3d Cir. 1984)). Here, for the reasons set forth above, NVR has not succeeded on its claim for

██

misappropriation of trade secrets to which its request for a permanent injunction relates, and therefore it has not cleared the legal threshold for considering whether to issue a permanent injunction.

Even assuming that NVR had succeeded on the merits of its misappropriation claim, it would not be entitled to issuance of a permanent injunction because it cannot satisfy the requirements for a permanent injunction. Specifically, "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *See*, *e.g., Weinberger v. Romero— Barcelo,* 456 U.S. 305, 311–313 (1982); *Amoco Production Co. v. Gambell,* 480 U.S. 531, 542 (1987); *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court. *See*, *e.g., Romero–Barcelo,* 456 U.S. at 320.

Here, despite extensive discovery, NVR cannot show that it has suffered any irreparable harm. As described above, NVR has no evidence of harm of any kind, let alone irreparable harm. While our Court of Appeals in *Neo Gen Screening, Inc. v. TeleChem Int'l, Inc.,* 69 F. App'x 550, 555 (3d Cir. 2003) recognized that the loss

37

of a trade secret can constitute irreparable harm,[4] there is no evidence in the record that NVR has lost any trade secrets.  Without proof of actual irreparable harm, the law of equity does not permit the imposition of any permanent restraint on Davern.

## V.   CONCLUSION

For the foregoing reasons, Defendant urges the Court to grant Davern's motion for summary judgment in its entirety.

Respectfully submitted,

KANG HAGGERTY & FETBROYT LLC

By:  s/ Edward T. Kang
   Edward T. Kang
   Gregory H. Mathews
   David Dean
   123 S. Broad Street, Suite 1670
   Philadelphia, PA 19109
   (215) 525-5850
   (215) 525-5860 (fax)
   ekang@LawKHF.com
   gmathews@LawKHF.com
   ddean@LawKHF.com
   *Attorneys for Jonathan Davern*

Dated:  December 19, 2016

---

[4] The court cited with approval, *FMC Corp. v. Taiwan Tainan Giant Indus. Co.,* 730 F.2d 61, 63 (2d Cir. 1984) (holding that loss of trade secrets was an irreparable harm that could not be measured in money because "a trade secret once lost is, of course, lost forever").